**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  212-603-6300
Steven B. Eichel
A. Mitchell Greene
*Attorneys for 60G 542 Broadway Owner, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:                                                                     Chapter 11

**PRINCE FASHIONS, INC.,**
                                                                             Case No. 19-23079-rdd
                                    Debtor.
---------------------------------------------------------X
**PRINCE FASHIONS, INC.,**

                                    Plaintiff,
            v.
                                                                             Adv. Pro. No. 19-08714-rdd
**60G 542 BROADWAY OWNER, LLC**
**AND 542 HOLDING CORP.,**

                                    Defendants.
---------------------------------------------------------X

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

# Table of Contents

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS .................................................................... 3

    Background ........................................................................... 3

    60G's Termination of the Lease and the Holdover Proceeding ............................. 3

    Summary Judgment and Renewal in the Holdover Proceeding .............................. 4

    The Appellate Term's Reversal of the Renewal Order ................................... 5

ARGUMENT ............................................................................. 7

    A.    Standard for Dismissal Under Rule 12(b)(1) ................................... 7

    B.    Standard for Dismissal Under Rule 12(b)(6) ................................... 9

    C.    This Court Lacks Subject Matter Jurisdiction Under the
        Rooker-Feldman Doctrine ................................................... 10

    D.    The Complaint Must be Dismissed Under Rule 12(b)(6) for
        Failure to State a Claim ..................................................... 12

    E.    Complaint Must be Dismissed Under Rule 12(b)(6) Based on Res Judicata ............. 15

    F.    Complaint Must Be Dismissed Under Rule 12(b)(6) Based on
        Judicial Estoppel .......................................................... 21

    **CONCLUSION** .................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*166 Enterprises Corp v. I G Second Generation Partners*,
  81 A.D.3d 154 (1st Dept. 2011)..............................................................................14

*Allen v. McCurry*,
  449 U.S. 90 (1980)..................................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................9, 10

*Bates v. Long Island Railroad Co.*,
  997 F.2d 1028 (2d Cir.) *cert. denied* 510 U.S. 992 (1993)...............................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................9

*Bell v. Alden Owners, Inc.*,
  199 B.R. 451 (S.D.N.Y. 1996)................................................................................20

*Burgos v. Hopkins*,
  14 F.3d 787 (2d Cir. 1994)......................................................................................16

*Calhoun v. United States*,
  475 F. Supp. 1 (S.D. Cal. 1977)...............................................................................9

*Common Cause of Pa. v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009)......................................................................................8

*In re Comstock Financial Services, Inc.*,
  111 B.R. 849 (Bankr. C.D. Cal. 1990)...................................................................15

*Davis v. Social Sec. Admin.*,
  No. Civ. A. 02-1595, 2003 WL 21219821 (D. Del. May 20, 2003).........................8

*Decaudin v. Velazquez*,
  834 N.Y.S. 2d 614 (2d Dept. 2007) .......................................................................21

*Democracy Rising PA v. Celluci*,
  603 F. Supp.2d 780 (M.D. Pa. 2009)....................................................................7, 8

*District of Columbia Court of Appeals v. Feldman*,
  460 U.S. 462 (1983)................................................................................................10

*Dove Hunters Pub, Inc. v. Posner*,
    211 A.D.2d 494 (1st Dept. 1995)..........................................................................14

*ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..............................................................................9

*In re Eltech, Inc.*,
    313 B.R. 659 (Bankr. W.D. Pa. 2004) ................................................................8

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)........................................................................................10

*Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Associates*,
    93 N.Y.2d 508, 715 N.E.2d 117 (1999).............................................................23

*Haberman v. Zoning Board of Appeals of City of Long Beach*,
    119 A.D.3d 789 (2d Dept. 2014) ..................................................................16, 17

*Harriott v. Nationstar Mortgage LLC*,
    Case No. 17-CV-4748, 2018 WL 4853045 (E.D.N.Y. Sept. 28, 2018)......................11, 15, 16

*Henry Modell and Co. v. Ministers, Elders and Deacons of the Reformed*
    *Protestant Dutch Church of the City of New York*,
    68 N.Y. 2d 456 (1986) ..................................................................................17, 18

*Hoblock v. Albany Cnty. Bd. of Elecs.*,
    422 F. 3d 77 (2d Cir. 2005)...............................................................................11

*In re Integrated Health Servs., Inc.*,
    260 B.R. 71 (Bankr. D. Del. 2001) ..................................................................12, 13

*International Trade Administration v. Rensselaer Polytechnic Institute*,
    936 F.2d 744 (2nd Cir. 1991)............................................................................12

*In re Kaiser Group Int'l, Inc.*,
    399 F.3d 558 (3d Cir. 2005)..............................................................................8

*Lewis v. Jordan*,
    L&T Index # 78153/16, 2017 NYLJ LEXIS 1021 (NY Civ. Ct. Apr. 19, 2013)...................20

*Migra v. Warren City School District Bd. of Educ.*,
    465 U.S. 75 (1984)........................................................................................18

*Monahan v. N.Y.C. Dept. of Corr's.*,
    214 F.3d 275 (2d Cir. 2000)..............................................................................16

*Paladino v. Sotille*,
    835 N.Y.S.2d 799 (N.Y. App. Term 2007)............................................................20

*Romeo v. FMA Alliance, Ltd.*,
  15-CV-6524 (ADS), 2016 WL 3647868 (E.D.N.Y. June 30, 2016) ......................................21

*Rooker v. Fidelity Trust Co.*
  263 U.S. 413 (1923) ..........................................................................................................10

