**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

PRINCE FASHIONS, INC.,

                                  Debtor.

PRINCE FASHIONS, INC.,

                                  Plaintiff,

v.

60G 542 BROADWAY OWNER, LLC and
542 HOLDING CORP.,

                                  Defendants.

Chapter 11

Case No. 19–23079 (RDD)

Adv. Proc. No. 19–08714 (RDD)

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

---

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor/Plaintiff*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND ...................................................2

ARGUMENT ...............................................................................................................................5

I. NEITHER THE DOCTRINE OF *RES JUDICATA* NOR JUDICIAL ESTOPPEL PRECLUDE THE CLAIMS ASSERTED IN THE COMPLAINT ........................................ 5

    A. The Jurisdictional Competency Exception to *Res Judicata* Applies to Both the Holdover Proceeding and the *Yellowstone* Action ....................................................................5

        i. The Civil Court Did Not Have Jurisdiction to Adjudicate Ownership in the Holdover Proceeding ...............................................................................................7

        ii. The Supreme Court Did Not Have Jurisdiction to Adjudicate Ownership in the Context in the Yellowstone Action..................................................................9

    B. The *Modell* Case is Factually Distinguishable ........................................................ 10

    C. The Complaint is Not Barred by Judicial Estoppel .................................................. 11

II. THE BANKRUPTCY COURT HAS EXCLUSIVE SUBJECT MATTER JURISDICTION OVER THIS ADVERSARY PROCEEDING ......................................... 14

    A. The *Rooker-Feldman* Doctrine Does Not Apply................................................... 14

III. THE DEBTOR HAS ADEQUATELY PLEAD THE CLAIMS ASSERTED IN THE ADVERSARY PROCEEDING ........................................................................................ 15

    A. The Economic Realities Test.................................................................................... 16

        i. The Economic Terms of the Prince Transfer................................................... 18

        ii. The Length of the Lease ................................................................................. 20

        iii. The Underlying Tax Reasons ......................................................................... 20

        iv. Whether the Lease Was Part of a Larger Agreement ..................................... 21

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*225 E. 36th St. Garage Corp. v. 221 E. 36th Owners Corp.*, 211 A.D.2d 420,............................ 9

*930 Fifth Avenue Corp. v. Shearman*, 17 Misc.3d 1126 (Civ. Ct. N.Y. Co. 2007) ...................... 8

*Antonsen v. Ward*, 943 F.2d 198, 202–204 (2d Cir. 1991) ............................................................ 6

*Aum Shree of Tampa, LLC v. HSBC Bank USA, N.A.,* 449 B.R. 584 (Bankr. M.D. Fla. 2011) ... 14

*Barstow Road Owners, Inc. v. Billing,* 179 Misc.2d 958 (Dist.Ct. Nassau Cnty. 1998) ............... 8

*Bates v. Long Island Railroad*, 997 F.2d 1028, 1038 (2d Cir. 1993) ......................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)…...........16

*Bliss World LLC v. 10 W. 57th St. Realty LLC,* 2019 NY Slip Op 01509,¶ 1 (1st Dep't 2019) ....... 9

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994).......................................................................... 5,6

*Chemical Bank v. Aetna Ins. Co.*, 417 N.Y.S.2d 382 (Sup. Ct. N.Y. Co. 1979) ......................... 13

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006)......................................................... 16

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F. 3d 284
   (9th Cir. 1997)......................................................................................................................... 11

*Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir. 1987).................................................................. 6

*DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) ....................................... 11,12

*Desjardins v. Van Buren Community Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994) .............................. 12

*DiBello v. Penflex, Inc.* 165 Misc.2d 994 (Co. Ct. Rensselaer Co., 1995) .................................. 8

*Drake v. Cunningham,* 127 A.D., 79, 111 N.Y.S. 199 (2d Dep't 1908) ........................................ 7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...................................... 14

*Ferber v. Salone Moderne*, 174 Misc. 2d 945, 668 N.Y.S.2d 864 ................................................ 7

*Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs.*, 252 A.D.2d 453,
   675 N.Y.S.2d 599 (1998)........................................................................................................... 9

*Helfand v. Gerson,* 105 F. 3d 530 (9th Cir. 1997)....................................................................... 11

*Henry Modell & Co. v. Minister*, 68 N.Y.2d 456 (N.Y. 1986)..................................................... 10

*Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993) ............................................... 15

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2005). ............................................... 14

*In re Adelphia Recovery Trust*, 634 F.3d 678  (2d Cir. 2011) ........................................... 11,12,13

*In re AES Corp. Sec. Litig.*, 825 F. Supp. 578 (S.D.N.Y. 1993)................................................... 15

*In re Best Products Co., Inc.,* 157 B.R. 222 (Bankr.S.D.N.Y.1993) ........................................... 16

*In re Hotel Syracuse, Inc.,* 155 B.R. 824 (1993) ................................................................... 10,13

*In re Hunter,* 4 N.Y.3d 260, 269, 827 N.E.2d 269 (2005)............................................................. 6

*In re Lefrak*, 223 B.R. 431 (Bankr. S.D.N.Y. 1998)............................................................... 17,18

*In re PCH Assocs.,* 804 F.2d 193(2d Cir. 1986); ....................................................................... 16

*In re Robertson*, 147 B.R. 358 (Bankr.D.N.J.1992) .................................................................. 20

iii

*International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744 (2d Cir.1991) .......... 16

*Long Island Gynecological Service, P.C. v. 1103 Steward Ave. Assocs. Ltd. P 'ship,* 224 A.D.
    2d 591 (2d Dep't 1996). ................................................................................................................. 9

