**COLE SCHOTZ P.C.**
Leo V. Leyva
Nolan E. Shanahan
1325 Avenue of the Americas
19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Fax

*Attorneys for 60G 542 Broadway Owner, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PRINCE FASHIONS, INC.,<br><br><div align="center">Debtor.</div> | Chapter 11<br><br>Case No. 19-23079-rdd |
| PRINCE FASHIONS, INC.,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>60G 542 BROADWAY OWNER, LLC<br>AND 542 HOLDING CORP.,<br><br><div align="center">Defendants.</div> | Adv. Pro. No. 19-08714-rdd |

## <u>60G 542 BROADWAY OWNER, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ........................................................................................................................ 9

    I.     STANDARD FOR DISMISSAL ........................................................................... 9

    II.    THE STATE COURT PROCEEDINGS CONCLUSIVELY DETERMINED THAT 60G IS THE OWNER OF THE PREMISES AND THIS COURT LACKS JURISDICTION TO DISTURB THAT FINDING ............................................. 10

    III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE PRINCE'S CLAIM FOR WRONGFUL EVICTION ........................................... 12

    IV.   THE ALLEGED UNDOCUMENTED, UNDISCLOSED AND DISGUISED SALE ARRANGEMENT IS NOT BINDING ON 60G WHICH ACQUIRED TITLE WITHOUT NOTICE OF DEBTOR'S OWNERSHIP CLAIM AND SUBJECT ONLY TO THE DOCUMENTED LEASE TERMS .......................... 13

    V.    REGARDLESS OF WHETHER PRINCE'S INTEREST IN THE PROPERTY WAS A TENANCY OR A PURPORTED OWNERSHIP INTEREST (WHICH IT WAS NOT), THE INTEREST HAS BEEN CONCLUSIVELY TERMINATED BY A NON-APPEALABLE STATE COURT JUDGMENT ............................. 15

    VI.   RECHARACTERIZATION IS ONLY AVAILABLE WHEN, UNLIKE HERE, THE PROPERTY INTEREST IN QUESTION IS EXTANT AS OF THE PETITION DATE ............................................................................................ 17

    VII.  THE ALLEGATIONS AND DOCUMENTS THAT FORM THE BASIS OF THE ADVERSARY COMPLAINT ESTABLISH THAT THE LEASE WAS A TRUE LEASE, NOT A FINANCING TRANSACTION ................................................. 19

         A.    Prince Cannot Establish that the Lease is Not a True Lease ...................... 19

    VIII. IN THE ALTERNATIVE, AND AT A MINIMUM, PRINCE'S IMPROPER ALLEGATIONS REGARDING 60G'S MORTGAGE SHOULD BE STRICKEN FROM THE AMENDED COMPLAINT ............................................................ 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

**Cases**

*130/40 Essex St. Dev. Corp. v. City of N.Y. (In re 130/40 Essex St. Dev. Corp.)*,
  Nos. 03-40944, 04-02978, 2008 WL 4845639 (Bankr. S.D.N.Y. Oct. 22,
  2008) ............................................................................................................................18

*166 Enterprises Corp v. I G Second Generation Partners*,
  81 A.D.3d 154 (1st Dept 2011) ...........................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................9, 10

*In re Barney's, Inc.*,
  206 B.R. 328 (Bankr. S.D.N.Y. 1997) .............................................................17, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................9

*Bell v. Alden Owners, Inc.*,
  199 B.R. 451 (S.D.N.Y. 1996)...........................................................................16, 18

*Matter of Benrus Watch Co., Inc.*,
  13 B.R. 331 (Bankr. S.D.N.Y. 1981) ....................................................................17

*In re Best Prod. Co., Inc.*,
  157 B.R. 222 (Bankr. S.D.N.Y. 1993) ...................................................................17

*Campbell v. Maslin*,
  91 A.D.2d 559 (1st Dept 1982)..............................................................................12

*In re Challa*,
  186 B.R. 750 (Bankr. M.D. Fla. 1995) .................................................................18

*Dinolfi v. Berkeley Assocs. Co.*,
  98 A.D.2d 644 (1st Dept 1983)..............................................................................12

*District of Columbia Court of Appeals v. Feldman*,
  460 U.S. 462 (1983)................................................................................................11

*Dove Hunters Pub, Inc. v. Posner*,
  211 A.D.2d 494 (1st Dept 1995)............................................................................16

*In re Dundee Equity Corp.*,
  No. 89-B-10233, 1992 WL 53743 (Bankr. S.D.N.Y. Mar. 6, 1992) ......................14

*ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ................................................................................9

*Matter of Emory Properties, Ltd.*,
  106 B.R. 318 (Bankr. N.D. Ga. 1989) ..................................................................18

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ............................................................................................11

*In re Fillard Apartments, Ltd.*,
  96 B.R. 397 (Bankr. S.D. Fla. 1989) ....................................................................18

*Harriott v. Nationstar Mortgage LLC*,
  Case No. 17-CV-4748, 2018 WL 4853045 (E.D.N.Y. Sept. 28, 2018) .................11

*Hoblock v. Albany Cnty. Bd. of Elecs.*,
  422 F. 3d 77 (2d Cir. 2005) .................................................................................11

*In re Hotel Syracuse, Inc.*,
  155 B.R. 824 (Bankr. N.D.N.Y. 1993) .................................................................18

*In re Hudson Transfer Grp., Inc.*,
  245 B.R. 456 (Bankr. S.D.N.Y. 2000) ............................................................16, 18

*In re Integrated Health Servs., Inc.*,
  260 B.R. 71 (Bankr. D. Del. 2001) .............................................................17, 19, 20

*International Trade Administration v. Rensselaer Polytechnic Institute*,
  936 F.2d 744 (2nd Cir. 1991) ......................................................................17, 19

*In re Island Helicopters, Inc.*,
  211 B.R. 453 (Bankr. E.D.N.Y. 1997) ...........................................................16, 18

*In re KAR Dev. Assocs., L.P.*,
  180 B.R. 629 (D. Kan. 1995) ..............................................................................18

*In re Lefrak*,
  223 B.R. 431 (Bankr. S.D.N.Y. 1998) .................................................................17

*Martinez v. Ngalam*,
  61 Misc. 3d 131(A) (App Term, 1st Dept 2018) .................................................12

*In re OMNE Partners II*,
  67 B.R. 793 (Bankr. D.N.H. 1986) ......................................................................19

