ROMER DEBBAS, LLP
Emil A. Samman
275 Madison Avenue
Suite 801
New York, New York 10016
(212) 888-3100
(212) 888-3201

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                          Chapter 11

PRINCE FASHIONS, INC.,                                          Case No. 19-23079 (RDD)

        Debtor,                                         **AFFIDAVIT IN SUPPORT**

_____

PRINCE FASHIONS, INC.                                           Adv. Proc. No. 19-08714 (RDD)

        Plaintiff

v.

60G 542 BROADWAY OWNER, LLC, and
542 HOLDING CORP.,

        Defendants.
------------------------------------------------------------X

STATE OF NEW YORK   )
                              : 
COUNTY OF NEW YORK )

        MARYELLEN GOBLE, being duly sworn, deposes and says:

        1.    I am an attorney and I have acted as the general counsel for 542 Holding Corp. ("542"), a named defendant in this action, since approximately 1986. 542 is a cooperative housing corporation located in New York, New York. As counsel for these many years, I have

1

familiarity with the structure, the general operations of 542 and the prior landlord-tenant relationship between 542 and Prince.

2. I make this affidavit in support of 542 and 60G 542 Broadway Owner, LLC's (60G) Motions to Dismiss Prince Fashions Inc.'s ("Prince") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). A copy of Prince's Amended Complaint is annexed to the Samman Declaration as Exhibit "A."

**Background**

3. 542 is a housing corporation organized under the laws of New York in or about 1980 at which time it became the record owner of the building located at 542 Broadway, New York, New York 10012 (the "Building").

4. The Building is six stories and consists of residential apartments and commercial space.

5. 60G is currently the owner of the commercial space which consists of the ground floor commercial space and portions of the basement (the "Premises").

6. 60G is the owner of the Premises pursuant to a recorded Condominium Unit Deed dated May 11, 2015, at which time the Premises were duly transferred from 542 to 60G. See copy of Deed annexed to 60G moving papers, Shanahan Declaration as Exhibit 2.

7. It is my understanding that 60G is Prince's former landlord pursuant to a written lease and rider (the "Lease") dated April 11, 1980.

8. The Lease was originally between 542, as landlord, and 542 Equities Associates ("542 Associates"), as tenant, but 542 Associates later assigned its interest to Prince.

9. In May 2015, the Lease was then further assigned to 60G pursuant to the Assignment and Assumption of Retail Master Lease which was executed simultaneously with

2

60G's purchase of the Premises from 542. See copy of Lease annexed to Prince's Amended Complaint which is annexed as Exhibit "A" to Samman Declaration. See copy of the Assignment and Assumption of Retail Master Lease annexed to 60G moving papers, Shanahan Declaration as Exhibit 3.

10. I am advised that thereafter 60G terminated the Lease with Plaintiff.[1]

11. I am further advised that in or about March 2016, 60G initiated termination of the Lease due to Prince's breach of certain provisions of the Lease and commenced a holdover proceeding in or about July 2016.

12. After years of litigation, a warrant of eviction for the Premises was issued on or about December 10, 2018 which I have been advised was after a Court ordered stay was lifted by order of the Court.

13. On May 29, 2019, Plaintiff filed its Chapter 11 bankruptcy petition and commenced this adversary proceeding on November 22, 2019. A copy of Prince's Complaint is annexed to the Samman Declaration as Exhibit "B".

14. In January 2020, Prince was evicted from the Premises and 60G regained legal possession of the Premises. See copy of the Marshal's Legal Possession for the Premises annexed to 60G moving papers, Shanahan Declaration as Exhibit 13.

15. I am unaware of any ownership claim by Prince prior to the commencement of its adversarial proceeding. In fact, in reviewing my available files prior to signing this affidavit, I cam across notes and correspondence with Prince and its prior attorneys which characterize Prince as a tenant and where no claim of ownership in the Premises is asserted. See correspondence and Certificate annexed to the Samman Declaration as Exhibit "C".

---

[1] See co-defendant 60G's Memorandum of Law for the procedural and factual history of the termination of Lease as 542.

**Facts**

16. In or about April 1980, David Silverstein ("Silverstein"), the sole principal of 542 (at the time), entered into the Lease on behalf of 542, as landlord and 542 Associates, as tenant.

17. Silverstein was the sponsor of the cooperative and the lease was a sweetheart lease, which provided very favorable terms for the tenant and was for a term of 99 years. This type of arrangement was fairly typical in cooperative conversions in the 1980's.

18. Contrary to Prince's assertion in the Amended Complaint, at no time did 542 sell shares to Prince for the Premises nor were any shares of 542 ever allocated to the Premises. Nothing in the cooperative offering plan suggests that shares were to be allocated to the commercial space.

19. Additionally, to my knowledge, at no time did 542 offer to sell Prince a long term lease which would constitute an ownership interest in the Premises. Rather, Prince was offered by Silverstein, the opportunity to sign a long-term lease for the Premises.

20. I cannot speak as to whether Silverstein and Prince agreed to a secret deal over forty (40) years ago for Prince to purchase the Premises but 542 always possessed the deed to the Premises, up until the Premises was transferred to 60G. At no time did Prince have ownership rights in the Premises nor, to my knowledge, did Prince ever claim ownership rights in the Premises.

21. In April 1980, 542 Associates transferred the deed to the Building to 542.

22. At that same time, the residential apartments converted to a cooperative (542) with shares and proprietary leases issued solely to the owners of the residential apartments.

23. During this time, Prince remained a tenant of the Premises and nothing more. The Prince Transfer Documents, referred to in Prince's Amended Complaint, do nothing more than explain how Prince became the Premise's tenant.

24. It holds no relevance whatsoever, as alleged by Prince, that at the inception of Prince's tenancy that 542 and 542 Associates were both owned by Silverstein.

25. Silverstein was the Sponsor who converted the residential portion of the Building to a cooperative, 542.

26. To my knowledge, Prince has no deed, nor does it have any other documents memorializing the sale of the Premises to Prince or establishing its ownership rights.

27. As stated above, 542 possessed the deed to the Premises until it sold the Premises to 60G in May 2015. The Lease was assigned to 60G as part of the sale of the Premises. Prior to the sale to 60G, 542 converted the Premises to a retail condominium.

28. There was no scheme by the Defendants to deprive Prince of its alleged ownership interest in the Premises. If any scheme exists, it is the one Prince is perpetrating by trying to make an unsupported claim of an ownership interest in the Premises.

29. Simply stated 542 was the owner of the Building and landlord of the Premises for which 542 Associates was the initial tenant. 542 Associates assigned its rights in the Lease as tenant to Prince. In 2015, 542 converted the Premises to a retail condominium and sold the Premises to 60G and simultaneously assigned its interest in the Lease as Landlord to 60G. Prince never had any interest in the Premises other than as a tenant under the Lease.

30. Based upon the foregoing and the arguments set forth in co-defendant 60G's memorandum of law submitted in support of its Motion to Dismiss, it is respectfully requested that Prince's Amended Complaint be dismissed in its entirety against 542 and co-defendant 60G.

_Maryellen Goble_
Maryellen Goble

Sworn to this
25th day of February, 2021

_signature_
Notary Public

UEL RHEEM
Notary Public, State of New York
Reg. No. 02RH6406043
Qualified in New York County
Commission Expires 3/23/24