1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - -x

4   In the Matter of:

5   PRINCE FASHIONS, INC.,                    Lead Case No.

6          Debtor.                            19-23079

7   - - - - - - - - - - - - - - - - - - - -x

8   PRINCE FASHIONS, INC.,

9          Plaintiff,                         Adv. Proc. No.

10  v.                                        19-08714-lgb

11  60G 542 BROADWAY OWNER, LLC, et al.,

12         Defendants.

13  - - - - - - - - - - - - - - - - - - - -x

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              November 15, 2023

19              11:08 AM

20

21  B E F O R E:

22  HON. LISA G. BECKERMAN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  AMANDA

2

1

2    Notice of Hearing on Letter Motions Discovery Issues on

3    November 15, 2023 at 11:00 a.m. (Prevailing Eastern

4    Time)(related documents 74, 75).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2  A P P E A R A N C E S (All present by video or telephone):

3   LOUIS FOGEL LAW

4        Attorneys for Debtor

5        5 Nottingham Road

6        Annandale, NJ 08801

7

8  BY:   LOUIS FOGEL, ESQ.

9

10

11  COLE SCHOTZ P.C.

12        Attorneys for 60G 542 Broadway Owner, LLC

13        1325 Avenue of the Americas

14        19th Floor

15        New York, NY 10019

16

17  BY:   NOLAN E. SHANAHAN, ESQ.

18

19

20

21

22

23

24

25

4

1

2  COLE SCHOTZ P.C.

3        Attorneys for 60G 542 Broadway Owner, LLC

4        Court Plaza North

5        25 Main Street

6        Hackensack, NJ 07601

7

8  BY:   JOSEPH BARBIERE, ESQ.

9

10

11  BOYD RICHARDS PARKER COLONNELLI, P.L.

12        Attorneys for 542 Broadway

13        1500 Broadway

14        Suite 505

15        New York, NY 10036

16

17  BY:   EMIL A. SAMMAN, ESQ.

18

19

20

21

22

23

24

25

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

5

1                    P R O C E E D I N G S

2          THE COURT:  Good morning.  This is Judge Beckerman.

3    Court is now in session.  I'm going to ask the attorneys to

4    please put their appearances on the record when I call the

5    case.  And then I'll ask them to also identify themselves for

6    the record when they're speaking.

7          Case number 19-08714, Prince Fashions, Inc. v. 60G 542

8    Broadway Owner, LLC, et al.

9          May I have appearances of counsel, please?

10          MR. FOGEL:  Good morning, Your Honor.  Louis Fogel,

11    representing the plaintiff, Prince Fashions, Inc.

12          MR. SHANAHAN:  Good morning, Your Honor.  Nolan

13    Shanahan of Cole Schotz P.C., on behalf of defendant, 60G 542

14    Broadway Owner, LLC.  And I'm joined by my colleague Joseph

15    Barbiere.

16          MR. BARBIERE:  Good morning, Your Honor.

17          THE COURT:  Thank you.

18          MR. SAMMAN:  Good morning, Your Honor.  Emil Samman,

19    Boyd Richards, for defendant 542 Broadway.

20          THE COURT:  Thank you, Mr. Samman.

21          Okay.  Any other appearances?

22          All right.  So the purpose of today is to have a

23    discovery conference.  I've obviously read the parties' back

24    and forth correspondence relating to that.  And I think, as was

25    expressed in some of the letters, this has been a process

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

6

1   that's been going on for a long time.  And obviously we do need

2   to try to figure out when we can close back discovery.

3        So I wanted to understand from each of the parties,

4   from their perspective, what remains to be done in order to be

5   in a position to close back discovery and perhaps move on to

6   either summary judgment or trial, depending here.  So I'm going

7   to ask first the plaintiff, from their perspective, what

8   remains to be done for fact discovery.

9        MR. FOGEL:  Sure, Your Honor.  Thank you.  With regard

10  to fact discovery, we have depositions of the defendants.  We

11  had served -- without getting into the whole history of it,

12  because the Court hasn't asked that question, we had served

13  deposition notices back in March of 2022.

14       THE COURT:  Okay.  How many people and who?  Let's be

15  specific.

16       MR. FOGEL:  So we had served deposition notices for a

17  30(b)(6) witness of defendant 60G.  We had also served a

18  deposition notice for -- I'm sorry, Your Honor.  Give me one

19  minute; I have it written down.  We also served a 30(b)(6)

20  notice for the other defendant, 542.

21       THE COURT:  Okay.

22       MR. FOGEL:  And then, as far as individuals that we

23  named for defendant 60G, we named someone named Bastien,

24  B-A-S-T-I-E-N, Broda, B-R-O-D-A.

25       THE COURT:  Okay.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

7

1      MR. FOGEL:  As well as a gentleman named Kevin

2  Chisholm, C-H-I-S-H-O-L-M.  So there were three notices.  We

3  don't know whether one of the two individuals might also be the

4  30(b)(6).

5      THE COURT:  Okay.  I understand.  And --

6      MR. FOGEL:  Same for the other defendant.  We had

7  served on defendant 542 a 30(b)(6) notice, as well as a notice

8  for a gentleman named Pierluigi.  That's P-I -- I believe

9  P-I-E-R-R-E-L-U-I-G-I (sic).  Last name Consagra,

10  C-O-N-S-A-G-R-A.

11      THE COURT:  Okay.

12      MR. FOGEL:  And we had also served for an individual

13  named Edward -- I'm not sure how to pronounce this, but I'll

14  spell it O-B, for boy, E-R-W-A-G-E-R.

15      So we had served those party deposition notices.  We

16  also served subpoenas on a nonparty named 542 Broadway Lender.

17  We had, likewise, served on 542 Broadway Lender for a couple of

18  individuals, one named Jeffrey Kaplan, and one named -- Kaplan

19  with a K, K-A-P-L-A-N, and Timothy Yantz, Y-A-N-T-Z.

20      We received a written objection.  Mr. Shanahan, at

21  Cole Schotz, represents not only defendant 60G, he also

22  represents the nonparty lender, 542 Broadway Lender, who we

23  served those subpoenas on.

24      THE COURT:  Okay.

25      MR. FOGEL:  He objected to the subpoenas both for

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

8

1   documents and for depositions.  Because we're -- due to limited

2   resources, we wanted to finish the party depositions first and

3   then see whether or not we needed to actually pursue the

4   nonparty --

5            THE COURT:  Right.

6            MR. FOGEL:  -- depositions.  And so that's why we

7   haven't addressed that particular issue and those objections by

8   Mr. Shanahan, because we don't want to burden the Court with

9   that unless we finish the party depositions and determine that

10  we want to and will be able to depose the nonparties as well.

11  And then we're hopeful that we'd be able to work through

12  whatever issues Mr. Shanahan had with that.  And if not, we

13  would have to bring it to the Court.  But we didn't want to

14  burden the Court with that unless it became necessary.

15           THE COURT:  Okay.  Understood, Mr. Fogel.

16           MR. FOGEL:  That's where we're at.  And the only

17  other --

18           THE COURT:  I've got a couple other questions, sir.

19  And trust me, I will get to the other side right after.

20           MR. FOGEL:  Sure.

21           THE COURT:  So my questions were, on the parties'

22  side, meaning the defendants, has all your document discovery

23  been resolved and produced, or is there anything left that's

24  open on document discovery, from your perspective?  Again, from

25  your perspective?

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

9

1          MR. FOGEL:  Yeah, I --

2          MR. SHANAHAN:  Thank you, Your Honor.  From our

3    perspective, we had two very limited --

4          MR. FOGEL:  I'm sorry, Your Honor.  Were you asking

5    me?

6          THE COURT:  Yeah, I was asking, Mr. Fogel.

7          MR. SHANAHAN:  I apologize, Your Honor.

8          THE COURT:  I'll get to you.  It's okay.  Don't worry,

9    Mr. Shanahan.  I'm going to get to you.  I'm just letting Mr.

10   Fogel tell me his view of the lay of the land.  Then I'm going

11   to hear your view, Mr. Samman's view of the lay of the land.

12   And so I can figure out what's left to accomplish here.  Okay.

13         MR. FOGEL:  Thank you, Your Honor.  With regard to

14   defendant 60G, Mr. Shanahan's client, we received a privilege

15   log from them back in August.  Due to some personal stuff that

16   I was dealing with, it took me a few weeks to respond, which I

17   did.  I told them that we had some issues with the privilege

18   log, and I wrote him a letter.  That seemed to really upset Mr.

19   Shanahan.

20         But in any case, he rejected my position with regard

21   to the defects in his privilege log.  And again, due to my

22   client's situation right now, I have not been able to

23   thoroughly address that with my client.  And so that's why I

24   mentioned in my letter that we have to determine whether or not

25   we're going to be pursuing that.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

10

1          There were about eighty something documents on the

2     privilege log.  And it was our position that, particularly with

3     respect -- Mr. Shanahan had pointed out that certain documents

4     were partly redacted and had been produced.  And so, putting

5     those aside, I think there was about half of the documents left

6     on the log, which would be about forty something.

7          And it was our position that the descriptions, et

8     cetera, of the document and of the privilege were insufficient.

9     So again, that's a potential open issue for us.  But I, again,

10    didn't want to burden the Court with that until the client had

11    an opportunity to determine whether or not that was something

12    that he wanted to pursue.

13          THE COURT:  Okay.

14          MR. FOGEL:  The only other thing --

15          THE COURT:  And --

16          MR. FOGEL:  The only -- I'm sorry, Your Honor.

17          THE COURT:  It's all right.

18          MR. FOGEL:  The only other thing that I have on my --

19    as far as the defendants are concerned, is that the other

20    defendant, 542 Broadway, had been directed by Your Honor to

21    produce an affidavit with respect to its inability to produce

22    any emails in this case.

23          And so it took them a while, and I'm not faulting

24    anybody for that, in part because counsel changed firms, so I'm

25    not going to get into all of that.  But what we ended up

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

11

1    getting was a two-page affidavit from an attorney who it says

2    that she's now retired and that she worked for defendant 542

3    for a long time.

4           But she also said in that affidavit that, with respect

5    to the transactions at issue in the case, she was not involved

6    with them and didn't have any knowledge of them because they

7    were handled by outside counsel.  And then she went on to say

8    that she turned over anything that she has that's relevant in

9    the case.

10          So she didn't say who she turned it over to, but

11   putting that aside, the Court directed them to produce an

12   affidavit explaining what efforts they made to locate emails,

13   defendant 542, with regard to these transactions, and why they

14   were unable to locate them.  And all we got was an affidavit

15   from someone who said they weren't involved with any of these

16   transactions.  So I wouldn't expect them to have relevant stuff

17   if they weren't involved.  And that was the extent of what we

18   got.

19          So rather than chasing our tail around, and again,

20   burdening the Court again with this, we just decided we'll take

21   the depositions, we'll find out from 542 who was dealing with

22   this stuff and what emails, if any, they may have.

23          THE COURT:  Okay.  Now, Mr. Fogel, my next question

24   for you is I'm aware, obviously, from the correspondence, that

25   your client is currently in Israel and obviously dealing with

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

12

1   his mother's health issues, it sounds like to me.  However, I

2   think, from my understanding still of my brother-in-law having

3   family members over there, his brother and his sister-in-law,

4   and lots of other nieces and nephews, et cetera, that there are

5   still telecommunications that are available.  There are other

6   ways of communicating, through text and otherwise, with people

7   there.

8           So is it impossible for you to talk to your client at

9   least about some of the things you were saying that you needed

10  to get his input in?  Because even though he's not physically

11  here, and maybe can't be deposed right now, to the extent that

12  he's necessary to assist you with dealing with your case, I

13  presume that there would have to be some point where that would

14  be possible.

15          MR. FOGEL:  Sure, Your Honor.  So I just want to point

16  out that my client is kind of dealing with a full-time

17  situation right now, dealing with a mom who was just diagnosed

18  with dementia and has several other very, very serious medical

19  issues.  And so because it's my understanding -- to answer your

20  question directly, of course I can communicate with him.  Of

21  course he has a phone.  Of course there's computers.  The fact

22  of the matter is that -- and I'll be able to do that and deal

23  with the privilege log issue in the short term regardless of

24  when he returns.  And I've told Mr. Shanahan that.

