UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

──────────────────────────────────────────x
In re:

Prince Fashions, Inc.,

                       Debtor.
──────────────────────────────────────────x
Prince Fashions, Inc.,

                       Plaintiff,

     -against-

60G 542 Broadway Owner, LLC and
542 Holding Corp.,

                       Defendants.
──────────────────────────────────────────x

Chapter 11
Case No. 19-23079(LGB)

Adv. Pro. No. 19-08714 (LGB)

**DEBTOR/PLAINTIFF PRINCE FASHIONS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT 542 HOLDING CORP.'S MOTION FOR SUMMARY JUDGMENT**

**LOUIS FOGEL & ASSOCIATES**
Louis Fogel
LouisFogel@LouisFogellaw.com

5 Nottingham Road
Annandale, New Jersey  08801
(908) 730-7692

200 Water Street, Suite 1403
New York, New York 10038
(212) 944-1580

*Attorney for Plaintiff Prince Fashions, Inc.*

**Table of Contents**

Table of Authorities                                                                                -ii-

PRELIMINARY STATEMENT                                                              1

ARGUMENT

POINT I         542 HOLDING'S ADMISSIONS ALSO WARRANT
                DENIAL OF ITS MOTION FOR SUMMARY
                JUDGMENT DISMISSING PRINCE'S
                RECHARACTERIZATION CLAIM                                           1

A.              542 Holding's Admissions That The
                Lease Grants An Ownership Interest                                 2

B.              542 Holding's Admissions That The Lease
                Satisfies Key Factors Of The Economic
                Substance Test                                                     4

CONCLUSION                                                                         7

**Table of Authorities**

*Cases*

*In Re Hotel Syracuse v. City of Syracuse Industrial,*
*Development Agency,* 155 B.R. 824 (USBC SDNY 1993)　　　　　　　　　　5, 6

*In Re Lefrak*,
223 B.R. 431 (USBC SDNY 1998)　　　　　　　　　　　　　　　　　　　　6

*In re PCH Associates v. PCH Associates,*
804 F.2d 193  (2d. Cir. 1986)　　　　　　　　　　　　　　　　　　　　　5, 6

*In Re TAK Broadcasting Corp.*,
37 B.R. 728 (USBC WD Wisc. 1992)　　　　　　　　　　　　　　　　　　5, 6

*International Trade Administration v. Rensselaer Polytechnic,*
*Inst.,* 936 F.2d 744 (2d. Cir. 1994)　　　　　　　　　　　　　　　　　　　6

*Statutes*

26 U.S.C. sec. 216　　　　　　　　　　　　　　　　　　　　　　　　　　6, 7

Debtor/Plaintiff Prince Fashions, Inc. ("Prince"), by its undersigned counsel, respectfully submits this Memorandum of Law in opposition to defendant 542 Holding Corp.'s ("542 Holding") motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing Prince's claim for recharacterization of the Lease.[1]

## PRELIMINARY STATEMENT

Prince's submissions in support of its motion for summary judgment granting recharacterization of the Lease and in opposition to defendant 60G 542 Broadway Owner, LLC's (60G") motion for summary judgment dismissing Prince's recharacterization claim amply demonstrate that there is abundant evidence in the record to support granting Prince's motion and denying 60G's motion based on the economic substance test. 542 Holding's motion offers no new arguments and suffers from the same fatal defects as 60G's motion. In the interests of efficiency, and rather than burdening the Court with a full repetition of the same arguments again here, Prince respectfully refers the Court to its submissions in support of Prince's motion and in opposition to 60G's motion, which Prince incorporates in full herein. 542 Holding's motion should be denied for the same reasons. As set forth below, 542 Holding's motion should also be denied based on admissions it has made that are the opposite of positions it has asserted in this proceeding on the same issues, including its admissions that the Lease grants Prince an ownership interest.

## ARGUMENT

**POINT I**     **542 HOLDING'S ADMISSIONS ALSO WARRANT DENIAL OF ITS MOTION FOR SUMMARY JUDGMENT DISMISSING PRINCE'S RECHARACTERIZATION CLAIM**

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings set forth in Prince's motion for summary judgment.

### A. 542 Holding's Admissions That The Lease Grants An Ownership Interest

542 Holding's claim on this motion that the Lease does not grant an ownership interest is the complete opposite of the position it took on this same exact point in a New York County Supreme Court action Prince (and others) filed against 542 Holding in 1996 (Index No. 110089/96) (the "1996 Action") concerning 542 Holding's efforts to interfere with work in Prince's Space.  Tellingly, at that time, 542 Holding conceded  -- and in fact argued -- that the Lease grants Prince an ownership interest, akin to other proprietary lessees in the Building.