*Shortt v. Richlands Mall Assocs., Inc.*,
  No. 90-2056, 1990 WL 207354 (4th Cir. Dec. 19, 1990) ......................................................7

*Sinisgallo v. Town of Islip Housing Authority*,
  865 F. Supp. 2d 307 (E.D.N.Y. 2012) ...............................................................................20

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
  531 F.3d 190 (2d Cir.2008)..................................................................................................9

*Thompson v. County of Franklin*,
  15 F.3d 245 (2d Cir. 1994)..................................................................................................15

*Uzdavines v. Weeks Marine, Inc.*,
  418 F.3d 138 (2d Cir. 2005)................................................................................................22

*Vassel v. Greystone Bank*,
  No. 12-CV-5704, 2013 WL 2395980 (E.D.N.Y. May 31, 2013) .........................................15

*Vossbrinck v. Accredited Home Lenders, Inc.*,
  773 F.3d 423 (2d Cir. 2014).........................................................................................10, 11

*In re Wachovia Equity Securities Litigation*,
  753 F.Supp.2d 326 (S.D.N.Y.2011).....................................................................................10

**Statutes**

28 U.S.C. §1738...................................................................................................................18

Real Property Actions and Proceeding Law §743 ......................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1), (6) .......................................................................................... *passim*

Fed. R. Civ. P. 12(h)(3)...................................................................................................7, 8

Federal Rule of Bankruptcy Procedure Rule 7012(b)....................................................................1

60G 542 Broadway Owner LLC ("60G"), by and through its counsel, respectfully submits this Motion to Dismiss (the "Motion") the Complaint of debtor Prince Fashions, Inc. ("Plaintiff" or "Prince") dated November 22, 2019 (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rule of Civil Procedure (the "Rules"), made applicable herein by Rule 7012(b) of the Federal Rule of Bankruptcy Procedure.  In support of the Motion, 60G represents as follows:

## PRELIMINARY STATEMENT

Prince's Complaint seeks the entry of an order declaring that (i) the Lease (defined below) is not a true "lease" as that term is defined in section 365 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), (ii) the Lease is not subject to the provisions of Section 365 of the Bankruptcy Code and (iii) Prince was transferred an interest in and to the Premises rather than a leasehold interest.  A true and correct copy of the Complaint is attached as Exhibit A to the Declaration of Nolan E. Shanahan in Support of 60G 542 Broadway Owners, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Shanahan Decl").

On May 29, 2019, Prince filed its pro se Chapter 11 petition in this Court.  On June 28, 2019, 60G filed a motion seeking, among other things, an order (a) dismissing Prince's petition with prejudice, (b) finding that the automatic stay does not prevent 60G from evicting Prince from the Premises; or in the alternative, (c) granting relief from the stay so 60G can proceed with evicting Prince (the "Lift Stay Motion").  On July 17, 2019, Prince filed a response to the Lift Stay Motion.  On July 18, 2019, 60G filed its reply.

At the July 22, 2019 hearing on the Lift Stay Motion, the Court gave the Debtor a limited opportunity to proceed with two pending motions in two separate state court actions,

indicating that "if the state court determination is as the landlord contends, [the lease] will be terminated. Then the Debtor is out of luck." Shanahan Decl., Exhibit B (July 22, 2019 Hearing Transcript 25:25-26:2). Prince lost in both state court proceedings. [See Exhibits C and D to ECF Doc No. 44-1].

As a result, on November 19, 2019, 60G moved to supplement and renew its Lift Stay Motion (the "Renewed Lift Stay Motion"). Prince filed a response and 60G filed a reply. On December 3, 2019, the court granted the Renewed Lift Stay Motion, lifting the automatic stay so that 60G could proceed with its state court remedies, including evicting Prince from the Premises.

As a result of the state court rulings, which effectively denied Prince the opportunity to resuscitate the Lease, on November 22, 2019, approximately five months after the commencement of its bankruptcy case, Prince filed the Complaint seeking declaratory relief.

At the December 3, 2019 hearing on 60G's Renewed Lift Stay Motion, the Court, among other things, modified the automatic stay to permit 60G to enforce its rights in, and remedies in and to, the Premises under applicable non-bankruptcy law, including continuing its pre-petition eviction proceedings. The Court's ruling is reflected in its order, dated December 9, 2019 (the "Lift Stay Order"). A copy of the Lift Stay Order is attached to the Shanahan Decl. as Exhibit C.

At that December 3rd hearing, the Court also indicated that although Prince could proceed on its Complaint with respect to both (i) seeking possession of the Premises, and (ii) seeking the economic value of the Premises, it did not believe that it would be successful in seeking possession of the Premises because *res judicata* precluded Prince on that issue. See Shanahan Decl. Exhibit D (December 3, 2019 Hearing Transcript at p. 17).

60G submits that the Complaint should be dismissed under (i) Rule 12(b)(1) based on the *Rooker-Feldman* doctrine and (ii) Rule 12(b)(6) for failure to state a claim upon which relief can be granted,[1] and based on the doctrines of *res judicata* and judicial estoppel.

## STATEMENT OF FACTS

Background

The Premises are comprised of ground floor commercial space and portions of the basement in a six-story building located at 542 Broadway, New York, New York (the "Building"). 60G is the owner of the Premises pursuant to a recorded Condominium Unit Deed, dated May 11, 2015, from 542 Holding Corp. ("Holding Corp."), a true and accurate copy of which is annexed to the Shanahan Decl. as Exhibit E.