*Marketplace v. Smith*, 694 N.Y.S.2d 893 ............................................................................................ 7

*Mashie v. Dooley*, 48 Misc. 2d 1098, 266 N.Y.S. 2d 661 (Sup. 1965)................................................. 7

*Matter of Mahshie v Dooley*, 48 Misc. 2d 1098, 1100, 266 N.Y.S.2d 661 ..................................... 7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990) ... 13

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................................................ 11

*Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir.2003) ............................................................................. 15

*O'Brien v City of Syracuse*, 54 N.Y.2d 353, 429 N.E.2d 1158 (1981) ............................................. 5

*O'frias v. Melton*, 32 A.d. 2d 1046, 303 N.Y.S. 2d 785 (2d Dep't 1969) ....................................... 7

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86
    (2d Cir. 2010)................................................................................................................................... 16

*Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) ................................................................ 16

*Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343 (1999)......................................................... 6

*Phifer v. City of New York*, 289 F.3d 49, 2002 U.S. App. LEXIS 7340 (2d Cir. 2002). ......... 14,15

*Porter v. Newton,* 141 Misc. 760, 253 N.Y.S. 200 (Sup 1931) ......................................................... 7

*Post v 120 E. End Ave. Corp.,* 62 N.Y.2d 19 .................................................................................... 9

*Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113 (2d Cir. 2004) ............................. 12

*Reliable Wool Stock LLC v. 117-119 Leasing Corp.*, 2018 NY Slip Op 51022
    (App. Term 1st Dep't 2018) .......................................................................................................... 10

*Scheuer v. Rhodes*, 416 U.S. 232 (1974). ......................................................................................... 15

*Simon v. Safelite Glass Corp.*, 128 F.3d 68 ..................................................................................... 12

*Tedesco v. Tedesco,* 2009 NY Slip Op 5767 (2d Dept 2009). ......................................................... 13

*Tivoli Associates v. Wing,* 122 Misc.2d 901 (Civ.Ct. Kings Cnty. 1984) ...................................... 8

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005)................................................ 11,13

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ........................................................... 11

**Statutes**

26 U.S.C. § 216(b)(1)(D)....................................................................................................................... 20

N.Y. City Civ. Ct. Act § 203 (McKinney)............................................................................................. 8

RPAPL § 711 (McKinney 1985) ............................................................................................................ 8

**Treatises**

18 Charles A. Wright, Arthur R. Miller Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE
    (2d ed. 2002)..................................................................................................................................... 6

CPLR § 401 (McKinney 1972) Practice Commentary ...................................................................... 7

Siegel, HANDBOOK ON NEW YORK PRACTICE 764 (1978) .......................................................... 7

## Academic Authorities

Douglass G. Boshkoff, *Bankruptcy in the Seventh Circuit: 1989-1990*, 24 IND. L. REV. 551 ....... 6

Dale A.Whitman*, Financing Condominiums and Cooperatives,* 13 TULSA L.J. 15 .................... 21

Marshall E. Tracht, *Leasehold Recharacterization in Bankruptcy: A Review and Critique*
(N.Y. LAW SCH. LEGAL STUD. RES. PAPER NO. 12/ 13 #42) .................................................... 18

Miller, *Tax Problems of the Housing Cooperative under the 80% Income Rule,* 18 PRAC. LAW.
81 (No. 4, Apr. 1972). ........................................................................................................... 21

Prince Fashions, Inc., the above-captioned debtor and plaintiff herein (the "**Debtor**"), through its counsel, Rosen & Associates, P.C., submits this response (the "**Response**") in opposition to the *Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* (the "**Motion to Dismiss**") [Adv. Proc. Doc. No. 7] filed by defendant 60G 542 Broadway Owner, LLC ("**60G**"), and respectfully represents as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The arguments advanced by 60G in its Motion to Dismiss are based on two primary contentions. First, 60G argues that the claims asserted in this proceeding are barred by doctrines of preclusion and judicial estoppel. In applying these doctrines however, 60G routinely misstates the case law's application to the facts in this case. Indeed, although it devotes one-third of its motion to regurgitating the procedural posture of the state court proceedings, 60G ignores the most salient fact before this Court: neither the Civil Court in the holdover proceeding, nor the Supreme Court in the *Yellowstone* action had jurisdiction to adjudicate the claims asserted here. The Debtor's complaint does not seek possession of the premises, and, thus, neither *res judicata* nor the *Rooker-Feldman* doctrine deprive the Court of jurisdiction to adjudicate this proceeding.

2.      60G's second argument, that the complaint should be dismissed for failure to state a claim, is also unavailing. As discussed below, the Complaint (as defined below) alleges, with sufficient particularity, a number of facts that raise a strong and cogent argument that the "economic realities" of the transaction at issue effectuated a transfer of ownership to the Debtor. Accepting the allegations as true, the Debtor's claims are more than sufficient to withstand dismissal.

1

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

3.      The Debtor formerly occupied a parcel of commercial property (the "**Premises**") at 542 Broadway, New York, New York 10012 since 1980, pursuant to a 99-year lease – with two 50-year options to renew[1] (the "**Lease**") by and between the Debtor,[2] as tenant, and defendant 542 Holding Corp. ("**Holding Corp.**"), as landlord.

4.      In May of 2015, Holding Corp. purported to sell its interest in the Premises to 60G, which financed the purchase with the proceeds of a $12,900,000 mortgage loan from Meadow Partners LLC (the "**Mortgage**").