*In re PCH Assocs.*,
  804 F.2d 193 (2d Cir. 1986) .........................................................................17, 20

ii

*Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*,
   149 A.D.3d 529 (1st Dept 2017)........................................................1, 16

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*,
   285 F. Supp. 3d 759 (S.D.N.Y. 2018) . First, the Appellate Term Order................24

*In re Robertson*,
   147 B.R. 358 (Bankr. D.N.J. 1992) ...........................................................18

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923)...............................................................................11

*In re Southold Dev. Corp.*,
   134 B.R. 705 (E.D.N.Y. 1991) ...............................................................16

*Stoneybrook Realty, L.L.C. v. Cremktco Inc.*,
   176 Misc.2d 589 (App Term, 2d Dept 1998)..............................................14

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008).......................................................................9

*Tehan v. Thos. C. Peters Printing Co.*,
   71 A.D.2d 101 (4th Dept 1979) ...............................................................14

*Vossbrinck v. Accredited Home Lenders, Inc.*,
   773 F.3d 423 (2d Cir. 2014)....................................................................11

*In re Wachovia Equity Securities Litigation*,
   753 F.Supp.2d 326 (S.D.N.Y.2011).............................................................9

*Westship v. Trident Shipworks, Inc.*,
   247 B.R. 856 (M.D. Fla. 2000) ...............................................................21

**Statutes**

Bankruptcy Code § 365 ...........................................................................2, 19

Federal Rules of Bankruptcy Procedure Rule 7012(b) .......................................1

Federal Rules of Civil Procedure Rule 12(b)............................1, 3, 8, 9, 10 25

Federal Rules of Civil Procedure Rule 12(f) .........................................24, 25

52031/0003-21872606v8

60G 542 Broadway Owner LLC ("60G"), by and through its counsel, respectfully submits this Motion to Dismiss (the "Motion") the Amended Complaint of debtor Prince Fashions, Inc. ("Plaintiff" or "Prince"), dated October 30, 2020 (the "Amended Complaint"), pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure (the "Rules"), made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. In support of the Motion, 60G represents as follows:

## PRELIMINARY STATEMENT

Despite being given a second chance to correct the deficiencies of its initial complaint in this adversary proceeding, Prince has failed to state a claim to recharacterize the subject lease or for wrongful eviction, because there are no viable bases to do so, based on the definitive termination of the subject agreement well before the filing of Prince's petition and the court-authorized eviction of Prince from the subject premises. There is nothing for this Court to recharacterize in light of the termination of the subject lease years ago. Even if this Court were to accept such conclusory allegations as true for the purpose of this motion, which it should not, Prince's claims still fail as the allegations are insufficient to demonstrate the subject lease is not a true lease.

What is most remarkable about the Debtor's trumped-up ownership claim is that the Debtor openly seeks to enforce an alleged 35 year old-secret, undisclosed oral agreement between the original tenant and owner of the premises – which is contrary to the specific terms of the publicly recorded Lease - against 60G, which possessed no knowledge of this alleged secret agreement, either actual or constructive, when it acquired the subject premises in 2015. 60G acquired title to the premises subject only to the written terms of the publicly recorded Lease – and not the secret, oral promise of ownership that the Debtor now seeks to enforce. Indeed, the Lease makes clear that the **Tenant acquires no rights in the premises other than as set forth in the Lease**. Yet,

the Debtor now contends the Lease is not a "true lease" and it was simply part and parcel of a secret arrangement to disguise the Tenant's ownership interest in the premises – which is contrary to the specific terms of the Lease itself. Under well established New York law, a successor in title to property can only be liable and subject to those conditions of which it is aware and has knowledge. Absent from the Amended Complaint is a single allegation that 60G was aware of this so-called secret agreement – which deficiency is fatal and mandates dismissal.

The Amended Complaint contains two counts and seeks the entry of an order and judgment declaring that (i) the Lease, as that term is defined below, is not a true "lease" as that term is defined in section 365 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"); (ii) the Lease is not subject to the provisions of section 365 of the Bankruptcy Code; (iii) the Prince Transfer Documents memorialized Holding Corp.'s (defined below) transfer of its interest in the Premises to Prince; and (iv) Prince is the owner of the Premises and is entitled to unspecified damages from 60G based on an alleged wrongful eviction. The Amended Complaint should be dismissed both for lack of subject matter jurisdiction and for failure to state a claim. In addition to clearly seeking review of adverse state court determinations in violation of the *Rooker-Feldman* doctrine, the Amended Complaint fails to demonstrate that recharacterization is appropriate under the facts presented here, both because Prince seeks recharacterization of a lease that has been properly terminated as affirmed by the Appellate Term and an analysis of the economic substance of the transaction at issue, including the plain language of the Lease. Simply put, there is nothing for this Court to recharacterize even if Prince could satisfy the elements of such a claim, which it cannot.

A comparison of the Amended Complaint to Prince's original complaint in this adversary proceeding reveals that the main change to the Amended Complaint is Prince's attempt to tailor

2

its allegations to the controlling case law so as to avoid another dismissal. This effort has failed, however, as the additional allegations do not remedy the fatal defects inherent in Prince's claims – that the lease was terminated pre-petition, there is no basis to recharacterize it, and Prince has no factual basis to make the allegations it includes in the Amended Complaint. Instead, Prince makes numerous allegations "upon information and belief" without ever providing the basis for such information. Prince compounds its deficiencies by relying upon insufficient conclusory allegations of alter ego liability. The only logical explanation for this method of pleading is that Prince simply does not possess any credible information to support its claims, requiring dismissal of the Amended Complaint by this Court.

For the reasons discussed in greater detail herein, Prince has demonstrated that it cannot credibly state a claim for recharacterization of the subject lease. Accordingly, the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) and (6) with prejudice and without leave for further amendment.

## STATEMENT OF FACTS

The facts relevant to the Court's consideration are set forth in the accompanying Declaration in Support of Nolan E. Shanahan, dated January 11, 2021 (the "Shanahan Decl.") and the exhibits annexed thereto.

Background

The Premises are comprised of ground floor commercial space and portions of the basement in a six-story building located at 542 Broadway, New York, New York (the "Building"). 60G is the owner of the Premises pursuant to a recorded Condominium Unit Deed, dated May 11, 2015, from 542 Holding Corp. ("Holding Corp."), a true and accurate copy of which is annexed to the Shanahan Decl. as Exhibit 2.