25          The diagnosis with dementia just recently occurred,

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

13

1    was within the past couple of weeks, and my client informs me

2    that, because of the war, like, things aren't moving like they

3    normally would.  And so it took them much longer to get with

4    the doctor.  And now there was a license that needs to be

5    issued in order for him to find a full-time person that will

6    come in with his mom twenty-four/seven.  And those things just

7    aren't moving at the pace that they would normally move --

8           THE COURT:  Understood.

9           MR. FOGEL:  -- in a normal society.  So my main thing

10   is this, Your Honor and I are the two newest people to this

11   case.  Okay?  Mr. Shanahan makes it appear as if this case has

12   been going since 2019, actively, and that the plaintiff's been

13   dragging its feet.

14          In fact, there was a motion to dismiss an amended

15   complaint that was denied in this case in September of 2021.  I

16   was not even retained in this case until March of 2022.  We

17   promptly served discovery.  The defendants didn't finish their

18   document production.  We served document demands in March of

19   2022.  We finally got their document production completed after

20   some court orders requiring them to make supplemental

21   productions, I believe, in April of 2023.  Okay?  And they want

22   to accuse us of dragging our feet.  All I'm asking for here

23   is --

24          THE COURT:  Okay.

25          MR. FOGEL:  The point that I'm making is that my

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

14

1   client's been fighting with these defendants, 60G, for about

2   ten years over this space in litigation.  And it's even longer

3   than that with 542 Broadway.  And so he's a very hands- on,

4   very active participant in the case.  And he needs to be here

5   to help me prepare for these depositions and to conduct them

6   properly.

7           And I'll just remind Mr. Shanahan that he had

8   contacted me at one point -- and I see that he's making faces,

9   which is very unprofessional.  He had contacted me --

10          MR. SHANAHAN:  Your Honor, excuse me.  That's

11  preposterous.  Can counsel just direct his remarks to the

12  issues at hand, please?

13          THE COURT:  I agree with you, Mr. Shanahan.

14          MR. FOGEL:  I'm sorry.

15          THE COURT:  Okay.  Mr. Fogel, look --

16          MR. FOGEL:  But --

17          THE COURT:  -- I don't want to get into people's

18  experiences, bad impressions of other things, et cetera.  I'm

19  just trying to get to the facts.

20          MR. FOGEL:  The point that I was trying to make, Your

21  Honor, is that Mr. Shanahan contacted me in the middle of

22  supplemental document production and told me that he had a

23  family medical issue, and all I did was wrote him back and say

24  I'm very sorry to hear that; take whatever time you need.  I've

25  been practicing --

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

15

```
 1              THE COURT:  I understand.
 2              MR. FOGEL:  I've been practicing law for almost forty
 3    years.  I can't believe that --
 4              THE COURT:  Okay.
 5              MR. FOGEL:  -- someone's trying to do this.
 6              THE COURT:  I --
 7              MR. SHANAHAN:  Your Honor, I mean --
 8              THE COURT:  Mr. Fogel, let's --
 9              MR. FOGEL:  I apologize.
10              THE COURT:  Let's please just stick to what I was
11    trying to do which is understand where people are here.  Okay.
12              MR. FOGEL:  My apologies.
13              THE COURT:  Respectfully, I don't see how everything
14    is going to be able to stop for forever.  That's just not
15    realistic here.  Okay?  And I --
16              MR. FOGEL:  Nor do I.
17              THE COURT:  I understand that.  And I realize you'd
18    like to have your client with you when you're taking some of
19    these depositions, but that may just not be possible.  It may
20    be that he has to be on by Zoom.  The world doesn't end -- for
21    a lot of years we had to take all our depositions, people had
22    to take all their depositions.  I say that because I was a
23    lawyer for the first year of the pandemic before I went on the
24    bench.
25              So I understand what has to happen sometimes,
```

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

16

1   especially if people are far away.  There are ways to

2   accommodate that.  That can be done.  So I just think we're --

3   I understand taking his deposition is going to be more

4   difficult, perhaps, but everyone else's, I'm not sure I'm

5   understanding that.  So that's why I just wanted to understand

6   where we were.

7            Okay.  Now I'm going to go on to the other side.  I'm

8   just going to ask you, since they mostly sat quiet during your

9   part, so let's do that so I can hear what the other side.

10           So Mr. Shanahan, I'm going to start with you.

11           MR. SHANAHAN:  Thank you.

12           THE COURT:  So what are you missing in terms of what

13   you need in fact discovery?

14           MR. SHANAHAN:  In terms of documents, Your Honor,

15   we're really only -- we made a supplemental demand regarding

16   this defined term in the amended complaint of the purchase

17   price.  To be frank, though, Your Honor, we could proceed

18   without those documents because it's not in their production.

19   They're going to be bound by that on summary judgment, et

20   cetera.  If they have it, we obviously want it, but we're not

21   going to hold up taking depositions on the absence of that.

22           And the other thing is we never received a privilege

23   log and got the incredible response back that counsel didn't

24   know if documents were withheld on the basis of privilege,

25   which boggles the mind who's making those calls if things were

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

17

1  withheld on the basis of privilege.

2         But again, we have sufficient -- the merits, or lack

3  thereof, of this case are apparent, and we have sufficient to

4  move forward and take the three depositions we noticed, which

5  were for 30(b)(6) of the debtor/plaintiff, and for who, our

6  understanding, is the debtor/plaintiff's two shareholders,

7  Doron Zabari and his brother, Eyal Zabari.  Those are the three

8  depositions we need to proceed.  And we're ready to go.

9         If Your Honor wants to hear on the issues Mr. Fogel

10  raised, I'm happy to address them, or if you just want to --

11  however you want to handle that, I'm happy to, to respond.

12         MR. BARBIERE:  Okay.  So I guess that's -- so you're

13  saying, in essence, you need three depositions.  Obviously,

14  probably my guess is that the principal is going to be the

15  30(b)(6) .  It would surprise me otherwise, based on what Mr.

16  Fogel said about the principal.  So basically you need two

17  people's depositions, three depositions, but two people.

18         MR. SHANAHAN:  Yes, Your Honor.  That's correct.

19         THE COURT:  It's probably what it's going to amount

20  to.  Okay.

21         Now I'm going to stop for one second and ask Mr. Fogel

22  one question.  So I know obviously one of the Mr. Zabari's is

23  in Israel right now dealing with his mother.  What is the

24  situation with the other Mr. Zabari?

25         MR. FOGEL:  Do not know.  Have never spoken to him.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

18

1          MR. BARBIERE:  Okay.  You don't know.  Okay.  All

2    right.  That's an answer.  Okay.

3          And I think that answers my questions about where you

4    are on documents and depositions, Mr. Shanahan.  I will ask you

5    one other question.

6          MR. SHANAHAN:  Yes, Your Honor.

7          THE COURT:  If I were to order the deposition to be

8    done by video conferencing, would you do that?

9          MR. SHANAHAN:  Yes, I think we would proceed in that

10   fashion to get them done.  It's --

11         THE COURT:  Okay.  Just want to understand.  Okay.

12         MR. SHANAHAN:  Thank you, Your Honor.

13         THE COURT:  All right.  Mr. Samman?

14         MR. SAMMAN:  Your Honor, we're kind of in a secondary

15   position behind Mr. Shanahan's client.  To be quite honest with

16   you, I don't know why Mr. Fogel thinks that our client has been

17   involved with this.  The affidavit we produced, just to be

18   clear, was the general counsel for the co-op when these

19   purported transactions happened.  She was not involved in the

20   actual transactions.

21         I now have a board that's twenty years removed from

22   when any of this happens.  They have no clue what happened with

23   these.  They are not going to sign an affidavit because that

24   would be -- they don't know.  They can't sign an affidavit.

25   The one that wasn't --

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

1      THE COURT:  Let me stop you there.  They can sign an

2  affidavit saying that they went through whatever emails they

3  have in their premises, and there aren't any.

4      MR. SAMMAN:  That wasn't the original scope.  It was

5  really from the general counsel.  But I can ask the board

6  members to do that.  All it's going to be is one sentence

7  saying we didn't even live in the building; we have no emails.

8  The person --

9      THE COURT:  Right.  There's nothing on our system for

10  the building --

11      MR. SAMMAN:  Correct.

12      THE COURT:  -- that's responsive.

13      MR. SAMMAN:  They don't --

14      THE COURT:  I mean, if there isn't.  First of all, no

15  one has emails back, most people, twenty years.  But you

16  understand.

17      MR. SAMMAN:  Yeah, I understand.  And most of this was

18  dealt with with the sponsor, to be honest with you, who is no

19  longer involved with the co-op and hasn't been for over

20  whatever amount of years.  So yeah, I could ask the board

21  members to sign the affidavit.  I don't know where that would

22  get Mr. Fogel.

23      But the documents that Ms. Goegel (ph.) was referring

24  to in her affidavit that she produced was the documents we've

25  already produced to Mr. Fogel.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

20

1          THE COURT:  Right.

2          MR. SAMMAN:  So anything she had in her file that

3    related to Prince, we turned over.  I think one of them clearly

4    stated that they acknowledged and signed a document saying they

5    were a tenant, so I'm not quite sure what that means.

6          As far as depositions, we would be in the same

7    position, the principals.  And Mr. Fogel is making accusations

8    about how our clients haven't responded.  He hasn't even spoken

9    ever to one of the principals of Prince.  I mean, that seems a

10   little off the wall.

11         And I just want to clarify one thing, and I may be

12   incorrect, this case has been going on for longer than 2021.  I

13   believe there was an original motion to dismiss, but then the

14   Court allowed an amended complaint, and I think that was back

15   in 2019.

16         So to the point that this case just started in 2021,

17   no, it goes way back before then.  And the Court even allowed

18   plaintiffs to amend their complaint on a motion to dismiss

19   because it didn't properly plead certain allegations.  So there

20   has been some frustration, and it has been going on for quite a

21   while.

22         THE COURT:  Okay.  All right.  Now I'm going to ask

23   you a question.

24         MR. SAMMAN:  Okay.

25         THE COURT:  And then I'm going to go back to Mr.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

21

1   Shanahan with question in a second.

2        So Mr. Fogel mentioned the names of two parties and

3   also the need for a 30(b)(6) for your client.  But who are

4   those two parties?

5        MR. SAMMAN:  I don't know.

6        THE COURT:  So you don't actually know those parties?

7        MR. SAMMAN:  They're not -- I know the board members

8   and the property manager and the retired general counsel.  They

9   have not retained new general counsel.  They're a small

10  building, so I'm not even sure who those parties are.

11       THE COURT:  Okay.

12       MR. SAMMAN:  If Mr. Fogel --

13       MR. SHANAHAN:  Your Honor, I can chime in, just based

14  on my history with the case, that at one time those two

15  individuals were members of the board.  I have no idea if they

16  still are.  But they were in the time frame around when my

17  client acquired the property.

18       THE COURT:  Okay.

19       MR. FOGEL:  Your Honor, can I just chime in on one

20  thing regarding that?

21       THE COURT:  Yes.

22       MR. FOGEL:  Firstly, it is our understanding that they

23  were actively involved at the relevant time period and that

24  they do still reside in the building.  I don't know whether

25  they're board members or not.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

22

1          Secondly, I just want to correct the fact that the

2     transactions that we're really interested in are from 2014;

3     they're not twenty years ago.  These parties got together in

4     2014 and, over the next year-and-a-half, consummated the

5     transaction that's the subject of the case.  So --

6          THE COURT:  Okay.  But if the co-op -- again, I

7     realize this is not necessarily what's happened so far, but if

8     someone appears on behalf of the co-op, which I think a

9     30(b)(6) would require, and whoever that is -- I'm assuming it

10    would be probably one of the board members or the manager -- I

11    don't know -- of the co-op, somebody like that that would have

12    to appear.  Presumably, that person could certainly acknowledge

13    that there's no further emails on their system, on the co-op

14    system, that are relevant.

15         Obviously, Mr. Samman has provided you with whatever

16    the general counsel had, the former general counsel, who's

17    retired, had in her records from back in the time.  That's all

18    it is.  Even if she wasn't involved in the transaction, that's

19    what she has.