In the 1996 Action, Prince had told the Court its interest under the Lease is that of an owner: "Given plaintiffs' 200-year lease, plaintiffs' interests in the Premises is that of an owner of the space rather than a tenant."  (See the Affidavit of Doron Zabari in the 1996 Action sworn to on June 4, 1996 ("DZ 1996 Aff."),  par. 3.  A true copy of the DZ 1996 Aff. is annexed to the Declaration of Doron Zabari dated April 10, 2024 in opposition to 60G's motion ("Zabari Opp. Decl.") as Exhibit U.)  542 Holding responded to Prince's ownership claim by telling the Court it agreed: "Certainly Prince has acknowledged it has an interest in the premises akin to an ownership interest.  A leasehold for 199 years would seem to support this contention."  (See the Affidavit of Bennet Averyt, 542 Holding's treasurer, in the 1996 Action, sworn to on December 8, 1997 ("Averyt 1997 Aff."), par. 42).  A true copy of the Averyt 1997 Aff. is annexed to the Zabari Opp. Decl. as Exhibit V.)

542 Holding reiterated that Prince has an ownership interest multiple times in the 1996 Action:

"Plaintiffs [including Prince] acknowledge that their interest under the Lease is equivalent to an ownership interest.  Indeed, defendant does not dispute this claim….It is

2

respectfully submitted that given plaintiffs 199 year interest in the premises, it stands in the same shoes as any other proprietary lessee in the co-op…. " (See 542 Holding's Memorandum Of Law dated June 20, 1996 in the 1996 Action ("542 Holding's 1996 MOL"), p. 5. A true copy of 542 Holding's 1996 MOL is annexed to the Zabari Opp. Decl. as Exhibit W.);

"Plaintiffs [including Prince] assert a claim to an ownership interest in the south store and basement for 199 years under the Lease. Effectively, the original sweetheart lease [i.e., the Lease] is tantamount to a proprietary interest in the south store." (See 542 Holding's Memorandum Of Law dated August 22, 2000 in the 1996 Action ("542 Holding's 2000 MOL"), p. 10. A true copy of 542 Holding's 2000 MOL is annexed to the Zabari Opp. Decl. as Exhibit X).;

"[T]he lease in question is not typical of standard commercial leases." (Id., p. 21);

"Defendant [542 Holding] may avail itself of the business judgment rule and regulate Plaintiffs' conduct because Plaintiff Prince's 199-year lease effectively grants Plaintiffs an ownership interest in the premises similar to that of shareholders….As such, they are bound by the same rules as other proprietary lessees in the building and are subject to the business judgment rule." (Id., p. 25).

542 Holding's admissions that Prince has an ownership interest were made decades ago at a time when their significance here was unforeseen. As such, they reflect its true, unblemished position, state of mind and present sense impression on this issue at that time and cannot be overcome by 542 Holding's unreliable, self-serving about-face on this issue now that its prior position does not suit its current agenda. 542 Holding's admissions that Prince has an ownership interest are fatal to 542 Holding's positions on this motion and provide further grounds for denial of the motion.

3

### B. 542 Holding's Admissions That The Lease Satisfies Key Factors Of The Economic Substance Test

542 Holding has also made several other admissions that support the allegations in Prince's Amended Complaint and demonstrate the Lease should be recharacterized because it satisfies key factors of the economic substance test.[2] These admissions include the following:

1. "In April 1980, 542 Equities Associates ("542 Associates") transferred its interest in the Building to 542 Holding by deed dated April 11, 1980." (542 Holding's Statement of Material Facts, par. 4.);

2. "542 Holding and 542 Associates were both owned by David Silverstein." (Id., par. 5.);

3. "The transfer was made, in part, in connection with 542 Associates efforts to convert a cooperative building with respect to the residential apartments under the name 542 Holding with shares and proprietary leases issued to the owners of the residential apartments." Id., par. 6.);

4. "As part of the conversion process, on or about April 11, 1980, 542 Holding and 542 Associates entered into a Standard Form of Store Lease with Rider ("April 1980 Lease") under which 542 Holding leased the ground-floor retail, basement and vault spaces ("Leased Premises") to 542 Associates." (Id., par. 7.);

5. "Mr. Silverstein was the sponsor of the cooperative." (Id., par. 10.);

6. "Simultaneously with the transfer of the ownership of the Building, 542 Holding and 542 Associates entered in to the April 1980 Lease, the terms of which are often referred to as

---

[2] These include the allegation that at the relevant time, 542 Holding and 542 Associates were alter egos owned and controlled by David Silverstein. The question of whether their corporate veils could have been pierced on that basis is not at issue on this motion (although the facts, including 542 Holding's admissions, certainly seem to suggest that they could have been).