60G is Prince's former landlord pursuant to a written lease and rider (the "Lease"), dated April 11, 1980, which was then duly assigned to 60G pursuant to that certain Assignment and Assumption of Retail Master Lease, dated May 2015, which was executed concomitant with 60G's acquisition of the Premises. True and accurate copies of the Lease and the Assignment and Assumption of Retail Master Lease are annexed to the Shanahan Decl. as Exhibits F and G respectively.

60G's Termination of the Lease and the Holdover Proceeding

On March 4, 2016, as a result of Prince's failure to maintain general liability insurance in favor of 60G, in addition to other breaches of the Lease, and pursuant to Article 17 of the Lease (the default provision), 60G served a Notice of Default to Prince in which 60G declared Prince in default of the Lease.

---

[1]To the extent that Prince is now asserting a claim for the economic value of ownership of the Premises based on the current version of the Complaint, that claim should be dismissed for failure to state a claim as there are no allegations in the Complaint as to any claim for economic value of the ownership of the Premises.

On July 1, 2016, pursuant to Article 17 of the Lease, 60G served a Notice of Lease Cancellation on Prince.  Pursuant thereto, the Lease was terminated effective July 5, 2016.

On July 11, 2016, 60G commenced a holdover proceeding in New York City Civil Court by filing of a Notice of Petition and Petition seeking a Final Judgment of Possession and Warrant of Eviction based on Prince's incurable Lease default.  True and accurate copies of the Notice of Petition and Petition (collectively, the "Petition") are annexed collectively to the Shanahan Decl. as Exhibit H.  In response to 60G's Petition in the holdover proceeding, on July 22, 2016, Prince filed and served its answer to the Petition ("Answer"), which included nine defenses, and is attached to the Shanahan Decl. as Exhibit I.  The defenses each implicitly or explicitly rely upon Prince's stated position that the Lease was in effect and not properly terminated by 60G.  In particular, Prince affirmatively asserted in its second affirmative defense that 60G lacked standing to prosecute the holdover proceeding as it was not its landlord and, in its fifth affirmative defense, affirmatively asserted that Holding Corp. was its landlord under the Lease. *See* Exhibit I, pp.1-2.  None of the defenses attempted to recharacterize the Lease.

On August 5, 2016, 60G moved in the Civil Court for summary judgment seeking a final judgment of possession and other related relief ("Summary Judgment Motion").  On September 9, 2016, Prince opposed 60G's Summary Judgment Motion and cross-moved to dismiss the Petition.

Summary Judgment and Renewal in the Holdover Proceeding

By a Decision/Order, dated September 20, 2017, Judge Samuels granted 60G's motion for final judgment of possession and striking Prince's affirmative defenses, and denied Prince's cross-motion to dismiss the Petition (the "Summary Judgment Order").  A

true and accurate copy of the Summary Judgment Order is annexed to the Shanahan Decl. as Exhibit J.  The Summary Judgment Order dismissed Prince's second affirmative defense alleging that 60G lacked standing to maintain the Holdover Proceeding because it was not Prince's landlord under the Lease. *See* Exhibit J, p. 4.  Instead, the Civil Court found that 60G the Lease was properly assigned to 60G and, as such, 60G was Prince's landlord.

Prince subsequently moved to renew and reargue the Summary Judgment Order on various bases, including purported new evidence of a so-called conspiracy to deprive it of its leasehold interest.  After briefing, oral argument, and supplemental submissions directed by the Court, Judge Samuels, by a Decision/Order, dated February 9, 2018, granted Prince's motion in part (the "Renewal Order").   A true and accurate copy of the Renewal Order is annexed to the Shanahan Decl. as Exhibit K.   In doing so, Judge Samuels reversed her prior award of summary judgment in 60G's favor and reinstated Prince's first, fifth, seventh, and ninth affirmative defenses.  Notably, the Renewal Order did not reverse the dismissal of or reinstate Prince's second affirmative defense challenging 60G's status as its landlord under the Lease.

The Appellate Term's Reversal of the Renewal Order

60G immediately appealed the Renewal Order to the Appellate Term, First Department.  The Appellate Term reversed the Renewal Order via the issuance of its order dated October 29, 2018 (the "Appellate Term Order").  A true and accurate copy of the Appellate Term Order is annexed to the Shanahan Decl. at Exhibit L.  The Appellate Term Order confirmed the termination of the Lease and 60G's right to regain possession of the Premises and dismissed Prince's remaining affirmative defenses on the merits.

Pursuant to the terms of the Appellate Term Order, 60G was entitled to the entry of a judgment of possession against Prince ("Judgment of Possession") and the issuance of a warrant of eviction, with execution thereon stayed for 60 days following service of a notice of entry of the Appellate Term Order, which 60G served on November 7, 2018.[2] The Judgment of Possession was entered by the New York City Civil Court on November 19, 2018. See Shanahan Decl. at Exhibit M. The Civil Court then issued a warrant of eviction with respect to the Premises against Prince on December 10, 2018. The stay of eviction set forth in the Appellate Term Order expired by its terms on January 11, 2019.

After being served with Notice of Entry of the Appellate Term Order, Prince moved in the Appellate Term for leave to reargue, leave to appeal to the Appellate Division and a stay pending such appeal. By order dated December 21, 2018, the Appellate Term denied Prince's motion to reargue and for leave to appeal to the Appellate Division.

On January 10, 2019, Prince moved in the Appellate Division for leave to appeal the Appellate Term Order and for a stay pending the determination of that motion. The Appellate Division issued an Order, dated January 10, 2019, (the "Stay Order") staying enforcement of the Appellate Term Order while Prince's motion was pending.[3] A true and accurate copy of the Stay Order is attached to the Shanahan Decl. as Exhibit N.