5.      The Mortgage was part of an overall scheme of the mortgagee and 60G to deprive the Debtor of its property rights, evidenced by the terms of the promissory note itself, which requires 60G to evict the Debtor and re-let the Premises at *market neutral terms. See Affidavit in Support of Debtor's Response to the Motion to Dismiss* [Doc. No. 13] (hereinafter the "**Weiner Affidavit**"), Ex. D at 28 and 47.

6.      After taking title to the Premises, 60G embarked on a campaign to evict the Debtor, in a blatant attempt to reap a windfall and deprive the Debtor of its proprietary interest at all cost.

7.      To this end, 60G issued a series of default notices starting in March of 2016, alleging, *inter alia*, that the Debtor had breached its obligation under the Lease to name 60G as an additional insured under its commercial general liability policy, which spawned a litany of

---

[1] The extended term of which runs for another 160 years
[2] As assignee of 542 Equity Associates

2

contentious, time consuming and expensive litigation in various state court proceedings (collectively, the "**State Court Proceedings**").[3]

8.      Subsequently, the Debtor timely commenced an action in the New York Supreme Court, County of New York (the "**Supreme Court**"), styled, *Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*, Index No. 651255/16 (N.Y. Sup. Ct. 2018), seeking a *Yellowstone* injunction, in order to maintain the *status quo* pending resolution of the underlying merits (the "*Yellowstone* **Action**").

9.      Ultimately on appeal, the Appellate Division of the New York Supreme Court, First Department, affirmed denial of the Debtor's request for a *Yellowstone* injunction on the insurance issue (the "**Appellate Division Order**"). *See* WEINER AFF., EX. C (*Appellate Division Order*) (*Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*, 149 A.D.3d 529, 53 N.Y.S.3d 24 (1st Dept. 2017)).

10.      60G then commenced a summary holdover proceeding in the Civil Court of the City of New York (the "**Civil Court**"), styled, *60G 542 Broadway Owner, LLC v. Prince Fashions, Inc., et al.*, L&T Index No. 69380/2016 (N.Y.C. Civ. Ct. 2016) (the "**Holdover Proceeding**"), seeking to terminate the Lease based upon the alleged breach of the insurance provision, pursuant to a conditional limitation clause.

11.      Although the Civil Court initially granted 60G's motion for a judgment of possession (the "**Summary Judgment Order**"), upon renewal, the Civil Court granted the Debtor's motion for reargument and renewal from the Summary Judgment Order (the "**Renewal Order**"), based in part upon 60G's documented withholding of critical facts from the court, as

---

[3] The Debtor incorporates by reference the *Debtor's Response to the Motion to Dismiss* [Doc. No.12] ¶¶ 11-23 and the *Declaration of Doron Zabari Pursuant to Rule 1007-2* [Doc. No. 10] *Schedule 1*, for a more detailed account of the factual and procedural background of the State Court Proceedings.

well as previously unavailable evidence introduced by the Debtor that raised triable issues with respect to the Debtor's untried defenses. *See Declaration in Support of Motion to Dismiss* [Adv. Proc. Doc. No. 7-2] (hereinafter the "**Declaration in Support**"), Ex.'s J and K (*Summary Judgment Order* and *Renewal Order*, respectively).

12.  On 60G's appeal of the Renewal Order to the Appellate Term, First Department, the court reversed the Renewal Order and granted 60G a judgment of possession with the warrant to issue forthwith (the "**Appellate Term Order**"). However, the Appellate Term Order emphasized that the Appellate Division Order First denying *Yellowstone* relief, "was not an adjudication of the merits of the validity of landlord's termination of the lease and did not constitute law of the case." *See* DECL. IN SUPPORT, Ex.'s L and M.

13.  Confronted with the imminent risk of losing its only asset and sole source of revenue, the Debtor, acting *pro se*, petitioned this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**") on May 29, 2019 (the "**Petition Date**"), intending to utilize the protection of chapter 11 of the Bankruptcy Code and reorganize in an orderly fashion.

14.  On November 22, 2019, the Debtor filed a complaint (the "**Complaint**") [Adv. Proc. Doc. No. 1] against 60G and Holding Corp., commencing this adversary proceeding styled, *Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC et al.* (the "**Adversary Proceeding**").

15.  Through the Complaint, the Debtor seeks declaratory relief that, the Lease, though terminated, is among the underlying documents of a transaction (the "**Prince Transfer Documents**," as defined in the Complaint) that intended to memorialize a

transfer of ownership rights to the Premises (the "**Prince Transfer**," as defined in the Complaint). *See* COMPL. ¶¶ 19-24.

16.     On January 17, 2020, 60G filed its Motion to Dismiss for failure to state a claim and lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure (the "**Federal Rules**" or "**Rules**"), applicable to this proceeding through Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. However, as discussed, its argument is based on the misguided contention that the Debtor's claims are precluded.

17.     60G's argument that the Complaint fails to state a claim is also flawed, in that it fails to recognize the flexible standard which governs the recharacterization inquiry. The Debtor has made no argument that the Lease is a financing device. The factors considered in the typical recharacterization case (*i.e.*, the distinction between a "true lease" and a "disguised financing agreement") do not apply.

18.     For these reasons, and those more fully discussed below, this Court should deny 60G's Motion to Dismiss in its entirety.

## ARGUMENT

I.     **NEITHER THE DOCTRINE OF *RES JUDICATA* NOR JUDICIAL ESTOPPEL PRECLUDE THE CLAIMS ASSERTED IN THE COMPLAINT**

A.     **The Jurisdictional Competency Exception to *Res Judicata* Applies to Both the Holdover Proceeding and the *Yellowstone* Action**

19.     The doctrine of *res judicata* or "claim preclusion" provides that a final judgment on the merits, "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90 (1980)).