60G is Prince's former landlord pursuant to a written lease and rider (the "Lease"), dated April 11, 1980. The Lease was initially between 542 Holding Corp. ("Holding Corp."), as landlord, and 542 Equities Associates ("542 Associates"), as tenant, and then assigned by 542 Associates to Prince. The Lease was duly assigned to 60G pursuant to that certain Assignment and Assumption of Retail Master Lease, dated May 2015, which was executed concomitant with 60G's acquisition of the Premises. The Lease is an exhibit to the Amended Complaint, which is attached to Shanahan Decl. as Exhibit 1. The Assignment and Assumption of Retail Master Lease is annexed to the Shanahan Decl. as Exhibit 3.

60G's Termination of the Lease and the Holdover Proceeding

On March 4, 2016, as a result of Prince's failure to maintain general liability insurance in favor of 60G, in addition to other breaches of the Lease, and pursuant to Article 17 of the Lease (the default provision), 60G served a Notice of Default to Prince in which 60G declared Prince in default of the Lease.

On July 1, 2016, pursuant to Article 17 of the Lease, 60G served a Notice of Lease Cancellation on Prince. Pursuant thereto, the Lease was terminated effective July 5, 2016.

On July 11, 2016, 60G commenced a holdover proceeding in New York City Civil Court by filing of a Notice of Petition and Petition seeking a Final Judgment of Possession and Warrant of Eviction based on Prince's incurable Lease default. True and accurate copies of the Notice of Petition and Petition (collectively, the "Petition") are annexed collectively to the Shanahan Decl. as Exhibit 4. In response to 60G's Petition in the holdover proceeding, on July 22, 2016, Prince filed and served its answer to the Petition ("Answer"), which included nine affirmative defenses, and is attached to the Shanahan Decl. as Exhibit 5. The defenses each implicitly or explicitly rely upon Prince's stated position that the Lease was in effect and not properly terminated by 60G. In particular, Prince affirmatively asserted in its second affirmative defense that 60G lacked standing

4

to prosecute the holdover proceeding as it was not its landlord and, in its fifth affirmative defense, affirmatively asserted that Holding Corp. was its landlord under the Lease. *See* Answer, pp.1-2. None of the defenses claimed that Prince was actually an owner of the Premises.

On August 5, 2016, 60G moved in the Civil Court for summary judgment seeking a final judgment of possession and other related relief ("Summary Judgment Motion"). On September 9, 2016, Prince opposed 60G's Summary Judgment Motion and cross-moved to dismiss the Petition.

Summary Judgment and Renewal in the Holdover Proceeding

By a Decision/Order, dated September 20, 2017, Judge Samuels granted 60G's motion for final judgment of possession and striking Prince's affirmative defenses, and denied Prince's cross-motion to dismiss the Petition (the "Summary Judgment Order"). A true and accurate copy of the Summary Judgment Order is annexed to the Shanahan Decl. as Exhibit 6. The Summary Judgment Order dismissed Prince's second affirmative defense alleging that 60G lacked standing to maintain the Holdover Proceeding because it was not Prince's landlord under the Lease. *See* Summary Judgment Order, p. 4. Instead, the Civil Court found that the Lease was properly assigned to 60G and, as such, 60G was Prince's landlord.

Prince subsequently moved to renew and reargue the Summary Judgment Order on various bases, including purported new evidence of a so-called conspiracy to deprive it of its leasehold interest. After briefing, oral argument, and supplemental submissions directed by the Court, Judge Samuels, by a Decision/Order, dated February 9, 2018, granted Prince's motion in part (the "Renewal Order"). A true and accurate copy of the Renewal Order is annexed to the Shanahan Decl. as Exhibit 7. In doing so, Judge Samuels reversed her prior award of summary judgment in 60G's favor and reinstated Prince's first, fifth, seventh, and ninth affirmative defenses. Notably, the Renewal Order did not reverse the dismissal of or reinstate Prince's second affirmative defense challenging 60G's status as its landlord under the Lease.

<u>The Appellate Term's Reversal of the Renewal Order</u>

60G immediately appealed the Renewal Order to the Appellate Term, First Department. The Appellate Term reversed the Renewal Order via the issuance of its order dated October 29, 2018 (the "<u>Appellate Term Order</u>"). A true and accurate copy of the Appellate Term Order is annexed to the Shanahan Decl. at Exhibit 8. The Appellate Term Order confirmed the termination of the Lease and 60G's right to regain possession of the Premises and dismissed Prince's remaining affirmative defenses on the merits.

Pursuant to the terms of the Appellate Term Order, 60G was entitled to the entry of a judgment of possession against Prince ("<u>Judgment of Possession</u>") and the issuance of a warrant of eviction, with execution thereon stayed for 60 days following service of a notice of entry of the Appellate Term Order, which 60G served on November 7, 2018.[1] The Judgment of Possession was entered by the New York City Civil Court on November 19, 2018. See Shanahan Decl. at Exhibit 9. The Civil Court then issued a warrant of eviction with respect to the Premises against Prince on December 10, 2018. The stay of eviction set forth in the Appellate Term Order expired by its terms on January 11, 2019.

After being served with Notice of Entry of the Appellate Term Order, Prince moved in the Appellate Term for leave to reargue, leave to appeal to the Appellate Division and a stay pending such appeal. By order dated December 21, 2018, the Appellate Term denied Prince's motion to reargue and for leave to appeal to the Appellate Division.

---

[1] The Judgment of Possession was based on 60G's "unrebutted showing that the tenant breached the insurance coverage requirements of the governing commercial lease agreement." Appellate Term Order, p. 2. The Appellate Term Order granted summary judgment of possession and found that 60G "had valid grounds for terminating this commercial lease, based upon tenant's incurable default in obtaining insurance naming the landlord as an additional insured." *Id.*, p. 5.

On January 10, 2019, Prince moved in the Appellate Division for leave to appeal the Appellate Term Order and for a stay pending the determination of that motion. The Appellate Division issued an Order, dated January 10, 2019, (the "Stay Order") staying enforcement of the Appellate Term Order while Prince's motion was pending. A true and accurate copy of the Stay Order is attached to the Shanahan Decl. as Exhibit 10.