20         And unless and until there's somebody else whose

21    records that could be subpoenaed or looked at, I'm not sure

22    where else you'd be able to go for documents.  I suppose it's

23    possible that -- again, I'm sure I'll butcher these names, too,

24    that Mr. Consagra or Mr. Oberwager -- I don't know -- could

25    have their own records and no one would know.  But, I mean,

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

23

1  from the perspective of the co-op, the co-op either has records

2  or doesn't have them from that time period relating to this

3  transaction.

4  　　　　And if they've produced everything that they have, and

5  the general counsel's produced everything that they have, I

6  don't see where the co-op is going to be able to get any

7  further information for you beyond maybe these personal

8  people's files, is what I'm saying to you, when you depose

9  them.  I really am not sure what else.

10  　　　　MR. FOGEL:  That's the way we're going to pursue it,

11  Your Honor.  We're not going to be playing the shell game.

12  We're just going to take the depositions and see what we can

13  find out.

14  　　　　THE COURT:  Okay.  Understood.

15  　　　　MR. SAMMAN:  Your Honor -- I have a question, though,

16  Your Honor.  Theoretically speaking, because it's come up a lot

17  in state court, if there's two individuals who are no longer

18  board members, but still live in the co-op as shareholders, are

19  they theoretically a party deposition, because they're not on

20  the board?  The board and the co-op are the ones that are

21  named.  The board represents the co-op.  Are they theoretically

22  deemed a party deposition?  And this confusion has come up a

23  few times in --

24  　　　　THE COURT:  Yeah.  No, I don't think, unless they're

25  going to appear on behalf of -- to answer the 30(b)(6), which

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

24

1    you're going to have to figure out how you're going to handle

2    that, because they may be the only people that actually do

3    know --

4            MR. SAMMAN:  Right.

5            THE COURT:  -- any facts from back then, and they

6    might have to be your 30(b)(6) witnesses.  I don't know.

7            MR. SAMMAN:  Yeah.

8            THE COURT:  But that's up to you, Mr. Samman, and your

9    clients.

10           MR. SAMMAN:  No, I understand.  I understand.  But --

11           THE COURT:  They might have to otherwise be subpoenaed

12   as nonparties.

13           MR. SAMMAN:  That's what I was thinking.

14           THE COURT:  I understand.

15           MR. SAMMAN:  Yeah.

16           THE COURT:  That may be required.  But I think that

17   what Mr. Fogel has to figure out here, and it's not

18   unreasonable, is to take the 30(b)(6) first, see who shows up

19   for that, because the questions, the building may not be able

20   to answer them.  The building will have to decide what they're

21   going to do about that.  And then, if he doesn't feel that

22   that's sufficient, then yes, he might have to subpoena those

23   parties as nonparties.  Because I agree, if they're not on the

24   board at the moment -- and I think that you can certainly

25   provide a list of the board members.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

1       MR. SAMMAN:  Absolutely.  Absolutely, Your Honor.

2       THE COURT:  So I think that would be helpful.  Maybe

3 just an attorney certification --

4       MR. SAMMAN:  Sure.

5       THE COURT:  -- this is the list of the board members,

6 so Mr. Fogel knows these people are not board members.  Then he

7 can figure out -- if you don't have them appear for your

8 30(b)(6), again, then he could subpoena them.  And if they were

9 involved in the transactions, obviously, he's going to be

10 entitled to nonparty discovery of those parties because they

11 have some knowledge or there's a reason to think they have some

12 knowledge from back then.

13       And if none of the board members have that knowledge,

14 or the manager of the co-op -- which doesn't surprise me -- and

15 there's no documents that exist on systems, then that's just

16 where it is for the co-op.  But it might be that there are

17 nonparty witnesses.  And yes, I think that's right.  I think

18 that's what would have to happen.

19       But I think, in fairness to Mr. Fogel, the appropriate

20 thing would be to do the 30(b)(6) first and see who you put up.

21       MR. SAMMAN:  That's fine, Your Honor.

22       THE COURT:  No disrespect.  Because you'll have to

23 figure out who you can get to answer questions.  And if you

24 decide that that's not what you're doing, and you just have

25 someone from the management or the board that's currently

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

26

1   there, then that's how he would handle that.  And then he'd

2   know he has to subpoena these parties.  That's okay.  I don't

3   think I'd be suggesting he shouldn't be able to take their

4   depositions.

5           MR. SAMMAN:  I'm not suggesting that either.

6           THE COURT:  I don't think you're suggesting that

7   either.

8           MR. SAMMAN:  No.

9           THE COURT:  I think you're just pointing out the fact

10  that they may not be parties anymore.  And I think you're

11  right.  But I -- if you don't put them up as your 30(b)(6).

12          MR. SAMMAN:  No, no, Your Honor, and I'm taking it a

13  step further too, because, theoretically, I don't know, but I'm

14  retained by insurance counsel for the board, and they would

15  then have to be advised to seek -- if they were subpoenaed,

16  seek their own counsel, which I'm trying to --

17          THE COURT:  I understand.

18          MR. SAMMAN:  (audio interference).

19          THE COURT:  I hear that.  I get that that might be

20  right where we have to go here.

21          MR. SAMMAN:  Yep.  No, no, I understand.

22          THE COURT:  Okay.  All right.

23          MR. FOGEL:  Your Honor, can I just jump in real quick?

24  I'm sorry.

25          THE COURT:  Yes.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

27

1        MR. FOGEL:  Two things.  One, this is the first I'm

2    hearing of this.  These subpoenas were issued back in July of

3    '22.  First I'm being told about this.  Second --

4        MR. SAMMAN:  But I don't represent them, Mr. Fogel.

5        MR. FOGEL:  No, but it's the first time that he's

6    coming and saying that they're not on the board, et cetera.

7        But putting that aside, the final point I just want to

8    make, Your Honor, is just something that Your Honor had

9    mentioned earlier.  I am not asking for or expecting any kind

10   of open ended thing for this to go on forever.  We had

11   previously in this case worked together on scheduling.

12       THE COURT:  I understand.  We're going to get a

13   schedule here.

14       MR. FOGEL:  We had had a discussion in early October

15   about, given circumstances, doing that again.  And then for

16   whatever reason -- and Mr. Shanahan is entitled to represent

17   his client the way he wants to.

18       THE COURT:  Okay.  Mr. Fogel, let's please just -- can

19   we please just try to make some progress?  I -- again --

20       MR. FOGEL:  I'm not going backwards, Your Honor.  The

21   only point I'm trying to make -- and I'll wrap it up; I'm

22   sorry -- is that, even though there are -- even though things

23   can be done remotely by video, and we're happy to do the

24   depositions like that if we need to, the reason that I asked

25   until the end of February to complete all the discovery,

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

28

1  including the experts, not just fact but expert discovery, is

2  because that's sort of similar to what we've done in the past.

3  And it can be a final date.

4       And my client is very hopeful that he's going to be

5  here in time to be present and to actively participate.  He's

6  been dealing with these folks for twenty years.  He's entitled

7  to and needs to, for the sake of this case, to fully and

8  actively participate.  And if whatever happens, and he can't

9  get back to do that in person, then we'll live with the new

10  deadline.  We're not going to ask for another one on that

11  basis.  I can assure you of that.  But I simply want

12  to pursue --

13       THE COURT:  I hear you, but I want to keep going on

14  trying to make some progress here, Mr. Fogel.  So let me --

15       MR. FOGEL:  Sure.

16       THE COURT:  -- continue.

17       MR. FOGEL:  Sure.

18       THE COURT:  All right.  Mr. Shanahan, my next question

19  for you is, with respect to the parties that were listed by Mr.

20  Fogel for deposition, got the 30(b)(6), I don't know if the

21  other two names that he gave are parties that you would

22  probably be using for your 30(b)(6) witness.  So I don't know

23  if we're talking about three witnesses, or two witnesses, or

24  four witnesses.  So I wanted to ask you about that.

25       MR. SHANAHAN:  Understood, Your Honor.  We haven't

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

29

1   determined which of those two individuals would be the

2   30(b)(6), but one of them will be the 30(b)(6).

3          THE COURT:  Okay.  All right.  So we're talking about

4   two persons.  And those are people that you have some control

5   over, right?

6          MR. SHANAHAN:  Oh, one hundred percent, yes.

7          THE COURT:  Okay.  Good.  Just trying to make sure we

8   understand.  Okay.  All right.  So we have two people for the

9   plaintiff who need to be deposed, one who's in Israel, and one

10  who Mr. Fogel doesn't know the situation for.

11         We have two people that will have to be deposed on

12  behalf of the 60G defendant, both of which are under control

13  for Mr. Shanahan.

14         And then we have somebody that will have to be put up

15  for the 30(b)(6) for 542.  But we don't know -- I don't know

16  who that will be.

17         And then we don't know if then we'll need to have

18  nonparty discovery of the other two parties relating to 542

19  under subpoenas.  And then we have this other possible level of

20  discovery that might have to happen.

21         So let me make some suggestions here.  It does seem to

22  me that we should try to just schedule some depositions for the

23  30(b)(6) witnesses, for the defendants and the other party, as

24  well as scheduling a date for -- I guess it's the other witness

25  for the plaintiff as well as the witness that's in Israel.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

30

1        I think, realistically, we're here in November.  Next

2    week's Thanksgiving.  Just being realistic about it, it's

3    probably not going to be then.  But obviously some discovery

4    could -- some depositions, it seems like, could happen

5    before -- possibly before the holidays.  That's possible.

6    Certainly in January.

7        And it doesn't seem like we have a -- leaving aside

8    possible nonparty discovery here, because I don't know where

9    that's going to go, it seems to me that we definitely have five

10   witnesses that should be getting deposed between now and then,

11   the end of January.

12       And if then we need to also add in the two parties --

13   nonparties under 542, that were mentioned by name, and then

14   other parties, I think that would happen subsequent to that

15   because, as I pointed out, I think you have to take the 542

16   30(b)(6) deposition before you know, Mr. Fogel, whether you're

17   going to have to serve subpoenas on those parties, because you

18   need to see who shows up, I think, and ask your questions.

19   That's what I would do if I were you.

20       MR. FOGEL:  Yep.

21       THE COURT:  So now, you mentioned, Mr. Fogel,

22   something that I was a little surprised at, which was expert

23   discovery.  Again, I've just read the -- I've read, of course,

24   the amended complaint.  I've read the answer.  I've read

25   responses to that.  But I have not really read anything else.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

31

1       What sort of expert discovery do you think you're
2   going to need in this case?  I mean, this case seems to me to
3   be an issue about what the documents said that constituted that
4   transaction that occurred among the parties, and perhaps the
5   parties' intent, if that was somehow ambiguous.  What is an
6   expert going to be testifying about?  Sorry.

7       MR. FOGEL:  Well, Your Honor, I'm not sure yet.  I
8   think it depends in part upon what happens with the fact
9   discovery.  I would say that, when Judge Drain denied the
10  motion to dismiss the amended complaint, he indicated that this
11  case would be handled in two phases, and that if the
12  recharacterization claim was successful, then there would be a
13  separate phase that would determine the remedies.

14      So a lot of the expert stuff I think would come in in
15  phase two.  But there may be some expert issues, potentially,
16  in phase one.  And I'm not really sure I want to say more than
17  that right now.

18      THE COURT:  That's fine.  I just don't see how this
19  doesn't end up being, like, an issue about whether I can grant
20  summary judgment or not, and if I can't, whether we're going to
21  trial.  But then that wouldn't be -- so anyway, I'm not sure
22  about that myself.  I have a hard time imagining how expert
23  discovery, aside from damages, fits in here.  I get damages.
24  That's right.  But first we have to get there, that there
25  actually has to be damages.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

32

1          MR. FOGEL:  We do have a -- totally agree.  We do have

2     a couple of issues that we think potentially might impact some

3     expert discovery.  I'd rather not say right now what they are.

4     But I just want to point out that the schedules that we've been

5     doing have included a period for completing expert discovery.

6     So I just thought that we should keep that in the schedule just

7     in case we're going to end up needing it.

8          THE COURT:  Okay.

9          MR. SHANAHAN:  Your Honor --

10         THE COURT:  But you haven't identified who your

11    experts are going to be, or why you necessarily need them now,

12    at least at the moment.

13         MR. FOGEL:  Well, we have not, Your Honor, for the

14    reasons that I've said.  And at this point, in my head, there's

15    potentially two experts that might be implicated.  But I really

16    would rather not say more than that at this time, if that's

17    okay.