4

a "sweetheart lease," which provided very favorable terms for the tenant and was for a term of 99 years." (Id., par. 11.);

7.  "The creation of a sweetheart lease was commonplace in cooperative conversions in the 1980's." (Id., par. 12.);

8.  "In actuality, debtor received a valuable leasehold interest at below market value…." (542 Holding's Motion, p. 13.);

9.  "Plaintiffs pay $1000.00 per month in rent for the south store in an area of Soho commanding between fifteen to thirty times the rent for comparable space." (542 Holding's 2000 MOL, p. 10.).

542 Holding's admissions clearly support Prince's allegations in the Amended Complaint and further demonstrate that the Lease should be recharacterized because it satisfies key factors of the economic substance test, including, without limitation, that the Lease was part of a larger transaction involving a cooperative conversion of the Building by its owner 542 Associates, which was owned and controlled by David Silverstein, a transfer of the Property by 542 Associates to 542 Holding, which was also owned and controlled by David Silverstein, and the immediate Lease back from 542 Holding to 542 Associates.[3]  See *In Re PCH Associates, supra*, 804 F.2d 193 (holding that a sale/leaseback was not a true lease).  See also, *In Re Hotel Syracuse, supra*, 155 B.R. 824 (holding that lessor's acquisition of property for lessee's use supports finding that lease was not a true lease.)  See also *In Re TAK Broadcasting Corp.*, 37

---

[3] Likewise, in a Complaint 542 Holding filed against Prince in the State Court Litigation, it also concedes that "[t]je Lease was not an arm's length impartial transaction between the Sponsor [542 Equities] and the Coop (542 Holding] , which was then controlled by the Sponsor [Mr. Silverstein].  The Sponsor drafted the Lease, caused the Coop to enter into the Lease with it, and then assigned the Lease to Prince." (See Declaration of Doron Zabari dated March 11, 2024 in support of Prince's motion for summary judgment, Ex. R, par. 5.)

B.R. 728 (USBC WD Wisc. 1992) (holding lease that was part of a larger transaction was not a true lease.)

542 Holding's admissions also further establish another key factor -- that the rent under the Lease was under market and was not structured to compensate and profit the lessor for fair market use, but for another purpose (*e.g.*, to pass through to the lessee an agreed share of the Building expenses as the sole rent and to profit the lessee for fair market use).  See *In Re Hotel Syracuse, supra,* 155 B.R. 824, 840 (holding that a lease in which the "rental" payments were not structured to compensate the lessor for the fair market use of the land was not a true lease): "The primary difference is the nature of the rental payments which were structured primarily for the purpose of amortizing the amount due on the outstanding bonds, rather than, as would characterize a normal lease, to assure payment of a profit to [the lessor] stemming from the Debtor's use and occupation of the Hotels." (citing *International Trade Administration*, *supra,* 936 F.2d at 751).  See also, *In Re Lefrak*, supra, 223 B.R. 431, 435,  (USBC SDNY 1998) (holding that a lease was not a true lease where the "rent" did not reflect compensation for the use of the property and was structured for another purpose, *i.e.*, to cover the lessee's *pro rata* share of the landlord's building expenses, without regard to profit, so as to pass through the landlord's operating expenses for the building).  See also *In Re PCH, supra*, 804 F2d at 200-01 (holding that a lease was not a true lease where "the rent was not calculated to compensate [the lessor] for the use of the property; rather the parties structured the "rent" solely to ensure [the lessor's] return on its investment.")[4]

---

[4] The rent was also structured to profit the lessee due to the tax benefits of the cooperative conversion of which the Lease was a part.  In order to maintain those benefits (*i.e.*, tax deductions for amounts paid by tenant-stockholders for their proportionate share of real estate taxes on the building and the cooperative corporation's interest on indebtedness (See Section 216(a) of the Internal Revenue Code (26 U.S.C. 216(a)), the rent under the Lease cannot exceed 20% of 542 Holding's annual income under the "80/20 rule." (See Internal Revenue Code section 216(b), which provides in relevant part as follows: "The term

6

These additional admissions are also fatal to 542 Holding's positions and further warrant denial of its motion as well.

## CONCLUSION

For the foregoing reasons, including the reasons set forth in Prince's submissions in support of its motion for summary judgment and in opposition to 60G's motion for summary judgment, 542 Holding's motion for summary judgment should be denied.

Dated: New York, New York
April 17, 2024

**LOUIS FOGEL & ASSOCIATES**

By: s/Louis Fogel
_____
Louis Fogel
LouisFogel@LouisFogellaw.com

5 Nottingham Road
Annandale, New Jersey  08801
(908) 730-7692

200 Water Street, Suite 1403
New York, New York 10038
(212) 944-1580

*Attorney for Plaintiff Prince Fashions, Inc.*

---

"cooperative housing corporation means a corporation…meeting 1 or more of the following requirements for the taxable year in which the taxes and interest described in subsection (a) are paid or incurred: (i) 80 percent or more of the corporation's gross income for such taxable year is derived from tenant-stockholders…." 26 U.S.C 216(b)(D)(i)).

7