By Decision and Order, dated May 14, 2019, the Appellate Division denied Prince's motion for leave to appeal and vacated the Stay Order (the "Final Order"). A true and

---

[2]The Judgment of Possession was based on 60G's "unrebutted showing that the tenant breached the insurance coverage requirements of the governing commercial lease agreement." Shanahan Decl, Exhibit L (Appellate Term Order, p. 2). The Appellate Term Order granted summary judgment of possession and found that 60G "had valid grounds for terminating this commercial lease, based upon tenant's incurable default in obtaining insurance naming the landlord as an additional insured." Shanahan Decl, Exhibit L (Appellate Term Order, p. 5).

[3]After the issuance of the Appellate Term Order, Prince filed a second motion seeking renewal of the denial of its Yellowstone application. The motion was stayed as of the bankruptcy filing. At the July 22, 2019 hearing on the Lift Stay Motion, the Court modified the automatic stay to allow Prince to proceed in state court with respect to this renewal motion and a separate motion to intervene by MK Sportswear in the holdover proceeding. Prince was unsuccessful in both proceedings.

correct copy of the Final Order is attached to the Shanahan Decl. as Exhibit O. 60G served and filed a Notice of Entry of the Final Order on May 16, 2019 and again on May 23, 2019. Based on the above, the Appellate Term Order is a final, unappealable judgment.

On January 10, 2019, Prince was evicted from the Premises and 60G was awarded legal possession by the New York City Marshal. A true and correct copy of the Marshal's Legal Possession for the Premises is attached to the Shanahan Decl. as Exhibit P.

## ARGUMENT

7012(b) of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that Rule 12(b) – (i) of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 12(b) of the Federal Rules of Procedure provides, in pertinent part, that:

> "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But any party may assert the following defenses by motions: (1) lack of subject matter jurisdiction;…[and] (6) failure to state a claim upon which relief can be granted[.]"

Fed. R. Civ. P. 12(b)(1), (6).

### A.  Standard for Dismissal Under Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear a claim or case. *See*, *e.g.*, *Democracy Rising PA v. Celluci*, 603 F. Supp.2d 780, 788 (M.D. Pa. 2009). "If a court lacks subject matter jurisdiction, it is generally barred from taking any action [that goes] to the merits of the case." *Shortt v. Richlands Mall Assocs., Inc*., No. 90-2056, 1990 WL 207354, at *4 (4th Cir. Dec. 19, 1990). Courts may consider subject matter jurisdiction at any time and must dismiss an action if subject matter jurisdiction is lacking. Fed. R. Civ.

P. 12(h)(3). The issue can be raised in any manner, including on motion of one of the parties or by the court *sua sponte. See*, *e.g.*, *In re Eltech, Inc.*, 313 B.R. 659, 662 (Bankr. W.D. Pa. 2004).

Motions under Rule 12(b)(1) can challenge subject matter jurisdiction through either a facial attack or a factual attack. A "facial attack" contests the sufficiency of the pleadings. *See*, *e.g.*, *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). A court accepts as true all well-pleaded factual allegations, viewing them in the light most favorable to the party asserting jurisdiction. *See*, *e.g.*, *In re Kaiser Group Int'l, Inc*., 399 F.3d 558, 561 (3d Cir. 2005).

In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside the court's jurisdiction. *See*, *e.g.*, *Democracy Rising PA*, 603 F. Supp. 2d at 788. In such circumstances, a court is required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. *Id*. In a factual attack, a court's analysis of the merits is not confined to the allegations in the complaint; it can consider evidence outside the pleadings to resolve factual issues bearing on jurisdiction. *See*, *e.g.*, *Davis v. Social Sec. Admin.*, No. Civ. A. 02-1595, 2003 WL 21219821, at *1 (D. Del. May 20, 2003). "In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.*

In a Rule 12(b)(1) motion to dismiss, the party invoking the federal court's jurisdiction bears the burden of establishing the court has jurisdiction. *See*, *e.g.*, *Common Cause of Pa*., 558 F.3d at 257. A motion to dismiss for want of subject matter jurisdiction

will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Calhoun v. United States*, 475 F. Supp. 1, 2-3 (S.D. Cal. 1977).

**B.** **Standard for Dismissal Under Rule 12(b)(6)**

In reviewing a complaint for sufficiency under Rule 12(b)(6), the Court accepts all material facts alleged in the complaint as true and construes all reasonable inferences in the plaintiff's favor. *ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 194 (2d Cir.2008). Nonetheless, to survive a motion to dismiss under Rule 12(b)(6), a complaint must state plausible grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court explained what the standards require by identifying two working principles. 556 U.S. 678. First, the Court explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This means that a plaintiff must plead facts in support of his claim. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and is "not bound to accept as true a legal conclusion couched as factual allegations." *Id*. at 678-79.

Second, "[t]o survive a motion to dismiss," the facts pleaded by the plaintiff accepted as true, must be sufficient to state a claim for relief that is "plausible." See 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679 (citing *Twombly*, 550 U.S. at 556). "If the plaintiff 'ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.'" *In re Wachovia Equity Securities Litigation*, 753 F.Supp.2d 326, 347 (S.D.N.Y.2011) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).

## C. This Court Lacks Subject Matter Jurisdiction Under the Rooker-Feldman Doctrine

In *Rooker v. Fidelity Trust Co.* 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486-87 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision. *Feldman,* 460 U.S. at 482 ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker,* 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283-84 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments").

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced. *Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423, 426 (2d Cir.