20.     Pursuant to New York's transactional approach,[4] "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v City of Syracuse*, 54 N.Y.2d 353, 429 N.E.2d 1158 (1981) (citing *Matter of Reilly v Reid,* 45 NY2d 24, 29-30 (1978)). "The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *In re Hunter,* 4 N.Y.3d 260, 269, 827 N.E.2d 269 (2005).

21.     However, New York courts have long-recognized the "jurisdictional competency exception" to *res judicata* espoused by the Restatement (Second) of Judgments, under which: "a claim is ***not barred*** by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim." *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir. 1987) (citing *Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 72 A.D.2d 385, 391, 424 N.Y.S.2d 918, 922 (2d Dep't 1980)) (emphasis added); *see also Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 349, 712 N.E.2d 647, 650 (1999) (New York Court of Appeals recognizes the judicial competency exception to claim preclusion); *Antonsen v. Ward*, 943 F.2d 198, 202–204 (2d Cir. 1991); *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) (*res judicata* not applicable when courts erect "formal barriers" which prevent a litigant from presenting his entire claim); *accord* 18 Charles A. Wright, Arthur R. Miller Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4412, at 285 (2d ed. 2002) ("Claim preclusion is readily denied when the remedies sought in the second action could not have been sought in the first action, so long as there was good reason to maintain the first action in a court or in a form of proceeding that could not afford full relief"). *Cf.* Douglass G. Boshkoff, *Bankruptcy in the Seventh Circuit: 1989-1990*, 24

---

[4] *In re XO Commc'ns, Inc.,* 330 B.R. 394, 446 (Bankr. S.D.N.Y. 2005) ("When faced with a state-court judgment relating to an exclusively federal claim, a federal court must first look to the law of the rendering State to ascertain the effect of the judgment.") (citations omitted).

IND. L. REV. 551, 564 (1991) (recognizing the importance of determining the applicability of the Restatement's Section 26 exception to the general rule against claim splitting where the first court is one of limited jurisdiction in analyzing the res judicata effect of bankruptcy court judgments).

22.     In the Motion to Dismiss, 60G summarily claims that the Complaint is precluded by *res judicata* because the "Appellate Term Order and Judgment of Possession are final and non-appealable" and were the result of an adjudication on the merits, conveniently omitting any discussion of the inherit limitations of the Civil Court. *See* MOT. TO DISMISS 18.

23.     However, because neither the Civil Court in the Holdover Proceeding nor the Supreme Court in the *Yellowstone* Action had jurisdiction to adjudicate ownership of the Premises, *res judicata* does not apply.

### i.     The Civil Court Did Not Have Jurisdiction to Adjudicate Ownership in the Holdover Proceeding

24.     It is indisputable that the Civil Court is wholly without jurisdiction to determine interests in real property in a summary proceeding. *Matter of Mahshie v Dooley*, 48 Misc. 2d 1098, 1100, 266 N.Y.S.2d 661; *Ferber v. Salone Moderne*, 174 Misc. 2d 945; 668 N.Y.S.2d 864; *O'frias v. Melton*, 32 A.d. 2d 1046, 303 N.Y.S. 2d 785 (2d Dep't 1969); *aff'd* 27.Y.2d 638, 313 N1.Y.S.2d 765, 261 N.E.2d 670 (1970). "The court, in the context of summary eviction proceeding, does not have jurisdiction to determine issues that do not fall within the scope of the proceeding. Thus, questions concerning title will not be determined in a summary eviction proceeding." *Drake v. Cunningham,* 127 A.D., 79, 111 N.Y.S. 199 (2d Dep't 1908); *Porter v. Newton,* 141 Misc. 760, 253 N.Y.S. 200 (Sup. 1931); *Mashie v. Dooley*, 48 Misc. 2d 1098, 266 N.Y.S. 2d 661 (Sup. 1965).

25.     To be sure, a summary proceeding in New York, such as the Holdover Proceeding, is designed to facilitate a "summary disposition" of the issues presented (CPLR § 401

(McKinney 1972) Practice Commentary at 477), and has been described as providing landlords "a simple, expeditious and inexpensive means of regaining possession of premises." *See Marketplace v. Smith*, 694 N.Y.S.2d 893 (citing *Parkchester Apartments Co. v. Hawkins,* 111 Misc.2d 896 (N.Y.App. Term, *443 1 Dept., 1981). Thus, procedures in a special proceeding are designed to further its summary nature. *See* Siegel, HANDBOOK ON NEW YORK PRACTICE 764 (1978). The statutory requirements must be strictly complied with. *DiBello v. Penflex, Inc.* 165 Misc.2d 994 (Co. Ct. Rensselaer Co., 1995); *Barstow Road Owners, Inc. v. Billing,* 179 Misc.2d 958, 687 N.Y.S.2d 845, 849 (Dist.Ct. Nassau Cnty. 1998) (the "primary purpose and intention of summary proceedings is the 'speedy and expeditious disposition' of the issue as to the right of the landlord to the 'immediate possession of his real property.").

26.     Section 711(1) of the Real Property Actions and Proceedings Law ("**RPAPL**"), strictly limits the subject matter jurisdiction of the court in a summary proceeding to "recover possession of real property located in whole or in part within the municipality, to remove tenants therefrom, and to render judgment for rent due without regard to amount." *See* RPAPL § 711 (McKinney 1985); *see also Tivoli Associates v. Wing,* 122 Misc.2d 901, 471 N.Y.S.2d 1018, 1019-1020 (Civ.Ct. Kings Cnty. 1984) ("In a special proceeding pursuant to article 7 of the RPAPL, a court has no jurisdiction to adjudicate a monetary claim other than rent allegedly owed.").