By Decision and Order, dated May 14, 2019, the Appellate Division denied Prince's motion for leave to appeal and vacated the Stay Order (the "Final Order"). A true and correct copy of the Final Order is attached to the Shanahan Decl. as Exhibit 11. 60G served and filed a Notice of Entry of the Final Order on May 16, 2019 and again on May 23, 2019. Based on the above, the Appellate Term Order is a final, unappealable judgment.

On May 29, 2019, Prince filed its pro se Chapter 11 petition in this Court. On June 28, 2019, 60G filed a motion seeking, among other things, an order (a) dismissing Prince's petition with prejudice, (b) finding that the automatic stay does not prevent 60G from evicting Prince from the Premises; or in the alternative, (c) granting relief from the stay so 60G can proceed with evicting Prince (the "Lift Stay Motion"). After briefing by the parties, the Court held a hearing on the Lift Stay motion on July 22, 2019. At the hearing, the Court gave Prince a limited opportunity to proceed with two pending motions in two separate state court actions. Prince was unsuccessful in both motions, paving the way for its eviction.

Prince commenced this adversary proceeding with the filing of its Complaint for Declaratory Relief on November 22, 2019 (the "Complaint"), a copy of which is annexed to the Shanahan Decl as Exhibit 12.

52031/0003-21872606v8

Prince was evicted from the Premises and 60G was awarded legal possession by the New York City Marshal on January 10, 2020. A true and correct copy of the Marshal's Legal Possession for the Premises is attached to the Shanahan Decl. as Exhibit 13.

60G moved to dismiss the Complaint on January 17, 2020. After briefing by the parties, the Court held oral argument on 60G's motion on July 14, 2020 and the Court granted 60G's motion and dismissed the Complaint pursuant to Rule 12(b)(6). A copy of the transcript of the proceedings on July 14, 2020 are attached to the Shanahan Decl. as Exhibit 14. The Court provided Prince the opportunity to file a motion for leave to file an amended complaint, which Prince did on August 28, 2020. That motion was granted by the Court on October 29, 2020 and Prince then filed the Amended Complaint.

Prior to the commencement of this adversary proceeding, Prince never claimed that it was anything other than a tenant at the Premises. By way of illustration, Prince has affirmatively claimed it was a tenant at the Premises under the Lease in 2 separate *Yellowstone* applications in Supreme Court, in the *Yellowstone* appeal in the Appellate Division, in the holdover proceeding in Civil Court, in the appeal of the holdover proceeding in the Appellate Term, in the motion for leave to appeal the holdover proceeding to the Appellate Division, and in Schedule A/B to its bankruptcy petition.[2]

_____

[2] On its Schedule A/B, Prince describes its interest in the Premises as a "long term leasehold amounting to ownership."

<u>**ARGUMENT**</u>

## I.    STANDARD FOR DISMISSAL

In reviewing a complaint for sufficiency under Rule 12(b)(6), the Court accepts all material

facts alleged in the complaint as true and construes all reasonable inferences in the plaintiff's favor.

*ECA Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196

(2d Cir. 2009); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d

190, 194 (2d Cir. 2008).   Nonetheless, to survive a motion to dismiss under Rule 12(b)(6), a

complaint must state plausible grounds for relief.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained what the standards

require by identifying two working principles.   *Id.* at 678.   First, the Court explained, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions.   Threadbare recitals of elements of a cause of action, supported by mere

conclusory statements, do not suffice."   *Id.* (quoting *Twombly*, 550 U.S. at 555).   Accordingly, a

plaintiff must plead facts in support of its claim.   "[A] court considering a motion to dismiss can

choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth" and is "not bound to accept as true a legal conclusion couched

as factual allegations." *Id*. at 678-79.

Second, "[t]o survive a motion to dismiss," the facts pleaded by the plaintiff accepted as

true, must be sufficient to state a claim for relief that is "plausible."   *Id.* at 678 (quoting *Twombly*,

550 U.S. at 570).   "[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss."   *Id*. at 679 (citing *Twombly*, 550 U.S. at 556).   "If the plaintiff 'ha[s] not nudged [his]

claims across the line from conceivable to plausible, [his] complaint must be dismissed.'"   *In re*

*Wachovia Equity Securities Litigation*, 753 F.Supp.2d 326, 347 (S.D.N.Y.2011) (quoting

*Twombly*, 550 U.S. at 570, 127 S. Ct. 1955); *see also Iqbal*, 556 U.S. at 679 ("A claim has facial plausibility when the plaintiff pleads factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## II. THE STATE COURT PROCEEDINGS CONCLUSIVELY DETERMINED THAT 60G IS THE OWNER OF THE PREMISES AND THIS COURT LACKS JURISDICTION TO DISTURB THAT FINDING

The Amended Complaint must be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) based on the *Rooker-Feldman* doctrine. During the state court litigation, which included two separate *Yellowstone* actions in Supreme Court, one of which Prince unsuccessfully appealed to the Appellate Division, and the holdover proceeding in Civil Court, which ultimately resulted in the issuance of the Appellate Term Order, Prince never once asserted that it was anything other than a tenant at the Premises. To that end, the Appellate Term specifically recognized 60G as the owner of the retail condominium unit – a finding which is binding on this Court.

In ruling that summary judgment should have been granted, the Appellate Term held in pertinent part, "the motion by landlord [60G], **as owner of a retail condominium unit**, for summary judgment of possession should have been granted based upon its unrebutted showing that the tenant [Prince] breached the insurance requirements of the governing commercial lease agreement." Appellate Term Order, p. 2 (emphasis added). Furthermore, the Civil Court found that Holding Corp. duly transferred the Premises to 60G and also acknowledged that 60G was the owner of the Premises. *See* Summary Judgment Order, pp. 2-3. In that same order, the Civil Court dismissed Prince's second affirmative defense alleging that 60G lacked standing to maintain the Holdover Proceeding based on Prince's erroneous contention that 60G was not the landlord under the Lease. *See* Summary Judgment order, p. 4. Instead, the Civil Court found that the Lease was

10

properly assigned to 60G and, as such, 60G was Prince's landlord, and by implication, the owner of the Premises.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision. *Feldman*, 460 U.S. at 482 ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments").

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *Hoblock v. Albany Cnty. Bd. of Elecs.,* 422 F. 3d 77, 85 (2d Cir. 2005); *Harriott v. Nationstar Mortgage LLC,* Case No. 17-CV-4748, 2018 WL 4853045, at *6 (E.D.N.Y. Sept. 28, 2018).