18         THE COURT:  Okay.  That's fine.  All right.

19         MR. SHANAHAN:  Your Honor --

20         THE COURT:  Mr. Shanahan, I don't know if you have --

21    or Mr. Samman, if you have any thoughts.

22         MR. SAMMAN:  I have a question, but I'll let Nolan go

23    first.

24         MR. SHANAHAN:  If I could just be heard on that issue.

25    Judge, this is -- again, not to rehash the past -- more of the

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

33

1   same.  We're going to do these things in steps and, oh, we'll

2   have the fight about experts in three months.  What are we

3   holding back here?  We're going try this by surprise?  If you

4   need an expert, identify the expert, identify the issues, and

5   let's deal with the issue now instead of waiting three months

6   and then having a two-month fight over it.  This is -- I mean,

7   this is what we're talking about, Judge.

8         MR. FOGEL:  Your Honor, there may be admissions that

9   we can get in some of the party depositions that might

10  eliminate the need for some of the expert -- potential expert

11  testimony.  So I don't really think that I need to disclose

12  more than that right now, unless the Court's going to direct me

13  to, in which case obviously I will.

14        THE COURT:  Okay.  All right.  So I think what you're

15  hearing from me is I don't see any reason why all the party

16  depositions -- and I say party, understanding that we might

17  have some other nonparty depositions, including perhaps those

18  two gentlemen that were named who were previously on the board

19  of Mr. Samman's, I guess, client's situation.

20        So I think what's best for the moment, honestly, in

21  this situation, is just to order that you have to complete all

22  those depositions.  And that includes the principal of the

23  plaintiff.  Whether that has to be done by video conference or

24  it has to be done in person, I think that all needs to be

25  accomplished by sometime in January.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

34

1          MR. FOGEL:  That's fair, Your Honor.  Thank you.

2          THE COURT:  I think that's realistic.

3          MR. FOGEL:  That's fair.  Thank you.

4          THE COURT:  It's five depositions.  They have to be

5   scheduled and they have to occur, at least five.  Obviously

6   we're talking about, I guess, five.

7          And then if there has to be nonparty discovery, Mr.

8   Fogel, of those two gentlemen, I guess, it seems to me like

9   that needs to also try to be subpoenaed and occurred during

10  that time period.  So that would require Mr. Samman's --

11  sorry -- 30(b)(6) to be scheduled relatively earlier so that

12  you know if you need to add those parties.  And I'm lumping

13  them in for this because it seems like two months is enough to

14  accomplish, at most, seven depositions here.  And again, I

15  don't know why that can't be possible.

16         So I think that's just realistic, and that's what I'm

17  going to order.  Obviously, if there's any other document

18  issues that have to be resolved, in terms of document discovery

19  on fact witnesses, that's also going to have to be done during

20  that time period, at least if it relates to either the two

21  parties who might be nonparties and the party witnesses, the

22  parties.

23         With respect to the other persons who you may or may

24  not need to take a depositions of, Mr. Shanahan, rather than

25  make those have to happen in this time frame, I just think it's

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

35

1   not crazy to decide to wait and see if he needs them, because

2   if he doesn't -- otherwise you're just going to have to add

3   that to your working list.  And I'm not sure why that matters

4   or we have to have a fight about that.  And if it turns out

5   that he never needs them, then I won't have to deal with that.

6   And if it turns out he does need them, then I will have to deal

7   with it.

8        MR. SHANAHAN:  I understand that point, Your Honor.

9   I'll just say that we're standing by on our objections as to

10   the individuals we represent.

11        THE COURT:  I understand.  I'm not denigrating any of

12   your objections.  I haven't heard them yet.  They're obviously

13   not before me yet.  I get that.  But what I hear from Mr. Fogel

14   is that it might not be necessary to take those parties'

15   depositions, or to even have a fight over whether those

16   nonparties' depositions should be taken.  So why don't we see

17   if that's true?

18        If we have to have the fight, we have to have the

19   fight.  You both will present your positions and I'll rule.

20   It's not that -- it'll happen.  I'm not going -- trust me, I'm

21   not going anywhere.  I'm around.  So this is not me or my time.

22        Okay.  So just humor me one second.  I'm going to now

23   just look at my calendar so I can actually pick a date for this

24   order.  Okay.  All right.  I think Martin Luther King Day is

25   the 15th.  So I think it will be the 16th of January.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

36

1          Okay.  So that's my pseudo fact discovery cut-off, I

2     guess, because the only thing I'm not cutting off, I suppose,

3     after that, is those nonfact witnesses we just talked about,

4     those particular ones.

5          And I guess now I should ask you all about expert

6     discovery.  So let's talk about that for a second.

7          MR. FOGEL:  Your Honor, I'm sorry to interrupt.  You

8     had said end of January, but --

9          THE COURT:  No, I said January -- middle of January,

10    that's what I said, for those depositions to occur.  Now I'm

11    going to go on to expert discovery for a second.

12         MR. FOGEL:  Okay.

13         THE COURT:  So I'm going to order all those

14    depositions, the five we discussed, and the two that might be

15    nonparty, that have to occur in that time period.  And any

16    discovery issues on documents, fact discovery issues relating

17    to the parties, have to be resolved in that time, or documents

18    relating to those parties, those potential nonparties -- I'll

19    just call them potential nonparties.  Because I think Mr.

20    Samman's point is right.  It's not clear.  They are likely to

21    be nonparties, and they'll have to be subpoenaed.  But you have

22    two months, so that shouldn't be impossible -- from today.

23         Okay.  Expert discovery.  I think, Mr. Fogel, you're

24    going to need to identify if you're going to need any expert

25    discovery.  I think, realistically, by six weeks from now,

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

37

1  sometime in the middle of this process where you're far enough

2  along in it, you should be able to figure it out.  Maybe, like,

3  I don't know, the 2nd of January.

4       If you're going to seek to call any expert witnesses

5  or have them, so they can be deposed, you have to identify them

6  and provide the proper disclosures by then, by January the 2nd.

7  And I guess that's going to go for you too, Mr. Shanahan, in

8  theory.  But presumably you're going to have to have rebuttal

9  witnesses if that happens.  So --

10       MR. SHANAHAN:  Yeah, I can say affirmatively, Your

11  Honor, we don't have any plans for an expert right now.  If we

12  deem a rebuttal necessary, we would raise that right.

13       THE COURT:  Okay.  Mr. Samman, I assume you as well?

14       MR. SAMMAN:  Exactly, Your Honor.

15       THE COURT:  Okay.  Fine.  So January the 2nd, you're

16  going to have to identify any experts you're planning on

17  calling and provide proper disclosures for those parties.

18       MR. FOGEL:  Understood.

19       MR. SHANAHAN:  Your Honor, does that include expert

20  reports on January 2nd?

21       THE COURT:  No, it's just he's going to have to

22  identify them.  We're going to need to pick a date for expert

23  reports.  So I don't think that's a realistic date.  He's got

24  to figure out who he's doing, who he's even -- if he's going to

25  have an expert.  So you need -- and you're going to want to do

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

38

1   that.

2         Then I think their expert report is going to have to

3   be provided within approximately, like, three to four weeks

4   from then, so towards the end of January.

5         MR. BARBIERE:  And one last question, Your Honor.

6         THE COURT:  And then we'll just -- depositions will

7   have to take place after that, which is where I think you were

8   going next, Mr. --

9         MR. BARBIERE:  Yes.

10        THE COURT:  Yeah.  So I think then that would take us

11   into February for any expert discovery.

12        MR. BARBIERE:  In terms of dispositive motions, Your

13   Honor, does the Court have any preference or rules?  It's no

14   secret we intend to move for summary judgment.  And again, I

15   represent 60G.  I'm Mr. Shanahan's partner.  And we would look

16   to do so before any expert discovery takes place unless the

17   Court otherwise directs.  It would be my preference to do so as

18   soon as fact discovery concludes unless the Court otherwise

19   orders.  And I just want to know if the Court has any

20   preference with regard to that.

21        THE COURT:  Okay.  I can explain that to you.  I mean,

22   if Mr. Fogel had told me that he's only going to call experts

23   for damages, I would agree with you.  I don't need that for

24   summary judgment.  Mr. Fogel hasn't told me that.  He hasn't

25   told you that either.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

39

1          So I think you're not going to want to -- you're going

2     to want, if he is going to call experts, to have an opportunity

3     to see what their testimony relates to, probably before you

4     file that summary judgment motion, because you don't want to

5     find yourself -- sorry, Mr. Barbiere -- I hope I'm saying that

6     right --

7          MR. BARBIERE:  That's correct.

8          THE COURT:  -- between a rock and a hard place, which

9     you --

10         MR. BARBIERE:  Again, I can't imagine what those

11    experts are going to say from our --

12         THE COURT:  I can't --

13         MR. BARBIERE:  From our standpoint, this is a very

14    black-and-white issue.

15         THE COURT:  I understand.  I don't disagree with you

16    that I can't imagine it myself right now why that would be

17    necessary for nondamages issues.  Obviously, if there were

18    damages, yes, there are going to have to be experts because

19    we're talking about property valuation, so certainly we're

20    going to have to have experts.  If in fact there was a

21    recharacterization case, then yes, certainly the damages would

22    have to be for the deprivation of the ownership and what that's

23    worth.

24         MR. BARBIERE:  Right.

25         THE COURT:  And there'd be a lot of expert testimony.

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

40

1  I get that.  I completely understand why, if we ever get into

2  damages in this matter, we will have to have experts.  But I

3  don't -- I agree with you that I myself can't contemplate what

4  an expert would need to testify with in connection with the

5  case itself, in chief, having read, again, only the amended

6  complaint and the answers, myself.

7       But again, I'm not going to limit Mr. Fogel's

8  creativity.  If there's something I'm missing and you're

9  missing, then he's going to get to do that.  So again, I'm not

10  going to -- I would say to you, I don't think it makes sense,

11  at least until you see the expert report, to decide that you're

12  going to then file for summary judgment, because you want to at

13  least see what the expert's going to testify about, and you're

14  not going to know till then.

15       MR. BARBIERE:  Well, we're going to know in terms of

16  the disclosures in January.  We'll know --

17       THE COURT:  You're going to know generally, but you're

18  not going to know what the extent of the testimony is until you

19  see the expert report.  That's my opinion.

20       MR. BARBIERE:  Okay.

21       THE COURT:  But I just think that's the right answer.

22       MR. BARBIERE:  Okay.  Thank you, Your Honor.

23       THE COURT:  Okay.  All right.  So Mr. Fogel, I believe

24  that that would -- I'm going to go by that, there have to be

25  expert reports filed by -- hold on for a second, for your

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

41

1   expert.  I just want my calendar.

2           All right.  I'm going to pick January the 25th for

3   that.  That's in between my three-to-four week point.  And

4   then, of course, there'd have to be depositions taken after

5   that, and presumably that would -- of that expert.  And

6   presumably that would have to occur in February.

7           So I don't think I'm going to cut off expert discovery

8   until the end of February, but I'm not going to stop you, Mr.

9   Barbieri, from filing your summary judgment motion after the

10  date the expert reports are submitted.

11          MR. BARBIERE:  Thank you, Your Honor.

12          THE COURT:  That's when I think you (audio

13  interference).  All right.  Okay.  And then obviously, if there

14  has to be nonparty discovery relating to that second phase,

15  it's going to have to occur after January 16th in that same

16  time frame.

17          Okay.  Well, that's our schedule.  I'm going to

18  memorialize it in an order.

19          MR. SAMMAN:  Thank you, Your Honor.

20          MR. BARBIERE:  Thank you, Your Honor.

21          THE COURT:  And you all can proceed accordingly.

22          And Mr. Fogel, I don't want to hear that you're back

23  because your client's still in Israel.  I'm going to be very

24  clear in my order that, if he's not able to appear in person

25  for the date that's worked out, somewhere within that period,

**PRINCE FASHIONS, INC. V. 60G 542 BROADWAY OWNER, LLC, ET AL.**

42

1   that the deposition is going to have to take place by video

2   conferencing.

3        Again, I'm not unsympathetic to his situation, but

4   this work could go on for a long time, and he might not be

5   comfortable with leaving his mother.  That's another reason.