2014); *Hoblock v. Albany Cnty. Bd. of Elecs.,* 422 F. 3d 77, 85 (2d Cir. 2005); *Harriott v. Nationstar Mortgage LLC,* Case No. 17-CV-4748, 2018 WL 4853045, at *6 (E.D.N.Y. Sept. 28, 2018).

As to the first and fourth *Rooker-Feldman* factors, Prince cannot dispute that they lost in state court and that the Appellate Term Order was a final order rendered prior to the commencement of this adversary proceeding.

With respect to the second factor, to the extent Prince asks this Court to declare either that (i) it has title to the Premises because the Lease is not a true lease and Prince was transferred an ownership interest in the Premise, or (ii) it is entitled to the economic value of the Premises because the Lease is not a true lease and as it lost the right to occupy the Premises, it is still entitled to the economic value of the ownership of the Premises, *Rooker – Feldman* bars Prince's claim. In essence, Prince complains of injuries caused by the state court judgment (i.e. losing possession of the Premises and/or its economic value due to the lease termination). See Shanahan Decl. at Exhibit L (Appellate Term Order at p. 5) ("On this record, landlord had valid grounds for terminating this commercial lease, based on tenant's incurable default in obtaining insurance naming landlord as an additional insured."). As a result of the state court judgment, Prince was injured because the Lease was terminated and thus Prince no longer has title to the Premises or can obtain economic value from it. *See Vossbrinck*, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to the property because the foreclosure judgment was obtained fraudulently, *Rooker - Feldman* bars Vossbrinck's claim.").

With respect to the third factor, Prince seeks an order declaring that (i) the Lease is not a true lease under Section 365 of the Bankruptcy Code, (ii) the Lease is not subject to

that provision, and (iii) an interest in and to the Premises was transferred to it.   In these requests for relief, Prince seeks this Court's review and rejection of the Appellate Term Order.  By ignoring the state court decisions (including the Appellate Term Order), Prince is essentially asking the bankruptcy court to review and reject the state court's determination that Prince's commercial lease was terminated, which effectively denied Prince its rights with respect to the Premises.  *See* Shanahan Decl., Exhibit L (Appellate Term Order at pp. 2,5).  Regardless of how Prince frames the cause of action in the Complaint, the requested relief in the Complaint necessarily invites review and rejection of the findings of the landlord/tenant relationship and the existence of a commercial lease and is in essence a de facto appeal of these state court findings.  Thus, the Complaint should be dismissed under Rule 12(b)(1) based on the *Rooker-Feldman* doctrine.

**D.      The Complaint Must be Dismissed Under Rule 12(b)(6) for
Failure to State a Claim**

"In determining whether a lease is a bona fide, or true, lease, the form or title chosen by the parties is not determinative." *In re Integrated Health Servs., Inc.,* 260 B.R. 71, 75 (Bankr. D. Del. 2001) (citations omitted).   In determining whether an agreement is a true lease, the Court needs to examine the "economic substance of the transaction." *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 748 (2nd Cir. 1991). The majority of courts focus on three factors:

(i)      Whether the lessee has a purchase option at the end lease, and, if so, whether the option price is nominal;

(ii)     Whether the aggregate rental payments have a present value equal to or in excess of the original cost of the leased property; and

(iii)    Whether the lease term covers the useful life of the property.

*In re Integrated Health Services,* 260 B.R. at 76.

In addition to those factors, courts have examined other indicia, including:

> (i)      Whether the "rental" payments were calculated to compensate the lessor for the use of the property, rather than ensure a return on an investment;

> (ii)      Whether the "rent" was calculated at market rate;

> (iii)      Whether the obligations of the tenant are those normally associated with ownership;

> (iv)      Whether the property was purchased by the lessor specifically for the lessee's use; and

> (v)      The intent of the parties, including whether the agreement was structured to secure tax advantages and the purpose of the lease in light of the entire transaction

*Id.* at 76. (citations omitted)

An analysis of the factors demonstrates that Prince has failed to state a claim upon which relief can be granted based on its purported cause of action that the Lease is not a true lease and should be recharacterized as an ownership interest. First, the Lease contains no purchase option. Second, the Complaint does not allege "whether the aggregate rental payments have a present value equal to or in excess of the original cost of the leased property." Third, there is also no allegation regarding the cost of the leased property. Fourth, the Complaint fails to allege "whether the 'rental' payments were calculated to compensate the lessors for the use of the property, rather than ensure a return on an investment   Fifth, the Complaint is devoid of allegations as to whether Prince's obligations under the Lease are normally associated with ownership.

With respect to whether the Premises was purchased by lessor specifically for the lessee's use, there is no allegation that 542 Equity Associates was the owner of the Premises

at the time it entered into the Lease with Prince.  In the Complaint, Prince alleges that the intention of the parties was to cause 542 Equity Associates to sell the Premises to the Prince. Complaint at ¶24.  However, on April 11, 1980, 542 Equity Associates sold its equity interest to 542 Holding Corp. Shanahan Decl., Exhibit Q (Deed).  On the same date, 542 Holding Corp then leased the Premises back to 542 Equity Associates. Shanahan Decl. Exhibit F (Lease).   Thus, at the time of the execution of the Lease by and between 542 Equity Associates and Prince, 542 Holding Corp was the owner of the Premises and 542 Equity Associates only had a leasehold interest in the Premises, when it subsequently assigned its interest to Prince.  Shanahan Declaration Exhibit R (Assignment of Lease).  There is no allegation in the Complaint that 542 Equity Associates was the owner of the Premises at the time that it leased the Premises to Prince.  Thus, as a tenant, 542 Equity Associates only had the ability to transfer its leasehold interest to Prince.  As 542 Equity Associates was not the owner of the Premises, it could not sell the Premises to Prince, and accordingly the Lease cannot be recharacterized as an ownership interest.  Based on all of the above, Prince's claim to recharacterize the Lease as an ownership interest should be dismissed for the failure to state a claim upon which relief can be granted.