27.     As the court recognized in *930 Fifth Avenue Corp. v. Shearman* (17 Misc.3d 1126, 851 N.Y.S.2d 71, 2007 N.Y. Slip Op. 52153 (Civ. Ct. N.Y. Co. 2007), *aff'd* 23 Misc.3d 13, 885 N.Y.S.2d 712, 2009 N.Y. Slip Op. 50759 (App. T. 1st Dept. 2009), the Civil Court is "not empowered to order an equitable remedy not specifically conferred nor recoverable in a summary

proceeding under [this] section") (citing N.Y. City Civ. Ct. Act § 203 (McKinney). The issue of title rests solely with courts with plenary powers.

### ii. The Supreme Court Did Not Have Jurisdiction to Adjudicate Ownership in the Context in the Yellowstone Action

28. Although the Supreme Court is a court of general jurisdiction with plenary powers, a *Yellowstone* action is much more limited.

29. The purpose of a *Yellowstone* injunction is to allow a commercial tenant confronted by a threat of termination of its lease to maintain the status quo by obtaining a stay of the cure period until the merits of the dispute could be resolved in court. *See Post v 120 E. End Ave. Corp.,* 62 N.Y.2d 19, 25, 475 N.Y.S.2d 821, 464 N.E.2d 125; *Long Island Gynecological Service, P.C. v. 1103 Steward Ave. Assocs. Ltd. P 'ship,* 224 A.D. 2d 591, 593, 638 N.Y.S. 2d 959 (2d Dep't 1996).

30. The party requesting a *Yellowstone* injunction must demonstrate that: "(1) it holds a commercial lease; (2) it received from the landlord either a notice of default, a notice to cure, or a threat of termination of the lease; (3) it requested injunctive relief prior to the termination of the lease; and (4) it is prepared and maintains the ability to cure the alleged default by any means short of vacating the premises" *225 E. 36th St. Garage Corp. v. 221 E. 36th Owners Corp.,* 211 A.D.2d 420, 421, 621 N.Y.S.2d 302.

31. "In contrast to the usual preliminary injunction, which requires a showing of likelihood of success on the merits, a *Yellowstone* injunction will be granted to any commercial tenant who receives a notice to cure, seeks injunctive relief before the cure period ends and demonstrates that the tenant is willing and able to cure if it ultimately is found that such cure is necessary." *Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs.,* 252

A.D.2d 453, 455, 675 N.Y.S.2d 599, 601 (1998), *rev'd*, 93 N.Y.2d 508, 715 N.E.2d 117 (1999) (citing *Garland v. Titan West Assocs.,* 147 A.D.2d 304, 307–08, 543 N.Y.S.2d 56)).

32.     Moreover, it is well settled law that "[t]he denial of a Yellowstone injunction does not resolve the underlying merits of disputes about whether there is any default warranting termination of the lease." *Bliss World LLC v. 10 W. 57th St. Realty LLC,* 2019 NY Slip Op 01509,¶ 1 (1st Dep't 2019); *Reliable Wool Stock LLC v. 117-119 Leasing Corp*., 2018 NY Slip Op 51022(U), ¶ 1, 60 Misc. 3d 133(A) (App. Term 1st Dep't 2018) ("Supreme Court's determination denying tenant's application for Yellowstone relief on the ground that tenant's failure to obtain insurance was not curable was not an adjudication on the merits of the validity of landlord's termination of the lease and does not constitute law of the case.")

33.     Thus, Despite 60G's conclusory statements to the contrary (*See* MOT. TO DISMISS, n. 7), denial of a *Yellowstone* injunction "does not act as *res judicata* in a subsequent action since the purpose of a preliminary injunction is merely to hold the matter in status quo until an opportunity is afforded to decide the case on the merits." *In re Hotel Syracuse, Inc.,* 155 B.R. 824, 832 (1993) (citing *Ryger v. Segal,* 129 Misc.2d 763, 494 N.Y.S.2d 617, 618 (Sup.Ct.1985)).

### B.     The *Modell* Case is Factually Distinguishable

34.     60G relies heavily on the 1986 opinion of the New York Court of Appeals which held that, "a tenant who has been adjudged not entitled to possession in an action brought by the landlord is not free to remain silent … and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *See* MOT. TO DISMISS 18-20 (citing *Henry Modell & Co. v. Minister*, 68 N.Y.2d 456 (N.Y. 1986)).

35.     However, in *Modell*, after losing in the first action, the tenant filed a separate suit **asserting the right of possession** to the property pursuant to a renewal clause in the

lease. The court found that the plaintiff's theory was "nothing more than a resuscitated assertion of a right to possession recast in terms of a new legal theory" and accordingly dismissed the complaint. *See Henry Modell & Co. v. Minister*, 68 N.Y.2d 456 (N.Y. 1986).

36.     Here, the Debtor is not seeking to recover possession. 60G's reliance on the *Modell* case is misplaced. For all of these reasons, the Court should reject its 60G's *res judicata* arguments.

### C.     The Complaint is Not Barred by Judicial Estoppel

37.     Judicial estoppel is an equitable doctrine designed to preserve the integrity of the judicial process by preventing "a party who plays fast and loose with the courts, from gaining [an] unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) (citation omitted).

38.     Thus, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citations omitted).

39.     Judicial estoppel applies only when: (i) "a party's later position is 'clearly inconsistent' with its earlier position"; (ii) "the party's former position has been adopted in some way by the court in the earlier proceeding"; and (iii) "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (*quoting New Hampshire v. Maine*, 532 U.S. at 750-51).