Notwithstanding the final, non-appealable Appellate Term Order, Prince effectively seeks to relitigate and collaterally attack the finding of the State Court by seeking a declaration that (i) "the Debtor is the owner of the Premises" and (ii) the "Prince Transfer Documents memorialized

11

the transfer by Holding Corp. to the Debtor of its interest in the Premises." In light of the *Rooker-Feldman* doctrine as discussed above, Count I of the Amended Complaint seeking to recharacterize the Lease into a document conveying the Premises to Prince must be dismissed for lack of subject matter jurisdiction.

### III. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE PRINCE'S CLAIM FOR WRONGFUL EVICTION.

The *Rooker-Feldman* doctrine similarly bars Count Two of the Amended Complaint which seeks damages for wrongful eviction. Count Two alleges that "60G's prosecution of its litigation to evict [Prince] was wrongful" and Prince is "entitled to a judgment against 60G in an amount to be determined at a trial." *See* Amended Complaint, ¶¶ 72, 74. This count, therefore, seeks review of the Appellate Term Order directing the entry of a judgment of possession against Prince and the resulting warrant of eviction, which was executed on January 20, 2020 by a New York City Marshal. The claim is a direct attack on the judgment of possession and related orders entered by the State court, which this Court lacks jurisdiction to disturb under the *Rooker-Feldman* doctrine.

The Debtor's wrongful eviction claim is also barred by virtue of the Civil Court's issuance of a judgment of possession and warrant eviction, which serves as a complete defense to a wrongful eviction claim. *See Dinolfi v. Berkeley Assocs. Co.*, 98 A.D.2d 644 (1st Dept 1983) (holding that "The Civil Court judgment awarding possession to the landlord is a complete defense to the tenant's action for wrongful eviction."); *Campbell v. Maslin*, 91 A.D.2d 559 (1st Dept 1982) ("The plaintiff, having been evicted pursuant to a lawful judgment and a proper warrant of eviction, his action for wrongful eviction, abuse of process, prima facie tort, and property damage, must fail."); *Martinez v. Ngalam*, 61 Misc. 3d 131(A) (App Term, 1st Dept 2018) ("The valid Civil Court judgment awarding possession to landlord is a complete defense to tenant's claim that she was wrongfully evicted.") (citations omitted).

12

Based on the foregoing, Count II of the Amended Complaint, seeking money damages based on wrongful eviction, should be dismissed both for lack of subject matter jurisdiction and failure to state a claim.

## IV. THE ALLEGED UNDOCUMENTED, UNDISCLOSED AND DISGUISED SALE ARRANGEMENT IS NOT BINDING ON 60G WHICH ACQUIRED TITLE WITHOUT NOTICE OF DEBTOR'S OWNERSHIP CLAIM AND SUBJECT ONLY TO THE DOCUMENTED LEASE TERMS

Underlying the Debtor's recharacterization claim is the unsubstantiated contention the "parties intended [the Lease] to be a sale of the Premises to the Debtor." Amended Complaint ¶ 71. Yet, Prince overlooks the fact that 60G was not a party to this alleged disguised sale agreement and acquired the premises without knowledge of any claim of ownership. In fact, the Amended Complaint is void of a single allegation to suggest that 60G was aware of this "secret" purported agreement between the original owner and tenant. To the contrary, the recorded Lease, which is attached to the Amended Complaint, contains a specific acknowledgment that "**no rights, easements, or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of the Lease**." Lease § 20. This is directly contradicted by the unsupported allegations in the Amended Complaint in which Debtor contends "[T]he Prince Transfer was intended to transfer **all** property rights associated with the commercial portion of the Building to Prince." Amended Complaint, ¶ 41.

Assuming, for argument purposes, that this secret arrangement did, in fact, exist it is not binding on 60G. As explained below, a purchaser of property without notice should be able to rely upon a lease without further inquiry and acquires title subject only to those conditions of which there is notice. Significantly, 60G is not alleged to have any knowledge or notice – either actual or otherwise – of this alleged secret, disguised ownership transfer and therefore it is not bound to any claim of ownership by the Debtor.

13

The decision of the Appellate Division in *Tehan v. Thos. C. Peters Printing Co.*, 71 A.D.2d 101 (4th Dept 1979) is instructive on this point. There, the Court held:

> It is clearly the law of this State that a successor-in-interest to real property takes the premises subject to the conditions as to the tenancy, including any waiver of rights, that his predecessor in title has established if the successor-in-interest has notice of the existence of the leasehold and of the waiver. The key to the liability of the successor-in-interest is notice of the relevant lease provision or waiver thereof. Notice may be actual or constructive.
>
> * * *
>
> [A] purchaser without actual notice should be able to rely upon the lease without further inquiry.

The New York appellate court's ruling in *Stoneybrook Realty, L.L.C. v. Cremktco Inc.*, 176 Misc.2d 589 (App Term, 2d Dept 1998), is similarly instructive. In *Stoneybrook*, the tenant sought to enforce an alleged oral modification to the written lease agreement it had entered into with its former landlord. *Id.* at 590. Tenant argued the former landlord's successor was bound by the alleged oral modification, which permitted tenant to pay rent in a manner different from the terms of the written lease. The court, however, disagreed, finding that although "there had been a waiver by the *prior owner* of strict adherence to the time for payment of rent[,]" the successor landlord was not bound by such waiver. *Id.* (emphasis added). According to the court:

> Where the lease itself provides when the rent is payable and no contrary practice is indicated, *a purchaser without actual notice should be able to rely upon the lease without further inquiry*. The concept of waiver is linked to notice. There can be no waiver of a contractual right without notice; and, without some form of notice there is no duty to inquire whether a waiver exists.

*Id.* (emphasis added). Because the successor landlord was not bound by the oral modification, the appellate court affirmed the trial court's entry of judgment in favor of the landlord. *Id.*; *see also In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar.

6, 1992) (holding that a new owner can only be bound by an agreement if the property is acquired with notice of both the existence and the content of the alleged agreement).