6   So I can't predict those things.  And I don't think --

7   unfortunately, neither can you.  So I think we have

8   alternatives, but that deposition is going to take place.

9        MR. FOGEL:  Understood, Your Honor.

10        THE COURT:  Okay.

11        MR. FOGEL:  Thank you.

12        MR. BARBIERE:  Thank you, Your Honor.

13        THE COURT:  All right.  Is there anything else that we

14   need to discuss today with respect to the discovery schedule?

15   I will memorialize it in an order, and it will get entered.

16        MR. BARBIERE:  Thank you, Your Honor.

17        MR. FOGEL:  Thank you, Your Honor.

18        MR. SHANAHAN:  Nothing further, Your Honor.

19        MR. SAMMAN:  Thank you.

20        THE COURT:  All right.  Well, then, you all have a

21   good day, and you all may be excused.  And I'm going to go

22   ahead and call my next case.

23        IN UNISON:  Thank you, Your Honor.

24        THE COURT:  Thank you.

25        (Whereupon these proceedings were concluded at 11:58 AM)

43

1

2                          C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8   *Sharona Shapiro*

9   _____

10  Sharona Shapiro (CET-492)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  March 2, 2024

18

19

20

21

22

23

24

25

**eScribers, LLC**

## A

**able (11)**
8:10,11;9:22;12:22;
15:14;22:22;23:6;
24:19;26:3;37:2;
41:24
**absence (1)**
16:21
**Absolutely (2)**
25:1,1
**accommodate (1)**
16:2
**accomplish (2)**
9:12;34:14
**accomplished (1)**
33:25
**accordingly (1)**
41:21
**accusations (1)**
20:7
**accuse (1)**
13:22
**acknowledge (1)**
22:12
**acknowledged (1)**
20:4
**acquired (1)**
21:17
**active (1)**
14:4
**actively (4)**
13:12;21:23;28:5,8
**actual (1)**
18:20
**actually (5)**
8:3;21:6;24:2;
31:25;35:23
**add (3)**
30:12;34:12;35:2
**address (2)**
9:23;17:10
**addressed (1)**
8:7
**admissions (1)**
33:8
**advised (1)**
26:15
**affidavit (11)**
10:21;11:1,4,12,14;
18:17,23,24;19:2,21,
24
**affirmatively (1)**
37:10
**Again (21)**
8:24;9:21;10:9,9;
11:19,20;17:2;22:6,
23;25:8;27:15,19;
30:23;32:25;34:14;
38:14;39:10;40:5,7,9;
42:3
**ago (1)**

22:3
**agree (5)**
14:13;24:23;32:1;
38:23;40:3
**ahead (1)**
42:22
**al (1)**
5:8
**allegations (1)**
20:19
**allowed (2)**
20:14,17
**almost (1)**
15:2
**along (1)**
37:2
**alternatives (1)**
42:8
**ambiguous (1)**
31:5
**amend (1)**
20:18
**amended (6)**
13:14;16:16;20:14;
30:24;31:10;40:5
**among (1)**
31:4
**amount (2)**
17:19;19:20
**anymore (1)**
26:10
**apologies (1)**
15:12
**apologize (2)**
9:7;15:9
**apparent (1)**
17:3
**appear (5)**
13:11;22:12;23:25;
25:7;41:24
**appearances (3)**
5:4,9,21
**appears (1)**
22:8
**appropriate (1)**
25:19
**approximately (1)**
38:3
**April (1)**
13:21
**around (3)**
11:19;21:16;35:21
**aside (5)**
10:5;11:11;27:7;
30:7;31:23
**assist (1)**
12:12
**assume (1)**
37:13
**assuming (1)**
22:9
**assure (1)**
28:11

**attorney (2)**
11:1;25:3
**Attorneys (3)**
4:3,12;5:3
**audio (2)**
26:18;41:12
**August (1)**
9:15
**available (1)**
12:5
**aware (1)**
11:24
**away (1)**
16:1

## B

**back (18)**
5:23;6:2,5,13;9:15;
14:23;16:23;19:15;
20:14,17,25;22:17;
24:5;25:12;27:2;28:9;
33:3;41:22
**backwards (1)**
27:20
**bad (1)**
14:18
**BARBIERE (20)**
4:8;5:15,16;17:12;
18:1;38:5,9,12;39:5,7,
10,13,24;40:15,20,22;
41:11,20;42:12,16
**Barbieri (1)**
41:9
**based (2)**
17:15;21:13
**basically (1)**
17:16
**basis (3)**
16:24;17:1;28:11
**Bastien (1)**
6:23
**B-A-S-T-I-E-N (1)**
6:24
**became (1)**
8:14
**Beckerman (1)**
5:2
**behalf (4)**
5:13;22:8;23:25;
29:12
**behind (1)**
18:15
**bench (1)**
15:24
**best (1)**
33:20
**beyond (1)**
23:7
**black-and-white (1)**
39:14
**board (20)**
18:21;19:5,20;21:7,

15,25;22:10;23:18,20,
20,21;24:24,25;25:5,
6,13,25;26:14;27:6;
33:18
**boggles (1)**
16:25
**both (3)**
7:25;29:12;35:19
**bound (1)**
16:19
**boy (1)**
7:14
**BOYD (2)**
4:11;5:19
**bring (1)**
8:13
**Broadway (11)**
4:3,12,13;5:8,14,
19;7:16,17,22;10:20;
14:3
**Broda (1)**
6:24
**B-R-O-D-A (1)**
6:24
**brother (2)**
12:3;17:7
**brother-in-law (1)**
12:2
**building (6)**
19:7,10;21:10,24;
24:19,20
**burden (3)**
8:8,14;10:10
**burdening (1)**
11:20
**butcher (1)**
22:23

## C

**calendar (2)**
35:23;41:1
**call (6)**
5:4;36:19;37:4;
38:22;39:2;42:22
**calling (1)**
37:17
**calls (1)**
16:25
**can (27)**
6:2;9:12;12:20;
14:11;16:2;9;19:1,5;
21:13,19;23:12;
24:24;25:7,23;26:23;
27:18,23;28:3,11;
31:19;33:9;35:23;
37:5,10;38:21;41:21;
42:7
**case (27)**
5:5,7;9:20;10:22;
11:5,9;12:12,13,11;
11,15,16;14:4;17:3;
20:12,16;21:14;22:5;

15,25;22:10;23:18,20,
20,21;24:24,25;25:5,
6,13,14;26:14;27:6;
33:18
**certain (2)**
10:3;20:19
**certainly (5)**
22:12;24:24;30:6;
39:19,21
**certification (1)**
25:3
**cetera (5)**
10:8;12:4;14:18;
16:20;27:6
**changed (1)**
10:24
**chasing (1)**
11:19
**chief (1)**
40:5
**chime (2)**
21:13,19
**Chisholm (1)**
7:2
**C-H-I-S-H-O-L-M (1)**
7:2
**circumstances (1)**
27:15
**claim (1)**
31:12
**clarify (1)**
20:11
**clear (3)**
18:18;36:20;41:24
**clearly (1)**
20:3
**client (14)**
9:14,23;10:10;
11:25;12:8,16;13:1;
15:18;18:15,16;21:3,
17;27:17;28:4
**clients (2)**
20:8;24:9
**client's (4)**
9:22;14:1;33:19;
41:23
**close (2)**
6:2,5
**clue (1)**
18:22
**COLE (3)**
4:2;5:13;7:21
**colleague (1)**
5:14
**COLONNELLI (1)**
4:11
**comfortable (1)**
42:5
**coming (1)**
27:6
**communicate (1)**
12:20
**communicating (1)**
12:6

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 45 of 51

November 15, 2023

**complaint (7)**
13:15;16:16;20:14,
18;30:24;31:10;40:6
**complete (2)**
27:25;33:21
**completed (1)**
13:19
**completely (1)**
40:1
**completing (1)**
32:5
**computers (1)**
12:21
**concerned (1)**
10:19
**concluded (1)**
42:25
**concludes (1)**
38:18
**conduct (1)**
14:5
**conference (2)**
5:23;33:23
**conferencing (2)**
18:8;42:2
**confusion (1)**
23:22
**connection (1)**
40:4
**Consagra (2)**
7:9;22:24
**C-O-N-S-A-G-R-A (1)**
7:10
**constituted (1)**
31:3
**consummated (1)**
22:4
**contacted (3)**
14:8,9,21
**contemplate (1)**
40:3
**continue (1)**
28:16
**control (2)**
29:4,12
**co-op (14)**
18:18;19:19;22:6,8,
11,13;23:1,1,6,18,20,
21;25:14,16
**correspondence (2)**
5:24;11:24
**counsel (13)**
5:9;10:24;11:7;
14:11;16:23;18:18;
19:5;21:8,9;22:16,16;
26:14,16
**counsel's (1)**
23:5
**couple (4)**
7:17;8:18;13:1;
32:2
**course (5)**
12:20,21,21;30:23;

41:4
**Court (119)**
4:4;5:2,3,17,20;
6:12,14,21,25;7:5,11,
24;8:5,8,13,14,15,18,
21;9:6,8;10:10,13,15,
17;11:11,20,23;13:8,
20,24;14:13,15,17;
15:1,4,6,8,10,13,17;
16:12;17:19;18:7,11,
13;19:1,9,12,14;20:1,
14,17,22,25;21:6,11,
18,21;22:6;23:14,17,
24;24:5,8,11,14,16;
25:2,5,22;26:6,9,17,
19,22,25;27:12,18;
28:13,16,18;29:3,7;
30:21;31:18;32:8,10,
18,20;33:14;34:2,4;
35:11;36:9,13;37:13,
15,21;38:6,10,13,17,
18,19,21;39:8,12,15,
25;40:17,21,23;41:12,
21;42:10,13,20,24
**Court's (1)**
33:12
**crazy (1)**
35:1
**creativity (1)**
40:8
**currently (2)**
11:25;25:25
**cut (1)**
41:7
**cut-off (1)**
36:1
**cutting (1)**
36:2

**D**

**damages (7)**
31:23,23,25;38:23;
39:18,21;40:2
**date (7)**
28:3;29:24;35:23;
37:22,23;41:10,25
**Day (2)**
35:24;42:21
**deadline (1)**
28:10
**deal (4)**
12:22;33:5;35:5,6
**dealing (8)**
9:16;11:21,25;
12:12,16,17;17:23;
28:6
**dealt (1)**
19:18
**debtor/plaintiff (1)**
17:5
**debtor/plaintiff's (1)**
17:6

**decide (4)**
24:20;25:24;35:1;
40:11
**decided (1)**
11:20
**deem (1)**
37:12
**deemed (1)**
23:22
**defects (1)**
9:21
**defendant (13)**
5:13;19:6;17,20,23;
7:6,7,21;9:14;10:20;
11:2,13;29:12
**defendants (6)**
6:10;8:22;10:19;
13:17;14:1;29:23
**defined (1)**
16:16
**definitely (1)**
30:9
**demand (1)**
16:15
**demands (1)**
13:18
**dementia (2)**
12:18,25
**denied (2)**
13:15;31:9
**denigrating (1)**
35:11
**depending (1)**
6:6
**depends (1)**
31:8
**depose (2)**
8:10;23:8
**deposed (5)**
12:11;29:9,11;
30:10;37:5
**deposition (12)**
6:13,16,18;7:15;
16:3;18:7;23:19,22;
28:20;30:16;42:1,8
**depositions (36)**
6:10;8:1,2,6,9;
11:21;14:5;15:19,21,
22;16:21;17:4,8,13,
17,17;18:4;20:6;
23:12;26:4;27:24;
29:22;30:4;33:9,16,
17,22;34:4,14,24;
35:15,16;36:10,14;
38:6;41:4
**deprivation (1)**
39:22
**descriptions (1)**
10:7
**determine (4)**
8:9;9:24;10:11;
31:13
**determined (1)**