Furthermore, as the Lease has been terminated, the court lacks the power to revive it. *166 Enterprises Corp v. I G Second Generation Partners*, 81 A.D.3d 154, 159 (1st Dept. 2011) ("Once the lease was terminated in accordance with its terms, the court lacked the power to revive it"); *see also Dove Hunters Pub, Inc. v. Posner,* 211 A.D.2d 494, 495 (1st Dept. 1995) (holding that a lease cannot be revived as a matter of law after termination).  As the Lease has been terminated, Prince has no interest that can be revived to recharacterize as an ownership interest.  Thus, the claim for declaratory relief to recharacterize the Lease as an

ownership interest must be denied for the failure to state a claim upon which relief can be granted.

**E.**     **Complaint Must be Dismissed Under Rule 12(b)(6) Based on Res Judicata**

To the extent that the Court has jurisdiction over Prince's claim, its claim should be precluded by the doctrine of *res judicata*. *Res judicata* may be asserted in a motion to dismiss under Rule 12(b)(6). *See Thompson v. County of Franklin,* 15 F.3d 245, 253 (2d Cir. 1994) ("*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)."); *Vassel v. Greystone Bank,* No. 12-CV-5704, 2013 WL 2395980, at \*6 (E.D.N.Y. May 31, 2013) ("[A] party may seek dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) based on the doctrine of . . . *res judicata*/claim preclusion.").

"The doctrine of *res judicata*, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Harriott v. Nationstar Mortgage LLC,* Case No. 17-CV-4748, 2018 WL 4853045, at \*7 (quoting *Brown Media Corp. v. K&L Gates, LLP,* 854 F.3d 150, 159 (2d Cir. 2017) (other citations omitted). *See also In re Comstock Financial Services, Inc.*, 111 B.R. 849, 854 (Bankr. C.D. Cal. 1990) (doctrine of *res judicata*, or "claim preclusion", provides that "once a claim is fully litigated between certain parties and 'merged' into a final judgment, those same parties are barred from relitigating that claim.").

Federal courts sitting in New York apply New York law to determine whether claims are barred by claim preclusion. *Harriott,* 2018 WL 4853045, at \*7 (citing *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012). Under New York law, a defendant invoking claim preclusion must show that "(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them, and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Harriott,* 2018 WL 4853045, at *7 (citing *Marcel Fashions Grp., Inc. v. Lucky Bend Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015). *See also Monahan v. N.Y.C. Dept. of Corr's.,* 214 F.3d 275, 285 (2d Cir. 2000) (finding claim preclusion bars an action if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."). "A claim was or could have been raised in a prior action if the claim 'aris[es] out of the same transaction or transactions' involved in the prior action.*" Harriott,* 2018 WL 4853045, at *7 (quoting *Hameed v. Aldana,* 296 F. App'x 154, 155 (2d Cir. 2008); *see also Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) (explaining that New York's approach to *res judicata* provides that a later claim could have been raised in a prior action if it "aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief").

"[U]nder New York's transactional analysis approach to *res judicata*, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Haberman v. Zoning Board of Appeals of City of Long Beach,* 119 A.D.3d 789, 791 (2d Dept. 2014) (citations omitted). "In determining whether a factual grouping constitutes a transaction for *res judicata* purposes, a court must apply a pragmatic test and analyze how the facts are related as to time, space, origin or motivation, whether they form a

convenient trial unit and whether treating them as a unit conforms to the parties' expectations or business understanding." *Id.* at 791-792. (citations omitted).

In determining whether Prince's claim in its Complaint should be barred by *res judicata*, the Court of Appeals' analysis in *Henry Modell and Co. v. Ministers, Elders and Deacons of the Reformed Protestant Dutch Church of the City of New York*, 68 N.Y. 2d 456 (1986) ("*Modell*"), is on point. In *Modell*, the sublessee commenced an action for declaratory and injunctive relief, seeking possession of the premises based on a renewal option in the prime lease. The Supreme Court, Special Term, dismissed the complaint and the sublessee appealed. The Appellate Division affirmed and sublessee was granted leave to appeal. The Court of Appeals held that the sublessee's claim to recover possession of the property under a new theory was barred by the doctrine of *res judicata*. *Id.* at 461.

In reaching that decision, the Court of Appeals stated that "[i]t is elementary that, under the common-law doctrine of *res judicata*, a tenant who has been adjudged not entitled to possession in an action brought by the landlord cannot subsequently bring an action to recover possession on the basis of claims that could have been asserted in the first action." *Id.* Moreover, "a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Id.* (citing cases). The Court of Appeals explained that:

> [u]nderlying this rule is the recognition that "it is to the interest of the State that there should be an end to litigation" (Israel v. Wood Dolson Co., [1 N.Y.2d 116] supra, p. 118). Indeed, even a default judgment awarding possession to the landlord has been held to preclude litigation of subsidiary issues necessary to establish the tenant's subsequent claim for separate equitable relief, despite the fact that the equitable claim could not have been resolved in a counterclaim in the

first action because of limitations on the court's jurisdiction (Reich v. Cochran, 151 N.Y. 122).

*Id.* at 461.