40.     The use of judicial estoppel is limited to preventing an "affront to judicial dignity." *See Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F.

3d 284 (9th Cir. 1997); *Helfand v. Gerson,* 105 F. 3d 530, 536 (9th Cir. 1997) (doctrine "seeks to prevent the deliberate manipulation of the courts").

41.     In the Second Circuit, judicial estoppel is further limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *In re Adelphia Recovery Trust*, 634 F.3d 678, 695 (2d Cir. 2011); *accord DeRosa v. Nat'l Envelope Corp.*, 595 F.3d at 103; *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir.2005). "This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *In re Adelphia Recovery Trust*, 634 F.3d at 695 (*citing Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997)).

42.     60G claims that because the Debtor relied on the existence of the Lease in State Court, it is judicially estopped from advancing its claims to ownership in this proceeding. *See* Mot. to Dismiss 22-24. However, 60G has failed to demonstrate that even one of the three factors discussed above is satisfied here.

43.     In considering the first factor—whether two statements made by a party in different proceedings are "clearly inconsistent"—the Second Circuit has held that "there must be a true inconsistency between the statements in the two proceedings. ***If the statements can be reconciled there is no occasion to apply an estoppel***." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, at 72-73 (emphasis added) (*citing AXA Marine & Aviation Ins. (UK) Ltd.*, 84 F.3d at 628;*In re Brody*, 3 F.3d 35, 39 (2d Cir.1993); *Desjardins v. Van Buren Community Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994)); *see also DeRosa v. Nat'l Envelope Corp.*, 595 F.3d at 104 (declining to apply judicial estoppel absent an "irreconcilable direct conflict"); *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004) (judicial estoppel will not apply unless the two statements "cannot be reconciled with any amount of explanation" (internal quotations omitted)).

44.     Here, the Debtor's position that it acquired ownership to the Premises does not contradict the fact that it entered into the Lease. To the contrary, the Debtor relies upon the terms of the Lease, among other documents, in support of its claim of ownership. To be sure, even in the *Yellowstone* Action, the Debtor consistently argued that the term of the Lease supports a claim of equity. *See Affirmation in Support of Motion for Renewal* ¶ 5 ("Prince's long-term Lease … is tantamount to an interest in real property and is not a conventional commercial lease").

45.     Addressing similar facts, in *In re Hotel Syracuse, Inc.,* the Bankruptcy Court for the Northern District of New York held that:

> Debtor's position before this Court, that the Lease is not a true lease, is not truly inconsistent with the position taken in the state court since, as an agreement which meets the state law definition of a lease but which also serves primarily as a financing vehicle might nonetheless be found not to satisfy the requirements of Code § 365(d)(4)

*In re Hotel Syracuse, Inc.,* 155 B.R. 824, 838 (1993) (citing *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1182 (9th Cir.1988)).

46.     Similarly, the Debtor's claims are easily reconciled with the position taken in the state court, a far-cry from "clearly inconsistent."

47.     For the second factor to apply, "the prior inconsistent statement must have been adopted by the court in some manner." *Bates v. Long Island Railroad*, 997 F.2d 1028, 1038 (2d Cir. 1993); *accord In re Adelphia Recovery Trust*, 634 F.3d at 695 (earlier tribunal must accept accuracy of litigant's statements); *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2005) (same); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir.1990) ("The doctrine of judicial estoppel ... applies only if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position."); *Chemical Bank v. Aetna Ins. Co.*, 417 N.Y.S.2d 382, 384 (Sup. Ct. N.Y. Co. 1979) (same).

48.    Remarkably, after terminating the Debtor's 200-year tenancy through a collusive scheme of pretextual defaults, 60G has the effrontery to claim that the Debtor was somehow successful in the state court.

49.    However, clearly having lost, the Debtor did not "secure a judgment in its favor … in the prior proceeding." *Tedesco v. Tedesco,* 2009 NY Slip Op 5767, 2 (2d Dept 2009).

50.    With respect to the third factor, as discussed above, the Debtor is not asserting any positions in this proceeding that are inconsistent with its prior positions in the state court. Even if it was, it is inconceivable how the Debtor could gain an unfair advantage against 60G's right of possession. *See Aum Shree of Tampa, LLC v. HSBC Bank USA, N.A. (In re Aum Shree of Tampa, LLC),* 449 B.R. 584 (Bankr. M.D. Fla. 2011) (secured creditor did not derive an unfair advantage against the debtor by being permitted to establish its ownership of two notes issued by the debtor, despite a prior inconsistent position taken by the creditor's predecessor).

51.    The Debtor's position in this proceeding can hardly be characterized as "an affront to judicial dignity."

## II.    THE BANKRUPTCY COURT HAS EXCLUSIVE SUBJECT MATTER JURISDICTION OVER THIS ADVERSARY PROCEEDING

### A.    The *Rooker-Feldman* Doctrine Does Not Apply

52.    60G's claim that the Complaint violates the *Rooker-Feldman* doctrine is also unavailing.

53.    The *Rooker-Feldman* doctrine holds that federal district courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Phifer v. City of New York*, 289 F.3d 49, 2002 U.S. App. LEXIS 7340 (2d Cir. 2002).

54.     Both the Supreme Court and the Second Circuit have drastically narrowed the scope of *Rooker-Feldman* to "cases brought by state-court losers complaining of injuries caused by state-court judgments...." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2005). This Court only lacks the jurisdiction to entertain claims "inextricably intertwined" with determination in the State Court . *Phifer*, 289 F.3d 49, 2002 U.S. App. LEXIS 7340, at *12-13.