Consistent with the authorities cited above, 60G was entitled to rely on the terms of the Lease in which the tenant acknowledged that it possessed no other rights in and to the premises other than those expressly set forth in the Lease. 60G acquired title to the premises subject only to the written terms of the Lease – and not the secret, oral promise of ownership that the Debtor now seeks to enforce. Indeed, the Lease makes clear that the **<u>Tenant acquires no rights in the premises other than as set forth in the Lease</u>**. Yet, the Debtor now contends the Lease is not a "true lease" and it was simply part and parcel of a secret arrangement to disguise the Tenant's ownership interest in the premises – which is contrary to the specific terms of the Lease itself. Absent from the Amended Complaint is a single allegation that 60G was aware of this so-called secret agreement – which deficiency is fatal and mandates dismissal.

## V. REGARDLESS OF WHETHER PRINCE'S INTEREST IN THE PROPERTY WAS A TENANCY OR A PURPORTED OWNERSHIP INTEREST (WHICH IT WAS NOT), THE INTEREST HAS BEEN CONCLUSIVELY TERMINATED BY A NON-APPEALABLE STATE COURT JUDGMENT

There exists no legal basis for this Court to breathe new life into a terminated lease for purposes of entertaining Prince's re-characterization claim. The Amended Complaint cannot survive this motion as Prince's claims for recharacterization are not plausible under the law, even when the facts are viewed in a light most favorable to Prince. As has been demonstrated both in multiple state court proceedings and before this Court in prior motion practice, the Lease was conclusively terminated years before the commencement of Prince's bankruptcy, and the Appellate Term confirmed as much in the Appellate Term Order, which is final and non-appealable. Setting aside the fact that the Lease even contained a termination provision, which helps to eviscerate Prince's recharacterization argument and will be discussed in greater detail

15

below, the fact remains that the agreement between the parties, regardless of how it is characterized, has been terminated and this Court lacks the authority to revive it.

It is well-settled in New York that once terminated, a lease cannot be revived. *166 Enterprises Corp v. I G Second Generation Partners*, 81 A.D.3d 154, 159 (1st Dept 2011) ("Once the lease was terminated in accordance with its terms, the court lacked the power to revive it"); *see also Dove Hunters Pub, Inc. v. Posner*, 211 A.D.2d 494, 495 (1ˢᵗ Dept 1995) (holding that a lease cannot be revived as a matter of law after termination); *Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*, 149 A.D.3d 529, 529 (1ˢᵗ Dept 2017) (holding the same). Furthermore, the "filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have power to resurrect a lease which was terminated prior to the filing of the lessee's bankruptcy petition." *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y. 1996) (citing *In re Darwin*, 22 B.R. 259, 262 (Bankr.E.D.N.Y.1982)); *see also In re Hudson Transfer Grp., Inc.*, 245 B.R. 456, 458 (Bankr. S.D.N.Y. 2000) ("A bankruptcy petition does not revive a terminated lease.") (citations omitted); *In re Island Helicopters, Inc.*, 211 B.R. 453, 463 (Bankr. E.D.N.Y. 1997) (a lease terminated prior to bankruptcy "cannot be resurrected by the bankruptcy court.") (citations omitted). In view of this precedent and the indisputable fact that the Appellate Term confirmed the termination of the Lease, there is nothing for this Court to recharacterize.

Even if the Court were inclined to find that the Lease was not a true lease, which it should not for the reasons outlined below, there is still no basis to revive the terminated agreement between the parties. "Contracts terminated prior to the filing of a bankruptcy petition are not property of the debtor's estate, and the court cannot resuscitate previously extinguished contract rights." *In re Southold Dev. Corp.*, 134 B.R. 705, 710 (E.D.N.Y. 1991) (citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1214 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321

16

(1984)) (additional citations omitted); *see also Matter of Benrus Watch Co., Inc.,* 13 B.R. 331, 334 (Bankr. S.D.N.Y. 1981) ("In short, contracts that have been effectively terminated prior to the filing of a Chapter 11 petition cannot be revived by the bankruptcy court.") (citing *In re Beck,* 5 B.R. 169 (Bkrtcy., D.Hawaii 1980)). The recognized termination of the Lease, whether it is a true lease or financing transaction between the parties, , which it is not, prevents recharacterization as there is nothing for this Court to recharacterize.

Based on the foregoing, this Court cannot revive the Lease to even consider recharacterization, regardless of whether it is a true lease or financing transaction, because the agreement was duly terminated according to its terms well before the filing of Prince's petition, with such termination affirmed by the Appellate Term.

## VI. RECHARACTERIZATION IS ONLY AVAILABLE WHEN, UNLIKE HERE, THE PROPERTY INTEREST IN QUESTION IS EXTANT AS OF THE PETITION DATE

For the Court to even consider recharacterization, the subject lease must be valid and in effect at the time of the debtor's bankruptcy filing. Here the Lease was terminated years before Prince's filing so recharacterization is not available. **None** of the cases previously cited by Prince to support their claim for recharacterization involved a lease terminated pre-petition, as the Lease here indisputably was. For example, the lease in *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744 (2nd Cir. 1991) was valid and in force prior to the debtor's bankruptcy filing. *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 746 (2nd Cir. 1991) Similarly, in *Integrated Health Services,* 260 B.R. 71 (Bankr. D. Del. 2001), the leases at issue were in full force and effect at the time the petition was filed, as was also the case in *In re Barney's, Inc.*, 206 B.R. 328 (Bankr. S.D.N.Y. 1997) and *In re PCH Assocs.*, 804 F.2d 193, 195 (2d Cir. 1986). *See also In re Best Prod. Co., Inc.,* 157 B.R. 222 (Bankr. S.D.N.Y. 1993) (lease at issue was in effect); *In re Lefrak*, 223 B.R. 431 (Bankr. S.D.N.Y. 1998)

(valid proprietary lease for a cooperative apartment at issue); *In re KAR Dev. Assocs., L.P.*, 180 B.R. 629 (D. Kan. 1995) (while the erstwhile tenant was in default, the purported lease had not yet been terminated); *In re Challa*, 186 B.R. 750, 758 (Bankr. M.D. Fla. 1995) (oral lease in effect at time of filing); *In re Hotel Syracuse, Inc.*, 155 B.R. 824 (Bankr. N.D.N.Y. 1993) (while in a default posture, the lease at issue was still in effect and had not been terminated pre-petition); *In re Robertson*, 147 B.R. 358 (Bankr. D.N.J. 1992) (the debtor's proprietary lease had not been properly terminated pre-petition); *In re Fillard Apartments, Ltd.*, 96 B.R. 397 (Bankr. S.D. Fla. 1989) (the lease was valid at the time the petition was filed); *Matter of Emory Properties, Ltd.*, 106 B.R. 318 (Bankr. N.D. Ga. 1989) (the lease was not terminated pre-petition).