29:1
**diagnosed (1)**
12:17
**diagnosis (1)**
12:25
**difficult (1)**
16:4
**direct (2)**
14:11;33:12
**directed (2)**
10:20;11:11
**directly (1)**
12:20
**directs (1)**
38:17
**disagree (1)**
39:15
**disclose (1)**
33:11
**disclosures (3)**
37:6,17;40:16
**discovery (37)**
5:23;6:2,5,8,10;
8:22,24;13:17;16:13;
25:10;27:25;28:1;
29:18,20;30:3,8,23;
31:1,9,23;32:3,5;34:7,
18;36:1,6,11,16,16,
23,25;38:11,16,18;
41:7,14;42:14
**discuss (1)**
42:14
**discussed (1)**
36:14
**discussion (1)**
27:14
**dismiss (4)**
13:14;20:13,18;
31:10
**dispositive (1)**
38:12
**disrespect (1)**
25:22
**doctor (1)**
13:4
**document (10)**
8:22,24;10:8;13:18,
18,19;14:22;20:4;
34:17,18
**documents (15)**
8:1;10:1,3,5;16:14,
18,24;18:4;19:23,24;
22:22;25:15;31:3;
36:16,17
**done (10)**
6:4,8;16:2;18:8,10;
27:23;28:2;33:23,24;
34:19
**Doron (1)**
17:7
**down (1)**
6:19
**dragging (2)**

13:13,22
**Drain (1)**
31:9
**due (3)**
8:1;9:15,21
**during (3)**
16:8;34:9,19

**E**

**earlier (2)**
27:9;34:11
**early (1)**
27:14
**Edward (1)**
7:13
**efforts (1)**
11:12
**eighty (1)**
10:1
**either (6)**
6:6;23:1;26:5,7;
34:20;38:25
**eliminate (1)**
33:10
**else (5)**
22:20,22;23:9;
30:25;42:13
**else's (1)**
16:4
**emails (7)**
10:22;11:12,22;
19:2,7,15;22:13
**EMIL (2)**
4:17;5:18
**end (8)**
15:20;27:25;30:11;
31:19;32:7;36:8;38:4;
41:8
**ended (2)**
10:25;27:10
**enough (2)**
34:13;37:1
**entered (1)**
42:15
**entitled (3)**
25:10;27:16;28:6
**E-R-W-A-G-E-R (1)**
7:14
**especially (1)**
16:1
**ESQ (2)**
4:8,17
**essence (1)**
17:13
**et (6)**
5:8;10:7;12:4;
14:18;16:19;27:6
**even (12)**
12:10;13:16;14:2;
19:7;20:8,17;21:10;
22:18;27:22,22;
35:15;37:24

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 46 of 51

November 15, 2023

**everyone (1)**
16:4
**Exactly (1)**
37:14
**excuse (1)**
14:10
**excused (1)**
42:21
**exist (1)**
25:15
**expect (1)**
11:16
**expecting (1)**
27:9
**experiences (1)**
14:18
**expert (34)**
28:1;30:22;31:1,6,
14,15,22;32:3,5;33:4,
4,10,10;36:5,11,23,
24;37:4,11,19,22,25;
38:2,11,16;39:25;
40:4,11,19,25;41:1,5,
7,10
**experts (11)**
28:1;32:11,15;33:2;
37:16;38:22;39:2,11,
18,20;40:2
**expert's (1)**
40:13
**explain (1)**
38:21
**explaining (1)**
11:12
**expressed (1)**
5:25
**extent (3)**
11:17;12:11;40:18
**Eyal (1)**
17:7

**F**

**faces (1)**
14:8
**fact (14)**
6:8,10;12:21;13:14;
16:13;22:1;26:9;28:1;
31:8;34:19;36:1,16;
38:18;39:20
**facts (2)**
14:19;24:5
**fair (2)**
34:1,3
**fairness (1)**
25:19
**family (2)**
12:3;14:23
**far (6)**
6:22;10:19;16:1;
20:6;22:7;37:1
**fashion (1)**
18:10

**Fashions (2)**
5:7,11
**faulting (1)**
10:23
**February (4)**
27:25;38:11;41:6,8
**feel (1)**
24:21
**feet (2)**
13:13,22
**few (2)**
9:16;23:23
**fight (6)**
33:2,6;35:4,15,18,
19
**fighting (1)**
14:1
**figure (8)**
6:2;9:12;24:1,17;
25:7,23;37:2,24
**file (3)**
20:2;39:4;40:12
**filed (1)**
40:25
**files (1)**
23:8
**filing (1)**
41:9
**final (2)**
27:7;28:3
**finally (1)**
13:19
**find (4)**
11:21;13:5;23:13;
39:5
**fine (4)**
25:21;31:18;32:18;
37:15
**finish (3)**
8:2,9;13:17
**firms (1)**
10:24
**first (11)**
6:7;8:2;15:23;
19:14;24:18;25:20;
27:1,3,5;31:24;32:23
**Firstly (1)**
21:22
**fits (1)**
31:23
**five (5)**
30:9;34:4,5,6;36:14
**FOGEL (85)**
5:10,10;6:9,16,22;
7:1,6,12,25;8:6,15,16,
20;9:1,4,6,10,13;
10:14,16,18;11:23;
12:15;13:9,25;14:14,
15,16,20;15:2,5,8,9,
12,16;17:9,16,21,25;
18:16;19:22,25;20:7;
21:2,12,19,22;23:10;
24:17;25:6,19;26:23;

27:1,4,5,14,18,20;
28:14,15,17,20;29:10;
30:16,20,21;31:7;
32:1,13;33:8;34:1,3,
8;35:13;36:7,12,23;
37:18;38:22,24;
40:23;41:22;42:9,11,
17
**Fogel's (1)**
40:7
**folks (1)**
28:6
**forever (2)**
15:14;27:10
**former (1)**
22:16
**forth (1)**
5:24
**forty (2)**
10:6;15:2
**forward (1)**
17:4
**four (2)**
28:24;38:3
**frame (3)**
21:16;34:25;41:16
**frank (1)**
16:17
**frustration (1)**
20:20
**full-time (2)**
12:16;13:5
**fully (1)**
28:7
**further (4)**
22:13;23:7;26:13;
42:18

**G**

**game (1)**
23:11
**gave (1)**
28:21
**general (7)**
18:18;19:5;21:8,9;
22:16,16;23:5
**generally (1)**
40:17
**gentleman (2)**
7:1,8
**gentlemen (2)**
33:18;34:8
**given (1)**
27:15
**Goegel (1)**
19:23
**goes (1)**
20:17
**Good (7)**
5:2,10,12,16,18;
29:7;42:21
**grant (1)**

31:19
**guess (9)**
17:12,14;29:24;
33:19;34:6,8;36:2,5;
37:7

**H**

**Hackensack (1)**
4:6
**half (1)**
10:5
**hand (1)**
14:12
**handle (3)**
17:11;24:1;26:1
**handled (2)**
11:7;31:11
**hands- (1)**
14:3
**happen (7)**
15:25;25:18;29:20;
30:4,14;34:25;35:20
**happened (3)**
18:19,22;22:7
**happens (4)**
18:22;28:8;31:8;
37:9
**happy (3)**
17:10,11;27:23
**hard (2)**
31:22;39:8
**head (1)**
32:14
**health (1)**
12:1
**hear (8)**
9:11;14:24;16:9;
17:9;26:19;28:13;
35:13;41:22
**heard (2)**
32:24;35:12
**hearing (2)**
27:2;33:15
**help (1)**
14:5
**helpful (1)**
25:2
**history (2)**
6:11;21:14
**hold (2)**
16:21;40:25
**holding (1)**
33:3
**holidays (1)**
30:5
**honest (2)**
18:15;19:18
**honestly (1)**
33:20
**Honor (60)**
5:10,12,16,18;6:9;
18:9;2,4,7,13;10:16,

20;12:15;13:10;
14:10,21;15:7;16:14,
17;17:9,18;18:6,12,
14;21:13,19;23:11,15,
16;25:1,21;26:12,23;
27:8,8,20;28:25;31:7;
32:9,13,19;33:8;34:1;
35:8;36:7;37:11,14,
19;38:5,13;40:22;
41:11,19,20;42:9,12,
16,17,18,23
**hope (1)**
39:5
**hopeful (2)**
8:11;28:4
**humor (1)**
35:22
**hundred (1)**
29:6

**I**

**idea (1)**
21:15
**identified (1)**
32:10
**identify (7)**
5:5;33:4,4;36:24;
37:5,16,22
**imagine (2)**
39:10,16
**imagining (1)**
31:22
**impact (1)**
32:2
**implicated (1)**
32:15
**impossible (2)**
12:8;36:22
**impressions (1)**
14:18
**inability (1)**
10:21
**Inc (2)**
5:7,11
**include (1)**
37:19
**included (1)**
32:5
**includes (1)**
33:22
**including (2)**
28:1;33:17
**incorrect (1)**
20:12
**incredible (1)**
16:23
**indicated (1)**
31:10
**individual (1)**
7:12
**individuals (7)**
6:22;7:3,18;21:15;

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 47 of 51

November 15, 2023

23:17;29:1;35:10
**information (1)**
    23:7
**informs (1)**
    13:1
**input (1)**
    12:10
**instead (1)**
    33:5
**insufficient (1)**
    10:8
**insurance (1)**
    26:14
**intend (1)**
    38:14
**intent (1)**
    31:5
**interested (1)**
    22:2
**interference (2)**
    26:18;41:13
**interrupt (1)**
    36:7
**into (5)**
    6:11;10:25;14:17;
    38:11;40:1
**involved (9)**
    11:5,15,17;18:17,
    19;19:19;21:23;
    22:18;25:9
**Israel (5)**
    11:25;17:23;29:9,
    25;41:23
**issue (10)**
    8:7;10:9;11:5;
    12:23;14:23;31:3,19;
    32:24;33:5;39:14
**issued (2)**
    13:5;27:2
**issues (13)**
    8:12;9:17;12:1,19;
    14:12;17:9;31:15;
    32:2;33:4;34:18;
    36:16,16;39:17

**J**

**January (15)**
    30:6,11;33:25;
    35:25;36:8,9,9;37:3,6,
    15,20;38:4;40:16;
    41:2,15
**Jeffrey (1)**
    7:18
**joined (1)**
    5:14
**JOSEPH (2)**
    4:8;5:14
**Judge (4)**
    5:2;31:9;32:25;
    33:7
**judgment (8)**
    6:6;16:19;31:20;

38:14,24;39:4;40:12;
    41:9
**July (1)**
    27:2
**jump (1)**
    26:23

**K**

**Kaplan (2)**
    7:18,18
**K-A-P-L-A-N (1)**
    7:19
**keep (2)**
    28:13;32:6
**Kevin (1)**
    7:1
**kind (3)**
    12:16;18:14;27:9
**King (1)**
    35:24
**knowledge (4)**
    11:6;25:11,12,13
**knows (1)**
    25:6

**L**

**lack (1)**
    17:2
**land (2)**
    9:10,11
**Last (2)**
    7:9;38:5
**law (1)**
    15:2
**lawyer (1)**
    15:23
**lay (2)**
    9:10,11
**least (6)**
    12:9;32:12;34:5,20;
    40:11,13
**leaving (2)**
    30:7;42:5
**left (3)**
    8:23;9:12;10:5
**Lender (4)**
    7:16,17,22,22
**letter (2)**
    9:18,24
**letters (1)**
    5:25
**letting (1)**
    9:9
**level (1)**
    29:19
**license (1)**
    13:4
**likely (1)**
    36:20
**likewise (1)**
    7:17

**limit (1)**
    40:7
**limited (2)**
    8:1;9:3
**list (3)**
    24:25;25:5;35:3
**listed (1)**
    28:19
**litigation (1)**
    14:2
**little (2)**
    20:10;30:22
**live (3)**
    19:7;23:18;28:9
**LLC (3)**
    4:3;5:8,14
**locate (2)**
    11:12,14
**log (7)**
    9:15,18,21;10:2,6;
    12:23;16:23
**long (3)**
    6:1;11:3;42:4
**longer (5)**
    13:3;14:2;19:19;
    20:12;23:17
**look (3)**
    14:15;35:23;38:15
**looked (1)**
    22:21
**lot (4)**
    15:21;23:16;31:14;
    39:25
**lots (1)**
    12:4
**Louis (1)**
    5:10
**lumping (1)**
    34:12
**Luther (1)**
    35:24