In *Modell*, the Court of Appeals held that the plaintiff sublessee's claim fell squarely within these principles. In that case, the landlord sought to recover possession, and plaintiff defended, in part, by asserting a right of possession arising from the renewal clause in its sublease. The Court of Appeals found that the plaintiff sublessee's present claim, although technically based on the renewal clause in the prime lease, was really nothing more than a resuscitated assertion of a right to possession recast in terms of a new legal theory. Thus, the *Modell* court found that "the claim, which could have been raised as a defense in the first action …. and which now seeks to destroy or impair the 'rights … established by the first [action]' … is barred." Id. at 461-462. In reaching that decision, the *Modell* court noted that the absence of a compulsory counterclaim rule in New York "does not … permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action. *Id.* at 462 fn 2.

Similarly, Prince's new theory to recover possession of the Property (or obtain the economic value of the Property) should be barred under the doctrine of *res judicata* because there was an adjudication on the merits in state court (i.e. the Appellate Term Order). The Appellate Term Order and Judgment of Possession are final and non-appealable and conclusively establish: (i) Prince possessed a leasehold interest (and nothing more) and (ii) the Lease was properly terminated in 2016. They are entitled to full faith and credit by this Court under 28 U.S.C. §1738. *See, Allen v. McCurry*, 449 U.S. 90, 94–97 (1980); *Migra v. Warren City School District Bd. of Educ.,* 465 U.S. 75, 84-86 (1984) (requiring a federal

court to give a prior state court judgment the same preclusive effect that the judgment would be entitled to in a subsequent proceeding in a court of that state). As reflected in the Appellate Term Order, the Appellate Term held that "[60G] had valid grounds for terminating <u>this commercial lease</u>."  Appellate Term Order, p. 5 (emphasis supplied).  Prince has exhausted all of its state court appellate rights with regard to the Lease.

Prince's Complaint (a) involves the same parties and (b) arises out of the same transaction and same document -- the Lease -- as those giving rise to the state court litigations, and as such would constitute a single factual grouping, and (c) the issue involving the ownership of the Premises could have been raised in the state court litigations, as it is based on the same facts that was litigated for several years in the state court actions. Throughout those proceedings, Prince consistently took the position that it was as tenant under the Lease.[4]  Prince could have asserted that there was no default because the Lease was actually an interest in the Property in the various state court actions.  It failed to do so. This "new" claim, which could have been raised in the state court actions, would destroy or impair the rights established in favor of 60G by the state court litigations.  Prince cannot be permitted to remain silent and then bring a new action based on a pre-existing claim after exhausting all of its rights in the state court actions, as the same would be prejudicial to 60G and disturb a final, non-appealable judgment – the Appellate Term Order.  Thus, Prince's new claim is barred by the doctrine of *res judicata* in this bankruptcy case and Prince must not be allowed to relitigate that it has any right to possession of the Premises or that it owns

---

[4]Prince submitted multiple pleadings and affidavits in state court, in which Doron Zabari (Prince's president) swore, under penalty of perjury, that Prince's interest in the retail condo was that of a leasehold interest.  For instance, and without limitation, in paragraph 1 of his affidavit sworn to on September 9, 2016 and submitted in the Holdover Proceeding, Zabari stated that he was "the president of [Prince], the long-term lessee of prime retail space."  Furthermore, in paragraph 9 of his affidavit sworn to on May 11, 2016 and submitted in connection with the first Yellowstone action, Zabari swore that "Prince will do whatever it takes to preserve this valuable leasehold."  Copies of these two affidavits are annexed to the Shanahan Decl. as Exhibits S and T, respectively.

the Premises and thus is entitled to the economic value of the Premises.  *See Bell v. Alden Owners, Inc.,* 199 B.R. 451, 458 (S.D.N.Y. 1996) ("[A] state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court.") (citations omitted).

For purposes of *res judicata*, it is irrelevant whether Prince is seeking to recover possession of the Premises or if it seeks the economic value of the Premises.[5]   In both situations, Prince could have -- but failed to -- assert it had an ownership interest in the Property rather than a leasehold interest.  Questions of title and ownership "can properly be raised as a defense" in a summary eviction proceeding.  *Lewis v. Jordan*, L&T Index # 78153/16, 2017 NYLJ LEXIS 1021, at *3 (N.Y. Civ. Ct. Apr. 19, 2017) (citing RPAPL §743)[6].  *See also Sinisgallo v. Town of Islip Housing Authority*, 865 F. Supp. 2d 307, 323 (E.D.N.Y. 2012) ("In adjudicating an eviction proceeding, both the [New York Uniform District Court Act] and the [Real Property Actions and Proceeding Law] expressly authorize the district court to 'consider any defense to a cause of action or claim asserted by any party, whether such defense be denominated or deemed legal or equitable in nature'….  Thus, as [a] general rule, because '[t]he issue in any summary proceeding for possession is whether landlord is entitled to such possession…any equitable defense offered by the tenant to show that landlord is not entitled to possession must be considered.'"); s*ee also Paladino v. Sotille,* 835 N.Y.S.2d 799, 802 (N.Y. App. Term 2007) (court was required to entertain the occupant's claim to a life estate as a defense to the petitioner's assertion that they terminated

---

[5]The Complaint contains no allegations that it is seeking the economic value of ownership of the Premises.  Thus, any claim based on that theory must also be denied because the Complaint fails to state such a claim under Rule 12(b)(6).