55.     With respect to whether claims are "inextricably intertwined," the Second Circuit has stated that "if the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker-Feldman* plainly will bar the action," however, "where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not inextricably intertwined and therefore not barred by *Rooker-Feldman*." *Phifer,* 2002 U.S. App. LEXIS 7340, at *13 (citations omitted).

56.     As discussed above, the Complaint is not grounded upon an injury caused by any state court decision, nor is the Complaint is a "de facto" appeal, as 60G asserts. *See Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir.2003) ("A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision"). Thus, the Debtor's claims are not precluded by the *Rooker-Feldman* doctrine.

## III.     THE DEBTOR HAS ADEQUATELY PLEAD THE CLAIMS ASSERTED IN THE ADVERSARY PROCEEDING

57.     On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*,

825 F. Supp. 578, 583 (S.D.N.Y. 1993); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980)).

58. The Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### A. The Economic Realities Test

59. In determining whether an alleged lease is a "true lease" for purposes of section 365 of the Bankruptcy Code, Courts in the Second Circuit are not constrained by the labels placed upon the transaction by the parties, but rather, consider the economic substance of the transaction, and whether "the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship." *See International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 748 (2d Cir.1991); *In re PCH Assocs.*,

804 F.2d 193, 200 (2d Cir. 1986); *see also In re Best Products Co., Inc.,* 157 B.R. 222, 230

(Bankr.S.D.N.Y.1993) (citing *PCH Associates,* 804 F.2d at 198) ("We apply an 'economic

realities' test: while the parties to a transaction may intend that, as between themselves, their

relationship be governed by the label they affix, that label neither governs the rights of third parties

nor affects the legal consequences of the parties' agreement.").

60.     As the Second Circuit held in *In re PCH Assocs.* "It is well established that

a bankruptcy court, as a court of equity, may look through form to substance when determining

the true nature of a transaction as it relates to the rights of parties against a bankrupt's estate." *PCH*

*Associates,* 804 F.2d at 198 (citing *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed.

281 (1939)).

61.     In *In re Lefrak*, the Court stated that:

> Typically, the reported cases address the distinction between
> 'true' leases and financing arrangements, and apply criteria
> that focus on that distinction. These include whether the
> 'rent' reflects compensation for the use of the property or is
> structured as a return on an investment, whether the purchase
> price is based on the market value of the land or the amount
> necessary to finance the transaction, ***whether the property***
> ***was purchased specifically for the lessee's use***, whether the
> transaction is structured as a lease for tax reasons, whether
> the lessee assumes the obligations normally associated with
> outright ownership and whether the lessee can acquire the
> property at the end of the term for a nominal payment. Other
> relevant considerations are ***the length of the lease,*** and
> ***whether the lease is part of a larger agreement***.

*In re Lefrak*, 223 B.R. 431, 435 (Bankr. S.D.N.Y. 1998) (citing *In re PCH Assocs*., 804 F.2d at

200–01; *In re KAR Dev. Assocs.,* L.P., 180 B.R. at 639; *In re Barney's, Inc.,* 206 B.R. at 334; *In re*

*Challa*, 186 B.R. 750, 757 (Bankr.M.D.Fla.1995); *In re Hotel Syracuse, Inc.,* 155 B.R. at 838–39;

see S. Rep. No. 95–989, at 64 (1978)) (emphasis added).

### i. The Economic Terms of the Prince Transfer

62.     Although 60G makes much of the fact that the "Lease contains no purchase price" (*See* MOT. TO DISMISS 13), the Complaint makes clear that the consideration for the Debtor's interest in the Lease was memorialized by the Security Agreement (as defined in the Complaint) and the Debtor's payment of $40,000 (the "**Purchase Price**"). *See* COMPL. ¶ 19.

63.     Moreover, in long-term leases, because the "use value" substantially outweighs the present value of the right to acquire the property, the "repurchase option may only have a minimal economic substance." *See* Marshall E. Tracht, *Leasehold Recharacterization in Bankruptcy: A Review and Critique* (N.Y. LAW SCH. LEGAL STUD. RES. PAPER NO. 12/ 13 #42) p. 24, n. 118 (2013) ("In a long-term lease, the use value so swamps the present value of the reversion that ownership of the reversion is no longer an accurate measure of the potential for forfeiture.").

64.     For this reason, 60G's reliance on the fact that the Complaint does not allege "whether the aggregate rental payments have a present value equal to or in excess of the original cost of the leased property" (MOT. TO DISMISS 13) is misplaced. The Complaint sufficiently alleges that, "the Purchase Price represented the fair-market value of a fee interest in and to the Premises at the time of the 1980 Prince Transfer." COMPL. ¶ 22.

65.     In *In re Lefrak*, recognizing that the debtor's 99-year proprietary lease in a cooperative apartment building was not a "true lease," the bankruptcy court for the Southern District of New York held that:

> In order to acquire his cooperative interest, [the debtor] had to make a substantial payment, similar to buying a house, which the Corporation used to fund the acquisition of the building …
>
> Once [the debtor] became a shareholder, he acquired the right to enter into a 98-year proprietary lease. His maintenance obligation under the Lease reflected his *pro rata* share of the Corporation's projected cash requirements,

> *i.e.,* operating expenses, mortgage and taxes, budgeted annually by the Corporation's board of directors without regard to profit. In this manner, the usual landlord expenses of operating the building were passed through the Corporation directly to the tenant shareholders who bore the ultimate obligation to pay them.

*Lefrak*, 223 B.R. at 436.