By seeking the unprecedented relief of recharacterization of a lease duly terminated pre-petition, Prince asks this Court to revive the terminated Lease, notwithstanding the ruling of the Appellate Term. Respectfully, this Court is not empowered to do so. *See Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y. 1996); *In re Hudson Transfer Grp., Inc.*, 245 B.R. 456, 458 (Bankr. S.D.N.Y. 2000); *In re Island Helicopters, Inc.*, 211 B.R. 453, 463 (Bankr. E.D.N.Y. 1997).

In *130/40 Essex St. Dev. Corp. v. City of N.Y. (In re 130/40 Essex St. Dev. Corp.)*, Nos. 03-40944, 04-02978, 2008 WL 4845639, at *4 (Bankr. S.D.N.Y. Oct. 22, 2008), the Court analyzed whether a lease that was terminated pre-petition could be recaptured by a debtor's bankruptcy estate via fraudulent conveyance statutes. *See 130/40 Essex St. Dev. Corp. v. City of N.Y. (In re 130/40 Essex St. Dev. Corp.)*, Nos. 03-40944, 04-02978, 2008 WL 4845639, at *4 (Bankr. S.D.N.Y. Oct. 22, 2008). The Court determined, where a lease has been terminated pre-petition, "there is nothing left for the debtor to assume or reject" and "a bankruptcy court does not have the power to resurrect a lease which has been terminated prior to the filing of a debtor's bankruptcy petition." *Id* at *5 (citing *In re Huffman*, 171 B.R. 649, 653 (W.D. Mo. 1994); *Matter of Triangle*

*Lab., Inc.*, 663 F.2d 463, 467 (3d Cir. 1981); *In re Eclair Bakery LTD.*, 255 B.R. 121, 133 (S.D.N.Y. 2000)).  Further, § 365(c)(3) of the Bankruptcy Code provides:

> (c) The Trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignments of rights or delegation of duties if-
>
> (3) such lease is of nonresidential property and has been terminated under applicable non-bankruptcy law prior to the order for relief.

11 U.S.C. § 365(c)(3).

Similar to the Court's analysis in *130/140 Essex St. Dev. Corp.*, because the Lease was lawfully terminated pre-petition pursuant to its terms, Prince has no interest that can be revived to recharacterize as an ownership interest.  Thus, the claim for declaratory relief to recharacterize the Lease as an ownership interest must be dismissed for the failure to state a claim upon which relief can be granted.

## VII.   THE ALLEGATIONS AND DOCUMENTS THAT FORM THE BASIS OF THE ADVERSARY COMPLAINT ESTABLISH THAT THE LEASE WAS A TRUE LEASE, NOT A FINANCING TRANSACTION

### A.   Prince Cannot Establish that the Lease is Not a True Lease

"In determining whether a lease is a bona fide, or true, lease, the form or title chosen by the parties is not determinative." *In re Integrated Health Servs., Inc.*, 260 B.R. 71, 75 (Bankr. D. Del. 2001) (citations omitted).  When faced with such a question, courts examine the "economic substance of the transaction."  *International Trade Administration v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 748 (2nd Cir. 1991).[3]   Courts in the Second Circuit have followed the

---

[3] Some courts have rejected the "economic substance" standard, however, in favor of deference to the intent of the parties as demonstrated by the documents actually executed. *See In re OMNE Partners II*, 67 B.R. 793, 796 (Bankr. D.N.H. 1986) ("I am aware that some courts have down-played the importance of the "intent factor" in these recharacterization situations. To some

factors originally laid out *in In re PCH Assocs.*, 804 F.2d 193 (1986) and summarized in *In re Barney's, Inc.*, 206 B.R. 328 (Bankr. S.D.N.Y. 1997), as follows:

i.   whether the "rental" payments compensate the lessor for use of the land as opposed to being structured for some other purpose, such as to ensure a particular return on an investment;

ii.  whether the purchase price is related to the fair market value of the land or calculated as the amount necessary to finance the transaction;

iii. whether the property was purchased by the lessor specifically for the lessee's use;

iv.  whether the transaction is structured as a lease to secure certain tax advantages;

v.   whether the lessee assumed many of the obligations normally associated with outright ownership, including the responsibility for paying property taxes and insurance; and

vi.  whether the lessee can acquire the property at the expiration of the lease term for nominal consideration.

*Barney's, Inc.*, 206 B.R. at 334 (citing *In re PCH Assocs.*, 804 F.2d at 200-01).

Additionally, a majority of courts also pay considerable consideration to whether:

i.   the lessee has a purchase option at the end of the lease and, if so, whether the option price is nominal;

ii.  the aggregate rental payments have a present value equal to or in excess of the original cost of the leased property; and

iii. the lease term covers the useful life of the property.

*In re Integrated Health Servs.*, 260 B.R. 71, 76 (Bankr. D. Del. 2001).

---

extent, it can be argued that it is logically inconsistent to say that the characterization of a commercial transaction depends upon the intent of the parties and yet also say a court of equity can look through form to the economic substance of the transaction. I do not believe however that bankruptcy judges have a warrant from Congress to run roughshod over the economic landscape recharacterizing commercial transactions entered into by sophisticated parties—restating them in terms of their "economic substance" contrary to their negotiated and agreed form—in the absence of some triggering factor permitting such recharacterization, i.e., an actual ambiguity in the documentation, a substantial factual dispute as to the intent of the parties, or some "disguise" or "misleading" aspect to the transaction."). Here there can be no credible dispute that the documents on their face contemplate a lease transaction.

Other courts have found "the most significant factor in determining whether a transaction is a lease or a sale is whether the lessor has retained a residual interest at the end of the lease term." *Westship v. Trident Shipworks, Inc.*, 247 B.R. 856, 863 (M.D. Fla. 2000) (finding that the property remained the landlord's upon termination of the lease and there was no option to purchase the property at the end of the term). Prince has no such residual interest under the Lease. While a potentially 199-year lease term is unusually long, that alone, without satisfying the above factors, is insufficient to recharacterize the Lease. The potential 199-year term is the only factor that may support Prince's claim for recharacterization. As set forth below, based on all the factors, the terms of the Lease and the facts of this case, the Amended Complaint fails to state a claim for which relief can be granted.