**M**

**Main (2)**
    4:5;13:9
**makes (2)**
    13:11;40:10
**making (4)**
    13:25;14:8;16:25;
    20:7
**management (1)**
    25:25
**manager (3)**
    21:8;22:10;25:14
**many (1)**
    6:14
**March (3)**
    6:13;13:16,18
**Martin (1)**
    35:24
**matter (2)**
    12:22;40:2

**matters (1)**
    35:3
**May (14)**
    5:9;11:22;15:19,19;
    20:11;24:2,16,19;
    26:10;31:15;33:8;
    34:23,23;42:21
**maybe (4)**
    12:11;23:7;25:2;
    37:2
**mean (7)**
    15:7;19:14;20:9;
    22:25;31:2;33:6;
    38:21
**meaning (1)**
    8:22
**means (1)**
    20:5
**medical (2)**
    12:18;14:23
**members (12)**
    12:3;19:6,21;21:7,
    15,25;22:10;23:18;
    24:25;25:5,6,13
**memorialize (2)**
    41:18;42:15
**mentioned (5)**
    9:24;21:2;27:9;
    30:13,21
**merits (1)**
    17:2
**middle (3)**
    14:21;36:9;37:1
**might (5)**
    7:3;24:6,11,22;
    25:16;26:19;29:20;
    32:2,15;33:9,16;
    34:21;35:14;36:14;
    42:4
**mind (1)**
    16:25
**minute (1)**
    6:19
**missing (3)**
    16:12;40:8,9
**mom (2)**
    12:17;13:6
**moment (3)**
    24:24;32:12;33:20
**months (4)**
    33:2,5;34:13;36:22
**more (5)**
    16:3;31:16;32:16,
    25;33:12
**morning (5)**
    5:2,10,12,16,18
**most (3)**
    19:15,17;34:14
**mostly (1)**
    16:8
**mother (2)**
    17:23;42:5
**mother's (1)**

    12:1
**motion (6)**
    13:14;20:13,18;
    31:10;39:4;41:9
**motions (1)**
    38:12
**move (4)**
    6:5;13:7;17:4;
    38:14
**moving (2)**
    13:2,7
**much (1)**
    13:3
**myself (4)**
    31:22;39:16;40:3,6

**N**

**name (2)**
    7:9;30:13
**named (11)**
    6:23,23,23;7:1,8,13,
    16,18,18;23:21;33:18
**names (3)**
    21:2;22:23;28:21
**necessarily (2)**
    22:7;32:11
**necessary (5)**
    8:14;12:12;35:14;
    37:12;39:17
**need (27)**
    6:1;14:24;16:13;
    17:8,13,16;21:3;
    27:24;29:9,17;30:12,
    18;31:2;32:11;33:4,
    10,11;34:12,24;35:6;
    36:24,24;37:22,25;
    38:23;40:4;42:14
**needed (2)**
    8:3;12:9
**needing (1)**
    32:7
**needs (7)**
    13:4;14:4;28:7;
    33:24;34:9;35:1,5
**neither (1)**
    42:7
**nephews (1)**
    12:4
**New (3)**
    4:15;21:9;28:9
**newest (1)**
    13:10
**next (6)**
    11:23;22:4;28:18;
    30:1;38:8;42:22
**nieces (1)**
    12:4
**NJ (1)**
    4:6
**Nolan (2)**
    5:12;32:22
**nondamages (1)**

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 48 of 51

November 15, 2023

39:17

**none (1)**
25:13

**nonfact (1)**
36:3

**nonparties (8)**
8:10;24:12,23;
30:13;34:21;36:18,
19,21

**nonparties' (1)**
35:16

**nonparty (11)**
7:16,22;8:4;25:10,
17;29:18;30:8;33:17;
34:7;36:15;41:14

**Nor (1)**
15:16

**normal (1)**
13:9

**normally (2)**
13:3,7

**North (1)**
4:4

**notice (4)**
6:18,20;7:7,7

**noticed (1)**
17:4

**notices (4)**
6:13,16;7:2,15

**November (1)**
30:1

**number (1)**
5:7

**NY (1)**
4:15

## O

**O-B (1)**
7:14

**Oberwager (1)**
22:24

**objected (1)**
7:25

**objection (1)**
7:20

**objections (3)**
8:7;35:9,12

**obviously (16)**
5:23;6:1;11:24,25;
16:20;17:13,22;
22:15;25:9;30:3;
33:13;34:5,17;35:12;
39:17;41:13

**occur (5)**
34:5;36:10,15;41:6,
15

**occurred (3)**
12:25;31:4;34:9

**October (1)**
27:14

**off (3)**
20:10;36:2;41:7

**one (28)**
6:18;7:3,18,18;
14:8;17:21,22,22;
18:5,25;19:6,15;20:3,
9,11;21:14,19;22:10,
25;27:1;28:10;29:2,6,
9,9;31:16;35:22;38:5

**ones (2)**
23:20;36:4

**only (11)**
7:21;8:16;10:14,16,
18;16:15;24:2;27:21;
36:2;38:22;40:5

**open (3)**
8:24;10:9;27:10

**opinion (1)**
40:19

**opportunity (2)**
10:11;39:2

**order (10)**
6:4;13:5;18:7;
33:21;34:17;35:24;
36:13;41:18,24;42:15

**orders (2)**
13:20;38:19

**original (2)**
19:4;20:13

**otherwise (6)**
12:6;17:15;24:11;
35:2;38:17,18

**out (18)**
6:2;9:12;10:3;
11:21;12:16;23:13;
24:1,17;25:7,23;26:9;
30:15;32:4;35:4,6;
37:2,24;41:25

**outside (1)**
11:7

**over (10)**
11:8;10;12:3;14:2;
19:19;20:3;22:4;29:5;
33:6;35:15

**own (2)**
22:25;26:16

**Owner (3)**
4:3;5:8,14

**ownership (1)**
39:22

## P

**pace (1)**
13:7

**pandemic (1)**
15:23

**PARKER (1)**
4:11

**part (3)**
10:24;16:9;31:8

**participant (1)**
14:4

**participate (2)**
28:5,8

**particular (2)**
8:7;36:4

**particularly (1)**
10:2

**parties (23)**
6:3;21:2,4,6,10;
22:3;24:23;25:10;
26:2,10;28:19,21;
29:18;30:12,14,17;
31:4;34:12,21,22;
36:17,18;37:17

**parties' (4)**
5:23;8:21;31:5;
35:14

**partly (1)**
10:4

**partner (1)**
38:15

**party (10)**
7:15;8:2,9;23:19,
22;29:23;33:9,15,16;
34:21

**past (3)**
13:1;28:2;32:25

**PC (2)**
4:2;5:13

**people (13)**
6:14;12:6;13:10;
15:11,21;16:1;17:17;
19:15;24:2;25:6;29:4,
8,11

**people's (3)**
14:17;17:17;23:8

**percent (1)**
29:6

**perhaps (4)**
6:5;16:4;31:4;
33:17

**period (7)**
21:23;23:2;32:5;
34:10,20;36:15;41:25

**person (6)**
13:5;19:8;22:12;
28:9;33:24;41:24

**personal (2)**
9:15;23:7

**persons (2)**
29:4;34:23

**perspective (6)**
6:4;7:8;24,25;9:3;
23:1

**ph (1)**
19:23

**phase (4)**
31:13,15,16;41:14

**phases (1)**
31:11

**phone (1)**
12:21

**physically (1)**
12:10

**P-I (1)**
7:8

**pick (3)**
35:23;37:22;41:2

**Pierluigi (1)**
7:8

**P-I-E-R-R-E-L-U-I-G-I (1)**
7:9

**PL (1)**
4:11

**place (5)**
38:7,16;39:8;42:1,8

**plaintiff (5)**
5:11;6:7;29:9,25;
33:23

**plaintiffs (1)**
20:18

**plaintiff's (1)**
13:12

**planning (1)**
37:16

**plans (1)**
37:11

**playing (1)**
23:11

**Plaza (1)**
4:4

**plead (1)**
20:19

**please (6)**
5:4,9;14:12;15:10;
27:18,19

**point (13)**
12:13,15;13:25;
14:8,20;20:16;27:7,
21;32:4,14;35:8;
36:20;41:3

**pointed (2)**
10:3;30:15

**pointing (1)**
26:9

**position (6)**
6:5;9:20;10:2,7;
18:15;20:7

**positions (1)**
35:19

**possible (7)**
12:14;15:19;22:23;
29:19;30:5,8;34:15

**possibly (1)**
30:5

**potential (4)**
10:9;33:10;36:18,
19

**potentially (3)**
31:15;32:2,15

**practicing (2)**
14:25;15:2

**predict (1)**
42:6

**preference (3)**
38:13,17,20

**premises (1)**
19:3

**prepare (1)**

14:5

**preposterous (1)**
14:11

**present (2)**
28:5;35:19

**Presumably (4)**
22:12;37:8;41:5,6

**presume (1)**
12:13

**previously (2)**
27:11;33:18

**price (1)**
16:17

**Prince (4)**
5:7,11;20:3,9

**principal (3)**
17:14,16;33:22

**principals (2)**
20:7,9

**privilege (9)**
9:14,17,21;10:2,8;
12:23;16:22,24;17:1

**probably (5)**
17:14,19;22:10;
28:22;30:3;39:3

**proceed (4)**
16:17;17:8;18:9;
41:21

**proceedings (1)**
42:25

**process (2)**
5:25;37:1

**produce (3)**
10:21,21;11:11

**produced (7)**
8:23;10:4;18:17;
19:24,25;23:4,5

**production (4)**
13:18,19;14:22;
16:18

**productions (1)**
13:21

**progress (2)**
27:19;28:14

**promptly (1)**
13:17

**pronounce (1)**
7:13

**proper (2)**
37:6,17

**properly (2)**
14:6;20:19

**property (3)**
21:8,17;39:19

**provide (3)**
24:25;37:6,17

**provided (1)**
22:15;38:3

**pseudo (1)**
36:1

**purchase (1)**
16:16

**purported (1)**

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 49 of 51

November 15, 2023

18:19
**purpose (1)**
5:22
**pursue (4)**
8:3;10:12;23:10;
28:12
**pursuing (1)**
9:25
**put (4)**
5:4;25:20;26:11;
29:14
**putting (3)**
10:4;11:11;27:7

## Q

**quick (1)**
26:23
**quiet (1)**
16:8
**quite (3)**
18:15;20:5,20

## R

**raise (1)**
37:12
**raised (1)**
17:10
**rather (4)**
11:19;32:3,16;
34:24
**read (7)**
5:23;30:23,23,24,
24,25;40:5
**ready (1)**
17:8
**real (1)**
26:23
**realistic (5)**
15:15;30:2;34:2,16;
37:23
**realistically (2)**
30:1;36:25
**realize (2)**
15:17;22:7
**really (9)**
9:18;16:15;19:5;
22:2;23:9;30:25;
31:16;32:15;33:11
**reason (5)**
25:11;27:16,24;
33:15;42:5
**reasons (1)**
32:14
**rebuttal (2)**
37:8,12
**received (3)**
7:20;9:14;16:22
**recently (1)**
12:25
**recharacterization (2)**
31:12;39:21

**record (2)**
5:4,6
**records (4)**
22:17,21,25;23:1
**redacted (1)**
10:4
**referring (1)**
19:23
**regard (5)**
6:9;9:13,20;11:13;
38:20
**regarding (2)**
16:15;21:20
**regardless (1)**
12:23
**rehash (1)**
32:25
**rejected (1)**
9:20
**related (1)**
20:3
**relates (2)**
34:20;39:3
**relating (6)**
5:24;23:2;29:18;
36:16,18;41:14
**relatively (1)**
34:11
**relevant (4)**
11:8,16;21:23;
22:14
**remains (2)**
6:4,8
**remarks (1)**
14:11
**remedies (1)**
31:13
**remind (1)**
14:7
**remotely (1)**
27:23
**removed (1)**
18:21
**report (3)**
38:2;40:11,19
**reports (4)**
37:20,23;40:25;
41:10
**represent (4)**
27:4,16;35:10;
38:15
**representing (1)**
5:11
**represents (3)**
7:21,22;23:21
**require (2)**
22:9;34:10
**required (1)**
24:16
**requiring (1)**
13:20
**reside (1)**
21:24