[6]RPAPL §743 provides, in pertinent part, that …"any person in possession or claiming possession of the premises may answer…." and "[t]he answer may contain any legal or equitable defense, or counterclaim."

the occupant's alleged tenancy at will); *Decaudin v. Velazquez,* 834 N.Y.S. 2d 614, 615 (2d Dept. 2007) (Claim regarding ownership of property can be interposed as a defense in a summary proceeding). Prince could have raised its argument regarding title and ownership as a defense in the state court proceedings but didn't. Its failure to do so is now barred by *res judicata.*[7]

Based on the above, the Complaint must be dismissed on the basis that the claim is barred by *res judicata.*

## F.   Complaint Must Be Dismissed Under Rule 12(b)(6) Based on Judicial Estoppel

Judicial estoppel may be asserted in a motion to dismiss under Rule 12(b)(6). *See Romeo v. FMA Alliance, Ltd.*, 15-CV-6524 (ADS), 2016 WL 3647868, at *12 (E.D.N.Y. June 30, 2016) (citing cases). "The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island Railroad Co.,* 997 F.2d 1028, 1037 (2d Cir.) *cert. denied* 510 U.S. 992 (1993). "[J]udicial estoppel protects the sanctity of the oath and the integrity of the judicial process." *Id.*

> [T]here are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

*Id.* at 1038.

---

[7] Separate and apart from the fact the Debtor is barred by the doctrine of *res judicata* as a result of its failure to raise its recharacterization argument before the Civil Court, the Debtor ignores the fact it also could have raised its recharacterization argument before the Supreme Court in connection with its Yellowstone application and action for declaratory judgment. Indeed, a *Yellowstone* application seeks a declaratory judgment determining the parties' rights under their lease. Thus, Prince is barred from asserting the new claim in its Complaint by the doctrine of *res judicata*.

In *Bates*, the Second Circuit set forth the elements of judicial estoppel as follows: (i) the "party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding" and (ii) "the prior inconsistent positions must have been adopted by the court in some manner. *Id.*

Several years later, in *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138 (2d Cir. 2005), the Second Circuit, relying on the Supreme Court case of *New Hampshire v. Maine,* 532 U.S. 742 (2001), enumerated three factors in determining whether to apply the doctrine of juridical estoppel: (i) "a party's later position must be clearly inconsistent with its earlier position"; (ii) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (iii) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 147 (citing *New Hampshire v. Maine*, 532 U.S. at 750-751).

The first factor is easily applied in this case. Prince repeatedly and consistently argued that it had a leasehold interest in the state court actions[8], yet now it argues that it does not have a leasehold interest, but rather an ownership interest in the Premises. Prince's position that the Lease is not a true lease, but rather an ownership interest in the Premises, is clearly inconsistent with its position in the state court actions that it has a leasehold interest. *See Bates,* 997 F.2d at 1038 (first factor satisfied where "[former employee] argued that he was permanently disabled from physical labor in his previous FELA action, yet now argues that he is not permanently disabled and should be reinstated.").

---

[8]See footnote 4 and Exhibits S and T to the Shanahan Declaration.

The second factor is also easily satisfied in that Prince succeeded in persuading the state courts to accept its earlier position that it had a commercial lease. Since 2016, Prince and 60G have litigated with respect to the termination of Prince's lease. During this time, Prince has always asserted in state court that it had a leasehold interest in its affidavits and other motions submitted to the state courts.[9] In fact, Prince commenced two separate actions in New York State Supreme Court seeking the imposition of *Yellowstone* injunctions to preserve its leasehold interest. As a matter of law, a *Yellowstone* injunction is only available when a leasehold interest is at issue.[10] In order to satisfy that requirement, Prince repeatedly confirmed its status as a tenant and filed sworn affidavits that it had a leasehold interest. By and through the affidavits and its motion papers submitted to the state courts, Prince succeeded in persuading those courts that it had a leasehold interest in the Premises, including obtaining interim stays from the Supreme Court and the Appellate Division. The existence of Prince's leasehold interest is reflected in the Appellate Term Order in its conclusion that 60G had valid grounds for terminating the commercial lease. Shanahan Decl. Exhibit L (Appellate Term Order at p. 5). Prince never sought a declaration that the Lease was not in fact a true lease, but an interest in the Premises. As a result of Prince's persuading the state courts that it had a leasehold interest and the state court's acceptance of that position, this Court acceptance of an inconsistent position that the Lease is not a true lease creates the perception that Prince misled the state courts, thereby satisfying the second factor.

---

[9] See footnote 4 and Exhibits S and T to the Shanahan Declaration.

[10] To obtain a Yellowstone injunction, a party requesting relief must demonstrate that: (1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises. *Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Associates*, 93 N.Y.2d 508, 514, 715 N.E.2d 117, 120 (1999) (citations omitted).

The third factor is also satisfied because to allow Prince to disregard its prior position in state court that it had a leasehold interest and now assert an inconsistent position would be an unfair advantage and impose an unfair detriment on 60G, in that it would destroy or impair the rights established in favor of 60G in the state court litigations over the course of over three (3) years of litigation in multiple courts.

Based on the above, the Complaint is barred based on the doctrine of judicial estoppel.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Debtor's motion to dismiss the Complaint and grant such other relief as is fair and just.

**Dated:**  New York, New York
January 17, 2020

> **ROBINSON BROG LEINWAND GREENE
> GENOVESE & GLUCK P.C.**
>
> By:  /s/Steven B. Eichel
> **Steven B. Eichel
> A. Mitchell Greene**
> 875 Third Avenue, 9th Floor
> New York, New York 10022
> Tel. No.: (212) 603-6300
> *Attorneys for Defendant*
> *60G 542 Broadway Owner, LLC*