66.     Here too, the Debtor purchased the right to enter into the Lease by paying the Purchase Price in accordance with the Security Agreement. As the Complaint makes clear, the "rent reserved" under the Lease, fixed throughout its term at 19.99% of the "net operating expenses of the building," represented its proportionate share of the expenses of the building. *See* Compl. ¶ 31.

67.     The distinction between the rights of a proprietary lessee and the usual tenant (albeit in a different context)[5] is perhaps best articulated by the bankruptcy court in *In re Robertson*:

> [T] he role of the cooperator/shareholder is not the same as that of the typical tenant. Nor does the function of the cooperative achieve the same results of the landlord/tenant relationship.
>
> As stated previously, the cooperator/shareholder is entitled to occupancy permanently for the life of the cooperative corporation. The tenant does not have such security, in fact, his occupancy is limited to the term of the lease, or if there is no written lease, to a month to month tenancy.
>
> The cooperator is a stockholder-occupant ***who pays one lump sum*** (as the Debtor did in this case) ***at the beginning of the cooperative/cooperator relationship for the ownership*** of the unit and then continues to pay monthly maintenance costs for the expenses incurred in operation of the cooperative corporation. The tenant merely rents a space and pays an equal sum in installments for the duration of his or her tenancy.

---

[5] At issue in *In re Robertson* was whether a proprietary lease could be dispossessed through state court procedures typically available to residential landlords under New Jersey law.

> The cooperators/shareholders are responsible for the expenses related to maintaining the premises amongst themselves… By contrast, the tenant is solely responsible for his monthly payments and depends upon the landlord to properly maintain the premises. If that tenant fails to pay his rent, he subjects himself to removal from the premises. Finally, a cooperative generally is not a money making venture. On the other hand, a landlord rents to tenants for the landlord's own economic benefit.

*In re Robertson*, 147 B.R. 358 (Bankr.D.N.J.1992) (emphasis added).

### ii. The Length of the Lease

68.     There is no question that the 199-year term of the Lease is "significantly different from […] the ordinary landlord/tenant relationship." In *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.,* the Second Circuit Court of Appeals reiterated the relevance of this factor:

> In *In re PCH,* we noted the bankruptcy court's finding that the potential 165 year term of the lease there represented 'an unusually long term for a true lease.' The bankruptcy court considered that as one factor in reaching its conclusion that the lease was not a bona fide lease.

936 F.2d 744, 749–50 (2d Cir. 1991) (citing *In re PCH,* 804 F.2d at 196 n. 3.).

69.     "Although an unusually long term, standing alone, does not automatically signal that an agreement is not a true lease for the purposes of § 365(d)(4), we find that in combination with other factors, it may lead to such a conclusion." *Id.* (citing *In re Fillard Apartments, Ltd.,* 96 B.R. 397 (Bankr.S.D.Fla.1989) (99 year term lease subject to assumption under § 365(d)(4)); *In re Emory Properties, Ltd.,* 106 B.R. 318 (Bankr.N.D.Ga.1989) (26 year term with option for additional 26 years)).

### iii. The Underlying Tax Reasons

70.     The true impetus of the Lease however lies in the tax benefits.

71.     Indeed, until it was repealed, the most common reason for characterizing owner-assessments as taxable income rather than as capital assessments was to qualify as a cooperative under section 216 of the Internal Revenue Code (26 U.S.C. § 216(b)(1)(D)), which allowed cooperative unit owners to deduct the portion of their monthly payments attributable to mortgage interest and real estate taxes, if at least 80% of the gross income of the corporation was derived from payments by tenant-stockholders. Consequently, no more than 20% of the cooperative's gross income could come from commercial tenants. *See* 26 U.S.C. § 216; Dale A. Whitman, *Financing Condominiums and Cooperatives,* 13 TULSA L.J. 15 (1977-1978); Miller, *Tax Problems of the Housing Cooperative under the 80% Income Rule,* 18 PRAC. LAW. 81 (No. 4, Apr. 1972).

72.     The purpose of section 216 was to put cooperative tenant-shareholders on an equal footing with home owners, who can deduct mortgage interest and property taxes under 26 U.S.C. §§ 163 and 164, respectively. *Lefrak,* 223 B.R. at 438 (citing *Eckstein v. United States*, 196 Ct.Cl. 644, 452 F.2d 1036, 1047–48 and nn. 19–20 (1971)).

73.     Here, notwithstanding the parties intent that the Debtor own a fee interest in the Premises, the economic terms of the Lease were structured to cloak what was in essence a proprietary lease as a commercial lease to permit the corporation/landlord to operate as a "qualified cooperative" and benefit from the tax attributes available to its shareholders. *See* COMPL. ¶¶ 30-33.

### iv.     Whether the Lease Was Part of a Larger Agreement

74.     In *Lefrak,* the court  emphasized that  the lease was part of a larger transaction with non-lease attributes, which were inseparable from the shares. *State Tax Comm'n v. Shor,* 400 N.Y.S.2d 805, 371 N.E.2d at 524, and cannot be viewed in isolation. *Bland v. Two Trees Management Co.,* 498 N.Y.S.2d 336, 489 N.E.2d at 227.

75.     Here too, the Complaint sufficiently alleges that the Lease was just one of the Prince Transfer Documents effectuating the Prince Transfer, and should not be viewed in isolation as 60G does in its Motion to Dismiss.

76.     Accordingly, the Debtor submits that the Complaint adequately states a claim for relief that is plausible on its face under the standard adopted by the Supreme Court in *Iqbal* and *Twombly*.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Dismiss in its entirety.

Dated: New York, New York
       February 10, 2020

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor*

By: _____
       Paris Gyparakis
       Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100