Prince has failed to state a claim upon which relief can be granted based on its purported cause of action that the Lease is not a true lease and should be recharacterized as an ownership interest. The Lease contains no purchase option and, despite the minimal revisions in the Amended Complaint, Prince has failed to adequately allege "whether the aggregate rental payments have a present value equal to or in excess of the original cost of the leased property." There is no allegation in the Amended Complaint regarding the value of the aggregate rental payments.

In an attempt to rectify the shortcomings of its initial complaint, Prince asserts that Holding Corp., as landlord, did not derive any profit from the Lease. Amended Complaint, ¶ 44. Nonetheless, these allegations are no different from those in the Complaint regarding the alleged below market rent and the allegation that no part of the rent was attributable to the landlord's profit. Accordingly, these allegations are also not sufficient to establish "whether the 'rental' payments were calculated to compensate the lessors for the use of the property, rather than ensure a return on an investment." Moreover, the Amended Complaint is devoid of allegations as to whether

Prince's obligations under the Lease are normally associated with ownership and simply ignores the fact that the Lease contains a conditional limitation, which provides for termination in the event of a default under the Lease. *See* Lease, § 18. In fact, Prince's obligations under the Lease are of the type common to tenants, not owners. For example, Section 3 provides, as follows:

> Tenant shall make no changes in or to the demised Premises of any nature without Landlord's prior written consent. Subject to the prior written consent of Landlord, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Landlord. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Landlord in Tenant's behalf, shall, upon installation, become the property of Landlord and shall remain upon and be surrendered with the demised premises unless Landlord, by notice to Tenant no later than twenty days prior to the date fixed as the termination of the lease, elects to relinquish Landlord's right thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease. at Tenant's expense.

Lease, § 3.

In addition, Section 20 of the Lease provides,

> Neither Landlord not Landlord's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the premises except as herein expressly set forth **and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease**.
>
> * * *
>
> All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone and fully and completely expresses the agreement between Landlord and Tenant and any executory agreement hereinafter made shall be ineffective to change, modify, discharge, or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and

22

singed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

*Id.*, § 20 (emphasis added).  The Lease also addresses the return of the Premises to the landlord in Section 21 as follows,

Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord, the demised premises, broom clean, in good order and condition, ordinary wear and tear excepted, and Tenant shall remove all its property.

*Id.*, § 21.  Furthermore, the Lease is not a triple net lease, as there is no requirement therein that Tenant pay taxes associated with the Premises.

With respect to whether the Premises was purchased by lessor specifically for the lessee's use, there is no allegation that 542 Associates was the owner of the Premises at the time it entered into the Lease with Prince.  In the initial complaint, Prince alleged that the intention of the parties was to cause 542 Associates to sell the Premises to Prince.  In the Amended Complaint in an obvious attempt to shoehorn its allegations to fit the elements of the claim, Prince now alleges that the intent of the parties was to cause Holding Corp. to sell the Premises to the Debtor, using Prince's insufficient alter ego theory.  Amended Complaint, ¶ 35.  Prince cannot simply alter the name of the transferor to better fit its narrative that Holding Corp., the actual owner of the Premises at the time the Lease was executed, intended to transfer its interest in the Premises to Prince.  Indeed, it was 542 Associates that transferred its leasehold interest to Prince, and no privity exists between Prince and Holding Corp.

The allegations of the Amended Complaint are utterly insufficient to support a claim for recharacterization of the Lease.  Based on the foregoing, Prince's claim to recharacterize the Lease as an ownership interest should be dismissed for the failure to state a claim upon which relief can be granted.

## VIII. IN THE ALTERNATIVE, AND AT A MINIMUM, PRINCE'S IMPROPER ALLEGATIONS REGARDING 60G'S MORTGAGE SHOULD BE STRICKEN FROM THE AMENDED COMPLAINT

While 60G submits that the Amended Complaint should be dismissed in its entirety with prejudice, in the event the Court is inclined to permit Prince to move forward in this adversary proceeding, it is respectfully submitted that allegations that 60G obtained a "sham mortgage" on the Premises as set forth in paragraphs 36-39 and 58-64 should be stricken pursuant to Rule 12(f).

"An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018) (citations omitted). First, the Appellate Term Order specifically rejected Prince's allegations regarding a "sham mortgage", holding that

> Tenant's affirmative defense that landlord acted in bad faith or engaged in other misconduct by entering into a "sham mortgage" in connection with landlord's purchase of the subject retail condominium unit in May 2015 upon which it ultimately defaulted, was insufficient to raise an issue of fact or warrant further judicial scrutiny.

Appellate Term Order, p. 5. In light of the Appellate Term's rejection of these allegations, the Court should strike the same from the Amended Complaint. Furthermore, the allegations in question are wholly unrelated to Prince's recharacterization claim and therefore should be stricken from the Amended Complaint.

24

## **CONCLUSION**

Based on the foregoing, the Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and (6). In light of the conclusive termination of the Lease, this Court lacks the authority to revive and recharacterize it, regardless of whether the subject agreement is a true lease or a financing arrangement. Even if the Court moves beyond that threshold issue, which it should not, Prince cannot satisfy the requirements for recharacterization based on the plain meaning of the documents upon which it purports to rely. Furthermore, Prince's reliance on bare, conclusory allegations of the Amended Complaint, whether the numerous allegations upon information and belief without providing any basis for the same or the insufficient allegations of alter ego liability, are insufficient to state a claim against 60G and require dismissal of the Amended Complaint. Accordingly, the Amended Complaint should be dismissed with prejudice as there simply is no claim that Prince can state against 60G. In the unlikely event the Court declines to dismiss the Amended Complaint, at a minimum, Prince's improper allegations regarding a so-called "sham mortgage" should be stricken from the Complaint pursuant to Rule 12(f) as immaterial to its claims.

Dated: January 11, 2021               **COLE SCHOTZ P.C.**
     New York, New York

By:   */s/ Nolan E. Shanahan*
             Leo V. Leyva
             Nolan E. Shanahan
             1325 Avenue of the Americas
             19th Floor
             New York, NY 10019
             Telephone: (212) 752-8000
             Facsimile: (212) 752-8393
             lleyva@coleschotz.com
             nshanahan@coleschotz.com
             *Attorneys for Defendant*
             *60G 542 Broadway Owner, LLC*

52031/0003-21872606v8