**resolved (3)**
8:23;34:18;36:17
**resources (1)**
8:2
**respect (6)**
10:3,21;11:4;28:19;
34:23;42:14
**Respectfully (1)**
15:13
**respond (2)**
9:16;17:11
**responded (1)**
20:8
**response (1)**
16:23
**responses (1)**
30:25
**responsive (1)**
19:12
**retained (3)**
13:16;21:9;26:14
**retired (3)**
11:2;21:8;22:17
**returns (1)**
12:24
**RICHARDS (2)**
4:11;5:19
**right (41)**
5:22;8:5,19;9:22;
10:17;12:11,17;
17:23;18:2,13;19:9;
20:1,22;24:4;25:17;
26:11,20,22;28:18;
29:3,5,8;31:17,24;
32:3,18;33:12,14;
35:24;36:20;37:11,
12;39:6,16,24;40:21,
23;41:2,13;42:13,20
**rock (1)**
39:8
**rule (1)**
35:19
**rules (1)**
38:13

## S

**sake (1)**
28:7
**Same (4)**
7:6;20:6;33:1;
41:15
**SAMMAN (38)**
4:17;5:18,18,20;
18:13,14;19:4,11,13,
17;20:2,24;21:5,7,12;
22:15;23:15;24:4,7,8,
10,13,15;25:1,4,21;
26:5,8,12,18,21;27:4;
32:21,22;37:13,14;
41:19;42:19
**Samman's (4)**
9:11;33:19;34:10;

36:20
**sat (1)**
16:8
**saying (8)**
12:9;17:13;19:2,7;
20:4;23:8;27:6;39:5
**schedule (5)**
27:13;29:22;32:6;
41:17;42:14
**scheduled (2)**
34:5,11
**schedules (1)**
32:4
**scheduling (2)**
27:11;29:24
**SCHOTZ (3)**
4:2;5:13;7:21
**scope (1)**
19:4
**second (8)**
17:21;21:1;27:3;
35:22;36:6,11;40:25;
41:14
**secondary (1)**
18:14
**Secondly (1)**
22:1
**secret (1)**
38:14
**seek (3)**
26:15,16;37:4
**seem (2)**
29:21;30:7
**seemed (1)**
9:18
**seems (6)**
20:9;30:4,9;31:2;
34:8,13
**sense (1)**
40:10
**sentence (1)**
19:6
**separate (1)**
31:13
**September (1)**
13:15
**serious (1)**
12:18
**serve (1)**
30:17
**served (13)**
6:11,12,16,17,19;
7:7,12,15,16,17,23;
13:17,18
**session (1)**
5:3
**seven (1)**
34:14
**several (1)**
12:18
**SHANAHAN (42)**
5:12,13;7:20;8:8,
12;9:2,7,9,19;10:3;

12:24;13:11;14:7,10,
13,21;15:7;16:10,11,
14;17:18;18:4,6,9,12;
21:1,13;27:16;28:18,
25;29:6,13;32:9,19,
23;36:8;37:8;
37:7,10,19;42:18
**Shanahan's (3)**
9:14;18:15;38:15
**shareholders (2)**
17:6;23:18
**shell (1)**
23:11
**short (1)**
12:23
**shows (2)**
24:18;30:18
**sic (1)**
7:9
**side (4)**
8:19,22;16:7,9
**sign (4)**
18:23,24;19:1,21
**signed (1)**
20:4
**similar (1)**
28:2
**simply (1)**
28:11
**sister-in-law (1)**
12:3
**situation (7)**
9:22;12:17;17:24;
29:10;33:19,21;42:3
**six (1)**
36:25
**small (1)**
21:9
**society (1)**
13:9
**somebody (3)**
22:11,20;29:14
**somehow (1)**
31:5
**someone (4)**
6:23;11:15;22:8;
25:25
**someone's (1)**
15:5
**sometime (2)**
33:25;37:1
**sometimes (1)**
15:25
**somewhere (1)**
41:25
**soon (1)**
38:18
**sorry (11)**
6:18;9:4;10:16;
14:14,24;26:24;
27:22;31:6;34:11;
36:7;39:5
**sort (2)**

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 50 of 51

November 15, 2023

28:2;31:1
**sounds (1)**
    12:1
**space (1)**
    14:2
**speaking (2)**
    5:6;23:16
**specific (1)**
    6:15
**spell (1)**
    7:14
**spoken (2)**
    17:25;20:8
**sponsor (1)**
    19:18
**standing (1)**
    35:9
**standpoint (1)**
    39:13
**start (1)**
    16:10
**started (1)**
    20:16
**state (1)**
    23:17
**stated (1)**
    20:4
**step (1)**
    26:13
**steps (1)**
    33:1
**stick (1)**
    15:10
**still (6)**
    12:2,5;21:16,24;
    23:18;41:23
**stop (4)**
    15:14;17:21;19:1;
    41:8
**Street (1)**
    4:5
**stuff (4)**
    9:15;11:16,22;
    31:14
**subject (1)**
    22:5
**submitted (1)**
    41:10
**subpoena (3)**
    24:22;25:8;26:2
**subpoenaed (5)**
    22:21;24:11;26:15;
    34:9;36:21
**subpoenas (6)**
    7:16,23,25;27:2;
    29:19;30:17
**subsequent (1)**
    30:14
**successful (1)**
    31:12
**sufficient (3)**
    17:2,3;24:22
**suggesting (3)**

26:3,5,6
**suggestions (1)**
    29:21
**Suite (1)**
    4:14
**summary (8)**
    6:6;16:19;31:20;
    38:14,24;39:4;40:12;
    41:9
**supplemental (3)**
    13:20;14:22;16:15
**suppose (2)**
    22:22;36:2
**Sure (18)**
    6:9;7:13;8:20;
    12:15;16:4;20:5;
    21:10;22:21,23;23:9;
    25:4;28:15,17;29:7;
    31:7,16,21;35:3
**surprise (3)**
    17:15;25:14;33:3
**surprised (1)**
    30:22
**system (3)**
    19:9;22:13,14
**systems (1)**
    25:15

**T**

**tail (1)**
    11:19
**talk (2)**
    12:8;36:6
**talked (1)**
    36:3
**talking (5)**
    28:23;29:3;33:7;
    34:6;39:19
**telecommunications (1)**
    12:5
**ten (1)**
    14:2
**tenant (1)**
    20:5
**term (2)**
    12:23;16:16
**terms (5)**
    16:12,14;34:18;
    38:12;40:15
**testify (2)**
    40:4,13
**testifying (1)**
    31:6
**testimony (4)**
    33:11;39:3,25;
    40:18
**Thanksgiving (1)**
    30:2
**Theoretically (4)**
    23:16,19,21;26:13
**theory (1)**
    37:8

**there'd (2)**
    39:25;41:4
**thereof (1)**
    17:3
**thinking (1)**
    24:13
**thoroughly (1)**
    9:23
**though (5)**
    12:10;16:17;23:15;
    27:22,22
**thought (1)**
    32:6
**thoughts (1)**
    32:21
**three (9)**
    7:2;17:4,7,13,17;
    28:23;33:2,5;38:3
**three-to-four (1)**
    41:3
**till (1)**
    40:14
**times (1)**
    23:23
**Timothy (1)**
    7:19
**today (3)**
    5:22;36:22;42:14
**together (2)**
    22:3;27:11
**told (7)**
    9:17;12:24;14:22;
    27:3;38:22,24,25
**took (2)**
    9:16;10:23;13:3
**totally (1)**
    32:1
**towards (1)**
    38:4
**transaction (4)**
    22:5,18;23:3;31:4
**transactions (7)**
    11:5,13,16;18:19,
    20;22:2;25:9
**trial (2)**
    6:6;31:21
**true (1)**
    35:17
**trust (2)**
    8:19;35:20
**try (5)**
    6:2;27:19;29:22;
    33:3;34:9
**trying (5)**
    14:19,20;15:5,11;
    26:16;27:21;28:14;
    29:7
**turned (3)**
    11:8,10;20:3
**turns (2)**
    35:4,6
**twenty (2)**
    18:21;19:15;22:3;

28:6
**twenty-four/seven (1)**
    13:6
**two (28)**
    7:3;9:3;13:10;17:6,
    16,17;21:2,4,14;
    23:17;27:1;28:21,23;
    29:1,4,8,11,18;30:12;
    31:11,15;32:15;
    33:18;34:8,13,20;
    36:14,22
**two-month (1)**
    33:6
**two-page (1)**
    11:1

**U**

**unable (1)**
    11:14
**under (3)**
    29:12,19;30:13
**Understood (6)**
    8:15;13:8;23:14;
    28:25;37:18;42:9
**unfortunately (1)**
    42:7
**UNISON (1)**
    42:23
**unless (7)**
    8:9,14;22:20;23:24;
    33:12;38:16,18
**unprofessional (1)**
    14:9
**unreasonable (1)**
    24:18
**unsympathetic (1)**
    42:3
**up (13)**
    10:25;16:21;23:16,
    22;24:8,18;25:20;
    26:11;27:21;29:14;
    30:18;31:19;32:7
**upon (1)**
    31:8
**upset (1)**
    9:18
**using (1)**
    28:22

**V**

**valuation (1)**
    39:19
**video (4)**
    18:8;27:23;33:23;
    42:1
**view (3)**
    9:10,11,11

**W**

**wait (1)**

35:1
**waiting (1)**
    33:5
**wall (1)**
    20:10
**wants (2)**
    17:9;27:17
**war (1)**
    13:2
**way (3)**
    20:17;23:10;27:17
**ways (2)**
    12:6;16:1
**week (1)**
    41:3
**weeks (4)**
    9:16;13:1;36:25;
    38:3
**week's (1)**
    30:2
**weren't (2)**
    11:15,17
**what's (3)**
    9:12;22:7;33:20
**Whereupon (1)**
    42:25
**whole (1)**
    6:11
**who's (3)**
    16:25;22:16;29:9
**whose (1)**
    22:20
**withheld (2)**
    16:24;17:1
**within (3)**
    13:1;38:3;41:25
**without (2)**
    6:11;16:18
**witness (4)**
    6:17;28:22;29:24,
    25
**witnesses (12)**
    24:6;25:17;28:23,
    23,24;29:23;30:10;
    34:19,21;36:3;37:4,9
**work (2)**
    8:11;42:4
**worked (3)**
    11:2;27:11;41:25
**working (1)**
    35:3
**world (1)**
    15:20
**worry (1)**
    9:8
**worth (1)**
    39:23
**wrap (1)**
    27:21
**written (2)**
    6:19;7:20
**wrote (2)**
    9:18;14:23

19-08714-lgb    Doc 81    Filed 03/04/24    Entered 03/08/24 16:21:26    Main Document
In the Matter of: PRINCE FASHIONS, INC.    Pg 51 of 51

November 15, 2023

## Y

**Yantz (1)**
7:19
**Y-A-N-T-Z (1)**
7:19
**year (1)**
15:23
**year-and-a-half (1)**
22:4
**years (8)**
14:2;15:3,21;18:21;
19:15,20;22:3;28:6
**Yep (2)**
26:21;30:20
**York (1)**
4:15

## Z

**Zabari (3)**
17:7,7,24
**Zabari's (1)**
17:22
**Zoom (1)**
15:20

## 0

**07601 (1)**
4:6

## 1

**10036 (1)**
4:15
**11:58 (1)**
42:25
**1500 (1)**
4:13
**15th (1)**
35:25
**16th (2)**
35:25;41:15
**19-08714 (1)**
5:7

## 2

**2014 (2)**
22:2,4
**2019 (2)**
13:12;20:15
**2021 (3)**
13:15;20:12,16
**2022 (3)**
6:13;13:16,19
**2023 (1)**
13:21
**22 (1)**
27:3
**25 (1)**
4:5
**25th (1)**
41:2
**2nd (4)**
37:3,6,15,20

## 3

**30b6 (22)**
6:17,19;7:4,7;17:5,
15;21:3;22:9;23:25;
24:6,18;25:8,20;
26:11;28:20,22;29:2,
2,15,23;30:16;34:11

## 5

**505 (1)**
4:14
**542 (19)**
4:3,12;5:7,13,19;
6:20;7:7,16,17,22;
10:20;11:2,13,21;
14:3;29:15,18;30:13,
15

## 6

**60G (10)**
4:3;5:7,13;6:17,23;
7:21;9:14;14:1;29:12;
38:15